IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**UNITED STATES OF AMERICA,**
    *Plaintiff,*

v.          Case No. **2:16-cr-20032-JAR**

**LORENZO BLACK,**
**KARI CARTER,**
**ANTHON AIONO,**
**ALICIA TACKETT,**
**CATHERINE ROWLETTE,**
**DAVID BISHOP,**
    *Defendants.*

---

**AMENDED MOTION FOR FED. R. CRIM. P. 41(g)
RETURN OF INFORMATION**

---

On August 5, 2016, the Federal Public Defender learned that our privileged communications with clients at CCA Leavenworth[1] have been recorded by CCA staff and, at times, provided to the government upon request. CJA counsel suffers identical violations of the attorney-client privilege. What we understand is that, at least in certain visitation rooms, CCA Leavenworth has recorded video of our legal visits with our clients.[2] We

---

[1] CCA, or Corrections Corporation of America, houses some District of Kansas federal pretrial detainees

[2] See July, 21, 2016, transcript of status conference in above-captioned case, Attachment A, pp. 12-13.

do not yet know whether or when audio recordings were made.[3] We understand that all legal calls are also recorded, and the content of those calls are provided to the USAO.

## Introduction

This presents two pressing matters: first, that CCA is recording confidential legal communication, and, second, that it provides that confidential legal communication to the government, with no notice to the defendant or counsel.

The Federal Public Defender does not represent any of the listed defendants in this case; however, at least two of our clients were named in the body of the complaint, Robert Buress and Jermaine Rayton.[4] We currently represent about 75 clients who are housed at CCA pending trial or sentencing.

The discovery described by the USAO in this case would include recordings of Mr. Buress, Mr. Rayton, and any detainee's legal visitation at CCA during the relevant time period.[5] That discovery is, in turn, provided to the defendants in this case. In other words, not only does the prosecution

---

[3] *Id.* at pp. 10-11.

[4] We currently represent Mr. Rayton; we withdrew from Mr. Buress's case, but because the violation occurred during our representation, we are requesting the return of that communication, as well.

[5] *Id.* at pp. 10-12.

have access to confidential FPD attorney-client meetings, but all defendants in this and related cases will have those recordings.

Moreover, the USAO has announced its intention to file a superseding indictment adding defendants in this case as well as new indictments: "[T]he government believes that 95 inmates or more were involved in this conspiracy and 60 individuals or more on the outside [were] working with them."[6] Those persons and their counsel will also have access to recorded legal visitation and phone calls of all CCA detainees during that time period.

## Legal Framework

1. *Prosecutorial interference with the right to counsel violates Due Process and the Sixth Amendment.*

A defendant's unfettered and private ability to consult with counsel is essential to secure the fundamental right to due process and the protections of the Sixth Amendment.[7] Conferences between counsel and the defendant at CCA Leavenworth Detention Center are within the scope of the attorney-client privilege, the oldest of the privileges for confidential communications known to the common law.[8] The privacy of these communications is "crucial

---

[6] *Id.* at p. 23.

[7] *Strickland v. Washington*, 466 U.S. 668, 684–85, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

[8] *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981); *see also In Re Grand Jury Subpoenas*, 454 F.3d 511, 519 (6th Cir. 2006) (attorney-client privilege "dates back to the Tudor dynasty at least").

to this relationship."[9] The attorney-client privilege extends to "[c]onfidential disclosures by a client to an attorney made in order to obtain legal assistance."[10] It also extends to "at least those attorney to client communications which would have a tendency to reveal the confidences of the client."[11]

Government interference with that right violates both constitutional guarantees, and constitutes structural error.[12]

> [A] prosecutor's intentional intrusion into the attorney-client relationship constitutes a direct interference with the Sixth Amendment rights of a defendant, and because a fair adversary proceeding is a fundamental right secured by the Sixth and Fourteenth Amendments, we believe that absent a countervailing state interest, such an intrusion must constitute a per se violation of the Sixth Amendment. In other words, we hold that when the state becomes privy to confidential communications because of its purposeful intrusion into the attorney-client relationship and lacks a legitimate justification for doing so, a prejudicial effect on the reliability of the trial process must be presumed. In adopting this rule, we conclude that no other standard can adequately deter this sort of misconduct. We also

---

[9] *Al Odah v. United States*, 346 F.Supp.2d 1, 10 (D.D.C. 2004).
[10] *Fisher v. United States*, 425 U.S. 391, 403 (1976).
[11] *In re Grand Jury Proceedings*, 616 F.3d 1172, 1182 (10th Cir. 2010) (quoting Kenneth S. Brown, *McCormick on Evidence* § 89 (6th ed. 2006)).
[12] *Luis v. United States*, 136 S.C.t 1083, 1089 (2016) (noting the "necessarily close working relationship between lawyer and client, the need for confidence, and the critical importance of trust . . ."; and that wrongful deprivation of counsel is structural error).

note that prejudice in these circumstances is so likely that case-by-case inquiry into prejudice is not worth the cost.[13]

This rule recognizes that the accused "does not enjoy the effective aid of counsel if he is denied the right of private consultation [.]"[14] If discovery of materials provided by an attorney to a client were permitted, "[t]he effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served."[15]

   2. *Videotaping client meetings is prosecutorial interference with the right to counsel.*

The Kansas Supreme Court addressed a milder form of our problem in *Case v. Andrews*,[16] which held that,

> the Lyon County jail policy of visually monitoring all consultations between attorneys and clients is an unreasonable interference with the right to confidential attorney-client communications. The confidentiality of communications between

---

[13] *Schillinger v. Haworth*, 70 F.3d 1132, 1142 (10th Cir. 1995).

[14] *Mastrian v. McManus*, 554 F.2d 813, 820–21 (8th Cir. 1977), cert. denied, 433 U.S. 913 (1977) (It is clear "that an accused does not enjoy the effective aid of counsel if he is denied the right of private consultation[.]"). *See also, Coplon v. United States*, 191 F.2d 749, 757 (1951); *Geders v. United States*, 425 U.S. 80 (1976); *Hoffa v. United States*, 385 U.S. 293 (1966); *Massiah v. United States*, 377 U.S. 201 (1964); *United States v. Rosner*, 485 F.2d 1213 (2nd Cir. 1973), cert. denied, 417 U.S. 950 (1974); *United States v. Brown*, 484 F.2d 418 (5th Cir. 1973), cert. denied, 415 U.S. 960 (1974); *Caldwell v. United States*, 205 F.2d 879, 92 U.S.App.D.C. 355, (D.C. Cir. 1953).

[15] *Upjohn*, 449 U.S. at 398.

[16] 226 Kan. 786 (Kan. 1979).

> an attorney and his client who is charged with crime should be carefully protected by the courts.[17]

Because "absent a showing of any risk to the order or security of the jail, the practice of visually monitoring an attorney-client conference when privacy is requested, is unreasonable. Such unreasonable interference violates an accused's Sixth Amendment right to effective representation by counsel."[18]

Our situation, as we apprehend it, is a far more significant interference with the right to counsel than the circumstances considered in *Case*. The

---

[17] *Id.* at 790.

[18] *Id.* at 791. *See also, State v. Walker*, 804 N.W.2d 284, 295 (Iowa 2011) ("in the absence of any individualized showing of a safety or security risk video surveillance violates an arrestee's right to 'see and consult confidentially' with his attorney 'alone and in private.'"); *People v. Dehmer*, 931 P.2d 460, 463 (Colo.App. 1996); *State v. Sherwood*, 174 Vt. 27, 800 A.2d 463, 466 (2002) ("The tape itself is evidence that defendant's conversation with counsel was not, in fact, private."); *Moore v. Janing*, 427 F. Supp. 567, 576 (D. Neb. 1976) ("there is no physical facility specifically set aside for this purpose in which the pretrial detainees have a right to consult privately with attorneys and witnesses. Such conditions impede the detainees' ability to prepare for trial, jeopardize the confidentiality of their attorney-client communications and invade their right to privacy."); compare 66 Fed. Reg. 55065(d) ("In any case where the Attorney General specifically so orders, based on information from the head of a federal law enforcement or intelligence agency that reasonable suspicion exists to believe that a particular inmate may use communications with attorneys or their agents to further or facilitate acts of terrorism, the Director, Bureau of Prisons, shall, in addition to the special administrative measures imposed under paragraph (a) of this section, provide appropriate procedures for the monitoring or review of communications between that inmate and attorneys or attorneys' agents who are traditionally covered by the attorney-client privilege, for the purpose of deterring future acts that could result in death or serious bodily injury to persons, or substantial damage to property that would entail the risk of death or serious bodily injury to persons.").

meetings between the Federal Defender or CJA counsel and our respective clients are not only visually monitored, but recorded. Those recordings are then, at least in some cases, provided to the United States Attorney's Office. The documents we review with our clients, how our clients react to those documents, and the notes are taken by client and counsel are open to government inspection and review. Recorded phone calls present the same problems.

This arrangement chills our client's exercise of their right to counsel, as they do, and should, "be hesitant to disclose names and information relevant to the attorney's investigation and necessary to the advice sought."[19] Such conditions impede our clients' "ability to prepare for trial, jeopardize the confidentiality of their attorney-client communications and invade their right to privacy."[20] Allowing the government to "monitor these meetings and conduct a classification review of meeting notes flies in the face of the

---

[19] *Johnson-El v. Schoemehl*, 878 F. 2d 1043, 1052-53 (8th Cir. 1989).

[20] *Moore v. Janing*, 427 F. Supp. 567, 576 (D. Neb. 1976), superseded on other grounds by *Bell v. Wolfish*, 441 U.S. 520 (1979), *see also, United States v. DiDomenico*, 78 F. 3d 294, 299 (7th Cir. 2004) ("knowledge that a permanent record was being made of the conversations . . . would make the defendants reluctant to make candid disclosures.").

foundational principle of the attorney-client privilege."[21] Such government intrusion "would lay waste to the value of the attorney-client privilege."[22]

3. *Inaction in the face of the government's surveillance would waive the attorney-client privilege.*

The attorney-client privilege is "virtually inviolable" unless waived.[23] Waiver may be express or implied.[24] An "[i]mplied waiver occurs when a party claiming the privilege has voluntarily disclosed confidential information on a given subject matter to a party not covered by the privilege."[25]

The Federal Defender believes that visiting clients at CCA, while subject to video recording, threatens to waive the attorney-client privilege. The "presence of the recording device [is] the functional equivalent of the presence of a third party," such that the attorney-client privilege is destroyed.[26] Once the invasion is known to counsel, she has "a duty to seek to

---

[21] *Al Odah*, 346 F.Supp. 2d at 11.

[22] *Id. citing Weatherford v. Bursey*, 429 U.S. 545, 554 (1977).

[23] *United States v. Ary*, 2005 WL 2367541 (D. Kan. 2005).

[24] *Id.*

[25] *Id. See also, Hanson v. U.S. Agency for International Development*, 372 F.3d 286, 293–94 (4th Cir.2004).

[26] *United States v. Hatcher*, 323 F.3d 666, 674 (8th Cir.2003). *See also, United States v. Walker*, 2011 WL 2728460 at 1 (M.D. Ala. 2011); *United States v. Mitchell*, 2013 WL 3808152 (M.D. Fl. 2013) ("Both individuals having heard the automated message, and Newby's action of affirmatively pressing a phone key to accept the calls, obviates any reasonable expectation of privacy between the attorney and client in these two calls because Newby and Mitchell each knew the

end the surveillance, discover the true extent of it, and find a remedy for what has already happened. One cannot simply rely upon *post hoc* use of the exclusionary rule because the harm to the ability of the criminal defense lawyer to adequately defend has already occurred and continues, and it substantially risks infecting the fairness of the trial." [27] That is one reason that 18 USC § 3142 requires a person detained awaiting federal trial be "afforded reasonable opportunity for private consultation with counsel."

We assert the privilege now, because delay may cut against a later invocation.[28]

*4. Rule 41(g) is an appropriate, albeit partial, remedy.*

Rule 41(g) provides an immediate remedy for this violation.[29] The rule provides a mechanism for a "person aggrieved by an unlawful search and seizure of property or by the deprivation of property" to move for the

---

calls were being recorded. Furthermore, Mitchell and Newby implicitly consented to the recording of the calls by continuing the conversations despite the warning."); *Modelle v. Fauro*, 2010 WL 624023 (N.D. N.Y. 2010).

[27] NACDL Ethics Opinion, 02-01, *supra*, 5 and 15.

[28] *Ary* at 7 ("While the court may have been willing to accept a claim of privilege asserted during his review of the contents of the black plastic box, now it appears that counsel has delayed too long."); *United States v. de la Jara*, 973 F.2d 746, 750 (9th Cir.1992) (noting that the privilege will be waived "if the privilege holder fails to pursue all reasonable means of preserving the confidentiality of the privileged matter.").

[29] *See* Rule 41(g).

property's return.[30] Under this Rule, "[p]roperty" includes not only "tangible objects" such as "documents," but also "information."[31] The recordings at issue here are "property." The Rule's distinction between those who are aggrieved by an illegal "search and seizure" and those aggrieved by the "deprivation of property" is meant to extend the Rule's protection to not only those harmed by an initially unlawful seizure, but also to those harmed by the retention of property whose seizure may have been legal:[32]

> . . . Rule 41(e)[33] provides that an aggrieved person may seek return of property that has been unlawfully seized, and a person whose property has been lawfully seized may seek return of property when aggrieved by the government's continued possession of it.[34]

---

[30] *Id.*

[31] Rule 41(a)(2)(A).

[32] "Privileges for confidential communications are more absolute, narrower in scope, and broader in application than the Fourth Amendment exclusionary rule. As previously stated, the exclusionary rule is qualified in the sense that a government showing of probable cause can justify the issuance of a warrant authorizing a search or seizure. Under the dominant Wigmorean paradigm, privileges for confidential communications are absolute." Edward Imwinkelried, *The Dangerous Trend Blurring the Distinction Between a Reasonable Expectation of Confidentiality in Privilege Law and a Reasonable Expectation of Privacy in Fourth Amendment Jurisprudence,* 57 Loy.L.Rev.1, 7 (Spr. 2011).

[33] The 2002 amendments moved subsection (e) to (g) and made some "minor stylistic changes." *United States v. Albinson,* 356 F.3d 278, 279, n. 1 (3rd Cir. 2004).

[34] Rule 41, Advisory Comm. Note to the 1989 Amendments.

## Remedies

Pursuant to Rule 41(g), the defense asks that all recorded confidential legal communication be returned to counsel, and through counsel, to the defendant. The scheduled evidentiary should provide the factual basis for the Court to grant this request. For that hearing, we ask the Court to Order:

1. That CCA Leavenworth disclose its policy regarding surveillance and documentation of legal communication;

2. That CCA Leavenworth disclose how recorded legal communication is provided to the USAO or any law enforcement agency;

3. That the USAO disclose its policy and practice of gathering and reviewing privileged and confidential legal communication from CCA or other pretrial holding facilities;

4. That the USAO identify the cases in which it has gathered or reviewed confidential and privileged legal communication, and whether that has been disseminated;

5. That the parties be allowed to address other evidentiary matters as they arise in this quickly developing investigation.

Once the evidence is presented and considered, we reserve the right to request any of the sanctions recognized by the Tenth Circuit in *Schillinger v. Haworth*.[35] Counsel advises the Court that the parties are working together

---

[35] 70 F.3d 1132, 1142-43 (10th Cir. 1995) (Identifying as appropriate remedies the recusal of government counsel, exclusion of evidence, retrial, or dismissal.).

to reach stipulations and streamline evidence for an orderly and efficient hearing.

## Conclusion

The hearing is scheduled for Tuesday, August 9, 2016, at 1:30 p.m. Until then, we ask the Court to impound from the USAO any CCA recordings that include legal communication and any information derived from the government possession of that legal communication, such as law enforcement reports.

After the hearing, we will ask the Court to appoint an outside entity to 1) investigate, in consultation with the defense and USAO, the conduct of CCA and the USAO in recording and reviewing legal communication, and 2) recommend appropriate remedies to the Court.

Respectfully submitted,

s/Melody Brannon
MELODY BRANNON #17612
Federal Public Defender for the
District of Kansas
117 SW 6th Avenue, Suite 200
Topeka, Kansas 66603-3840
Phone: 785/232-9828
Fax: 785/232-9886
E-mail Address: melody_brannon@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that on August 7, 2016, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to the following:

Donald Christopher Oakley
Assistant United States Attorney
Office of the United States Attorney – Kansas City
chris.oakley@usdoj.gov

Erin S. Tomasic
Assistant United States Attorney
Office of the United States Attorney – Kansas City
erin.tomasic@usdoj.gov

Debra L. Barnett
Criminal Chief
Assistant United States Attorney
Office of the United States Attorney – Wichita
debra.barnett@usdoj.gov

John Jenab
Jenab Law Firm, PA
john.jenab@gmail.com

David J. Guastello
The Guastello Law Firm, LLC
david@guastellolaw.com

Jason P. Hoffman
Hoffman & Hoffman
jphoffman@sbcglobal.net

Kathleen A. Ambrosio
Ambrosio & Ambrosio Chtd.
kaambrosio@yahoo.com

Michael M. Jackson
jacksonmm@aol.com

Cynthia M. Dodge
Cynthia M. Dodge, LLC
cindy@cdodgelaw.com

Shazzie Naseem
Berkowitz Oliver LLP - KCMO
snaseem@berkowitzoliver.com

          <u>s/ Melody Brannon   </u>
          Melody Brannon