IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>          **Plaintiff,**<br><br>          v.<br><br>**LORENZO BLACK,**<br>**KARL CARTER,**<br>**ANTHON AIONO,**<br>**ALICIA TACKET,**<br>**CATHERINE ROWLETTE, and**<br>**DAVID BISHOP,**<br><br>          **Defendants.** | Case No. 16-20032-JAR |

## MEMORANDUM AND ORDER

In response to revelations of recorded attorney-client communications in this case, the Court held a series of hearings and entertained briefing regarding the appointment of a Special Master to review the recordings and remove confidential communications. On October 11, 2016, the Court appointed a Special Master to assist in the review of the recordings and removal of the confidential communications (Doc. 146). This matter comes before the Court on the Government's Motion for Reconsideration of the Court's Appointment Order and Objections (Doc. 163). The motion is fully briefed and the Court is prepared to rule. For the reasons stated more fully below, the Court denies the Government's motion for reconsideration.

**I.     Background**

Because the issues in this case have already been extensively argued and briefed, the Court will provide only a brief summary of the multitude of revelations and allegations that led to the appointment of a Special Master. This is a multi-Defendant case involving charges of conspiracy to traffic in contraband inside the Corrections Corporation of America ("CCA")

1

Leavenworth Detention Center. During the course of discovery in this case, allegations arose that the Government had obtained and disseminated in discovery privileged audio and video recordings of communications between CCA inmates and their attorneys. On August 9, 2016, the Court held an emergency hearing following the Federal Public Defender's ("FPD") filing of a Motion for Return of Information Pursuant to Fed. R. Crim P. 41(g).[1] During the hearing, the parties jointly moved for the appointment of a Special Master to review the recordings and determine whether they contained privileged material. At the hearing, the Court directed the parties to submit a proposed agreement or briefing as to the scope of the Special Master's duties.

Following the August 9 hearing, the parties submitted several rounds of briefing. Although the parties diverged regarding the proposed scope of the Special Master's duties, the parties agreed that the legal authority for the appointment of the master originated from Fed. R. Civ. P. 53(a)(1).[2] The Court held additional hearings on August 16 and September 7 regarding the proposed scope of the Special Master's duties. At the September 7 hearing, the Court noted the parties' agreement to the appointment of a Special Master and explained the potential scope of the Special Master's duties. The Court asked counsel if they agreed to the proposed process and scope of duties, to which the Government responded that it did not. The Government stated that it consented only to the Special Master reviewing the audio and video recordings at issue and excising attorney-client communications.

On October 11, the Court issued an Order appointing David R. Cohen as Special Master.[3] The Court explained that its authority to appoint a Special Master in this criminal case stemmed

---

[1] Docs. 82 & 85. The FPD's Office entered its appearance on behalf of clients who were allegedly included in the recordings.

[2] Doc. 119 at 1; Doc. 120 at 18–22; Doc. 132; Doc. 133 at 23. The FPD's Office also referenced the Court's inherent authority to manage litigation. Doc. 119 at 1.

[3] Doc. 146.

from Fed. R. Civ. P. 53 as well as its inherent authority to manage litigation.[4] The Court then outlined the duties of the Special Master and explained that the master would proceed with carrying out these duties in two phases. In Phase I, the Special Master would conduct an assessment of the feasibility of identifying and excising the privileged information contained within the recordings and other information provided to the Court, and distributing to counsel the remaining non-privileged information. After the completion of Phase I and the Special Master's submission of his feasibility report, the Court would determine whether the master should proceed to Phase II.[5] Phase II would involve identifying, excising, and retaining privileged or confidential information from the video recordings, audio recordings, and computers seized from CCA's inmate law libraries, and then providing the remaining non-privileged information to counsel.[6]

In addition to the duties outlined in Phases I and II, the Court's Order explained that the Court may call upon the master to perform a number of complimentary and auxiliary duties, including providing status reports, employing staff to assist the Special Master in carrying out his duties, compiling data and making recommendations with regard to evidence, assisting with legal analysis of the parties' motions or other submissions, responding to media inquiries, and helping to coordinate other, related litigation.[7] At this writing, at the Court's direction, the Special Master has completed Phase I and has proceeded to Phase II work, and has provided some complimentary and auxiliary duties, all at the Court's direction.

---

[4] *Id.* at 2–4.

[5] *Id.* at 4–5. The Special Master has completed Phase I and the Court has directed the master to proceed to Phase II. Doc. 179.

[6] *Id.* at 5.

[7] *Id.* at 6

Finally, the Court's Order explained that the Court would continue to consider directing the Special Master or appointing a second Special Master to investigate the policies and practices of CCA and the Government, as well as the existence and extent of alleged Sixth Amendment and Fed. R. Crim. P. 6(e) violations related to this case and other criminal cases. However, the Court explained that it was limiting the Special Master's work to Phases I and II, and to the complimentary duties, for the time being.

## II.     Legal Standard

Although there is no authority in the Federal Rules of Criminal Procedure for reconsideration of a ruling on a criminal matter, the Tenth Circuit has held that motions to reconsider are proper in criminal cases.[8] Because there is no grounding for motions to reconsider in the Federal Rules of Criminal Procedure, "standards for evaluating a motion to reconsider in the civil context are relevant for evaluating a motion to reconsider in a criminal case."[9] D. Kan. Rule 7.3(b) governs motions to reconsider non-dispositive orders, while Fed. R. Civ. P. 59 and 60 govern motions to reconsider dispositive orders.[10] Because the Court's Appointment Order was a non-dispositive order, the Court finds that D. Kan. Rule 7.3(b) governs the motion for reconsideration at issue here. Under Rule 7.3(b), a motion to reconsider must be based on (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or prevent manifest injustice.[11]

---

[8] *United States v. Christy*, 739 F.3d 534, 539 (10th Cir. 2014) (citing *United States v. Randall*, 666 F.3d 1238, 1242 (10th Cir. 2011) (recognizing that "motions to reconsider in criminal cases are not grounded in a rule or statute")); *United States v. Miller*, No. 06-40151-JAR, 2008 WL 2783146 (D. Kan. July 15, 2008).

[9] *United States v. Blechman*, No. 08-40008-JAR, 2010 WL 235025, at *1 (D. Kan. Jan. 8, 2010) (quoting *United States v. Carr*, No. 06-40147-SAC, 2007 WL 1989427, at *1 (D. Kan. June 20, 2007)).

[10] D. Kan. Rule 7.3; *Coffeyville Res. Ref. & Mktg., LLC v. Liberty Surplus Ins. Corp.*, 748 F. Supp. 2d 1261, 1264 (D. Kan. 2010).

[11] D. Kan. Rule 7.3(b).

"A party's failure to present its strongest case in the first instance does not entitle it to a second chance in the form of a motion to reconsider."[12] Furthermore, a motion to reconsider is not a proper venue to reargue arguments that the court previously rejected.[13] Whether to grant or deny a motion for reconsideration is committed to the court's discretion.[14]

### III.   Discussion

The Government asserts three bases for reconsideration. First, it argues that it did not consent to the appointment of a Special Master according to the process outlined by the Court at the September 7 hearing, and thus the Court cannot require the Government to pay the costs of the Special Master. Second, it contends that the Special Master's review will result in fees that are excessive, unreasonable, and disproportionate to the needs of the case. Finally, the Government urges that a review of the video recordings is unnecessary because the Government no longer intends to use the videos at trial.[15] The Court addresses each argument in turn.

#### A.   Authority for Appointment and Scope of Special Master's Review

The Government's first argument, regarding the Court's authority to compel the Government's payment of a Special Master appointment in this case, appears to proceed in two parts. First, the Government contends that because there is no authority for the appointment of a Special Master or any waiver of sovereign immunity in the Federal Rules of Criminal Procedure, the Court cannot compel the Government to pay for the costs of the Special Master here.[16] The Government begins by recognizing that "[t]he law seems well-settled that the Court may

---

[12] *Sithon Maritime Co. v. Holiday Mansion*, 177 F.R.D. 504 at 505 (D. Kan. 1998).

[13] *See Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).

[14] *GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1386 (10th Cir. 1997); *Hancock v. City of Okla. City*, 857 F.3d 1394, 1395 (10th Cir. 1988).

[15] Doc. 163 at 1–2.

[16] *See id.* at 15–21.

apportion the costs of a Special Master under [Fed. R. Civ. P.] 53 to the United States **in a civil case** if the United States is a party."[17]  The Government contends, however, that because the Federal Rules of Criminal Procedure, unlike the Civil Rules, do not contain express provisions "authorizing the district court to appoint a Special Master, or to apportion any part of those costs to the United States in a criminal case," the application of sovereign immunity prohibits the Government from paying the costs of a Special Master in a criminal case.[18]  The Government cites to *United States v. Horn*, in which the First Circuit held that the application of sovereign immunity prohibited a district court from assessing costs and attorneys' fees against the federal government in a criminal case because there was no federal statute that authorized such an award.[19]

It is well-settled that courts have inherent authority to appoint Special Masters to assist in managing litigation.[20]  Moreover, both parties also referenced Fed. R. Civ. P. 53 as a basis for appointment of a Special Master.[21]  The Court, recognizing both sources of authority, appointed the Special Master pursuant to its inherent authority as well as Fed. R. Civ. P. 53.[22]  As this Court has recognized in other cases, when "the Rules of Criminal Procedure do not speak specifically to a matter, a court conducting a criminal case is permitted to draw from and mirror a

---

[17]*Id.* at 16 (emphasis in original).

[18]*Id.* at 20–21.

[19]29 F.3d 754, 767 (1st Cir. 1994).

[20]*Schwimmer v. United States*, 232 F.2d 855, 865 (8th Cir. 1956) (quoting *In re: Peterson*, 253 U.S. 300, 311 (1920)); *see Ruiz v. Estelle*, 679 F.2d 1115, 1161 n.240 (5th Cir. 1982) ("[R]ule 53 does not terminate or modify the district court's inherent equitable power to appoint a person, whatever his title, to assist in administering a remedy."); *Reed v. Cleveland Bd. of Educ.*, 607 F.2d 737, 746 (6th Cir. 1979) (holding that the authority to appoint "expert advisors or consultants" derives from either Rule 53 or the Court's inherent power); *Regents of the Univ. of Cal. v. Micro Therapeutics, Inc.*, No. C 03-05669 JW, 2006 WL 1469698, at *1 (N.D. Cal. May 26, 2006) (citing *Ass'n of Mexican Am. Educators v. California*, 231 F.3d 572, 590 (9th Cir. 2000) ("A district judge has inherent authority to appoint a technical advisor when the judge deems it desirable and necessary").

[21]Doc. 119 at 1; Doc. 120 at 18–22; Doc. 132; Doc. 133 at 23.

[22]Doc. 146 at 2–3.

practice that is sanctioned by the Federal Rules of Civil Procedure."[23]  Federal Rule of Criminal Procedure 57(b) similarly provides:

> **(b) Procedure When There Is No Controlling Law.**  A judge may regulate practice in any manner consistent with federal law, these rules, and the local rules of the district.  No sanction or other disadvantage may be imposed for noncompliance with any requirement not in federal law, federal rules, or the local district rules unless the alleged violator was furnished with actual notice of the requirement before the noncompliance.

The Tenth Circuit has recognized that the Federal Rules of Civil Procedure have the "force of a federal statute."[24]

Because there is no controlling law regarding the appointment of a Special Master within the Federal Rules of Criminal Procedure, the parties argued for the appointment of a Special Master under Fed. R. Civ. P. 53.  As the Government recognizes, a court may assign costs to the Government when a Special Master appointment is made under Rule 53.[25]  The Court here appointed a Special Master pursuant to the Court's inherent authority and Rule 53, and assigned the costs of the Special Master to the Government based upon a finding that the Government was more responsible than the other parties for the reference to a Master.[26]  The Government now argues that sovereign immunity prohibits the appointment of a Special Master and the assignment of the costs of the Master to the Government in this case.  But because a statutory provision within Rule 53 allows for the assessment of costs of a Special Master to the Government, the Court finds that sovereign immunity does not apply.[27]  Thus, for the reasons

---

[23] *United States v. Miller*, No. 06-40151-JAR, 2008 WL 2783146, at *2 (D. Kan. Jul. 15, 2008) (quoting *United States v. Morrison*, 521 F. Supp. 2d 246, 251–52 (E.D.N.Y. 2007)).

[24] *Adamson v. Bowen*, 855 F.2d 668, 670 (10th Cir. 1988); *Sibbach v. Wilson & Co.*, 312 U.S. 1, 13 (1941); *Rumsey v. George E. Failing Co.*, 333 F.2d 960, 962 (10th Cir. 1964).

[25] Doc. 23 at 16.

[26] *See* Fed. R. Civ. P. 53(g)(3).

[27] *See id.*  Based upon this statutory provision, the Court finds that *United States v. Horn* is distinguishable.  The court in *Horn* assigned costs and attorneys' fees pursuant only to its inherent authority, without reference to a

stated above, the Court finds that it had authority to appoint a Special Master and assign the costs of the Special Master's review to the Government.

Second, the Government argues that it did not consent to the specific duties assigned to the Special Master in this case, and thus the Court cannot apportion the costs of the Special Master to the Government.[28] The Government argues that its "initial request for appointment was extremely limited and did not include the duties described by the Court during the September 7 hearing or identified in the *Appointment Order*." The Government contends that it did not consent to the following duties:

> [T]he United States did not consent to the master employing others or determining privilege. The duties outlined by the United States did not include assisting with media inquiries, court scheduling, case management, and/or the legal analysis of the parties' motions or other submissions . . . The United States did not and has not consented to any of the duties outlined in the "Complimentary Duties" or the potential "Additional, Investigative Duties." And, to the extent the special master's duty to provide legal analysis and recommended rulings or remedial action on motions may be construed as an investigative, fact-finding role for potential Sixth Amendment violations, the United States has expressly and repeatedly objected to that.[29]

The Government further argues that "the *Appointment Order* fails to recognize that the consent of the United States was withdrawn."[30]

As an initial matter, the Court finds that contrary to the Government's suggestion, the Government did not withdraw its consent entirely to the appointment of a Special Master in this case. Rather, the Government explained that it did not consent to the appointment of a Special

---

statutory provision allowing for the assessment of such costs. *United States v. Horn*, 29 F.3d 754, 767 (1st Cir. 1994). By contrast, here the Court appointed the Special Master pursuant to its inherent authority and Fed. R. Civ. P. 53. Just as sovereign immunity does not prevent the Court from appointing a Special Master at Government cost in a civil case, it does not prevent the same event in a criminal case, both logically and as a matter of law.

[28]*Id.* at 14–15.

[29]*Id.*

[30]*Id.* at 15.

8

Master with the duties outlined by the Court at the September 7 hearing. But the Government expressly stated at the hearing that it consented to

> having a special master look at the recordings that have been provided to the Court and excise out the material that shows contacts with counsel, either through the phones or through the attorney-client interview rooms at CCA. Excising that material out. And then the rest of the materials that would arguably be permissible evidence for us to use and provide in discovery, then to be given back to the government and to defense counsel in the case so that the case could go forward.[31]

The scope of consent outlined above essentially mirrors the duties described in Phases I and II of the Court's Appointment Order.[32] Although the Government did not specifically mention the feasibility assessment described in Phase I, this process was included as necessary for the completion of Phase II, which the Government consented to. Further, although the Government did not specifically consent or object to the Special Master's review of the CCA law library computers at the September 7 hearing, the Government did consent to the review of these computers in previous briefing.[33] Thus, because the Government consented to the duties outlined in Phases I and II, the Court finds that it had authority to appoint the Special Master to perform these duties.

The Government also argues that it did not consent to a number of the "Complimentary Duties," including employing others to assist in performing duties, assisting with media inquiries, court scheduling, case management, and assisting with legal analysis of the parties' motions or other submissions. Although the Government did not specifically consent to the Complimentary Duties, these duties are incidental to and necessary for the Special Master's

---

[31] Doc. 135 at 148–49.

[32] *See* Doc. 146 at 4–5.

[33] Doc. 120 at 7 (explaining that the law library computers "have been digitally imaged, and all documents contained on the computers are ready for review"); Doc. 133 at 1–2 (stating that Government consented to Special Master identifying "any privileged attorney-client communications in the computers seized from CCA's inmate law libraries and excis[ing] any such communications").

performance of the Phase II duties to which the Government consented. Without employing others to assist him, there is no way the Special Master could engage in a meaningful review of the many terabytes of information within any acceptable time frame or at any acceptable cost. Indeed, allowing the Special Master to hire assistants at lower cost serves to assuage the Government's objection. Additionally, the Special Master is tasked with legal analysis of the parties' motions or other submissions because the master in some instances will be in the best position to analyze the technical issues in the parties' submissions. Indeed, these duties are appropriate because they constitute "pretrial . . . matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district."[34]

The other Complimentary Duties, including issuing reports to the parties and assisting with court scheduling, case management, and media inquiries, are incidental to the Special Master's core duties and will help keep the parties and the public apprised as to the progress of the Master's review. The Court also notes that these Complimentary Duties are contemplated by Fed. R. Civ. P. 53, that they are routinely assigned in cases involving Special Masters, and that both parties advocated for some of these duties in their memoranda regarding the scope of the Special Master's review.[35] For these reasons, the Court finds that the parties consented to the duties outlined in Phases I and II, and that the Complimentary Duties were properly assigned as incidental to and necessary for the performance of the duties to which the parties consented.

The Government also objects to the "Additional, Investigative Duties" discussed in the Appointment Order. The Court, however, expressly stated in its Appointment Order that it was

---

[34] Fed. R. Civ. P. 53(a)(1)(C).

[35] Fed. R. Civ. P. 53(a), (c); *See Sibley v. Sprint Nextel Corp.*, 298 F.R.D. 683, 685–86 (D. Kan. Apr. 14, 2014); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-5944 SC, 2011 WL 6141066, at *2 (N.D. Cal. Dec. 8, 2011); *Massachusetts v. E Trade Access, Inc.*, No. 03-11206-NMG, 2013 WL 4048189, at *1–4 (D. Mass. May 22, 2013); *Westefer v. Snyder*, Nos. 00-162-GPM, 00-708-GPM, 2011 WL 572514, at *1–3 (S.D. Ill. Feb. 15, 2011); *Appointing Special Masters and Other Judicial Adjuncts: A Benchbook for Judges and Lawyers*, 11–12 (5th ed. 2013) (available at www.SpecialMaster.law); Doc. 119-1; Doc. 120 at 19–27.

not appointing the Special Master to perform these duties at this time.[36] The Court therefore finds, without ruling on the Government's objections to the Investigative Duties at this time, that these objections do not warrant reconsideration of the Court's Appointment Order.

In sum, the Court finds that the costs associated with the Special Master's review were properly assigned to the Government in light of the Court's inherent authority to manage litigation, the application of Fed. R. Civ. P. 53, and the appropriate scope of the Special Master's duties.

### B.     Expense of Special Master

The Government also argues that the cost of a Special Master's review will be excessive in relation to the needs of this case. The Government contends that even a cursory review of one-sixth of the DVR recordings could cost the Government approximately $1,350,000.00. The Government also cites a verbal estimate by the Court at a previous hearing that costs of the Special Master could be approximately $500,000.00. This amount, the Government argues, would exceed more than 120 percent of the United States Attorney's Office for the District of Kansas' allocated litigation-related expenditures.[37]

As explained above, the Court directed the Special Master to perform a feasibility assessment as part of the Phase I duties. This assessment was intended in part to provide the parties and the Court with an estimate of the cost of performing the Master's Phase II duties, and to allow the Court to review the reasonableness of these costs. The Master has completed this assessment, and has provided a report indicating the approximate number of hours and cost necessary for the performance of the Phase II duties.[38] The Master has also pledged to spend no

---

[36]Doc. 146 at 7.

[37]Doc. 163 at 22–23.

[38]Doc. 176 at 3–4.

more than $100,000 actually reviewing video, and the Court will continue to review the reasonableness of the Special Master's expenses.[39] Indeed, to date the entire costs of the Special Master's review have been limited to $40,240.60.[40] Based on the foregoing, the Court is satisfied that the expected costs, as well as the costs already assessed, are reasonable in relation to the duties of the Special Master, which are essential to progressing this case and ensuring compliance with fundamental Sixth Amendment principles. The Court therefore finds that the concerns related to costs do not justify reconsideration of the Court's Appointment Order.

### C. Use of Video Recordings at Trial

Finally, the Government states that because it no longer intends to use any of the video recordings as evidence in this case, a review of the video recordings is not necessary.[41] The Government argues that although it "would welcome full review of all material, the associated expense involved in doing so is unreasonable, excessive, and disproportionate to the needs of the case."[42] The Court has addressed the reasonableness of the costs of a Special Master above, and finds that these costs do not justify reconsideration. Further, although the Government does not intend to use the videos at trial, this does not remove the need for the Special Master to review the video recordings for possible Sixth Amendment violations. Nor does it remove the Government's obligation to comply with the requirements of *Brady*.[43] Without the Special Master's review of the videos and excising of recorded attorney-client communications, the Court is concerned that the Government will not have an opportunity to review the non-

---

[39]*Id.* at 4 n.4; *see* Doc. 173 (Order approving Special Master's October 2016 Bill to Government after *in camera* review of charged expenses).

[40]Doc. 173.

[41]Doc. 163 at 24–26.

[42]*Id.* at 26.

[43]*See Brady v. Maryland*, 373 U.S. 83, 87–90 (1963).

privileged video recordings for potential *Brady* evidence.[44] Accordingly, the Court finds that the Special Master's review is necessary, and that the costs associated with the Master's appointment do not justify reconsideration.

## IV. Conclusion

Pursuant to the Court's inherent authority and Fed. R. Civ. P. 53, the Court finds that the Special Master was properly appointed to carry out the assigned duties. Additionally, the Court is satisfied that the costs associated with the Special Master's appointment are justified in light of the necessity of review. Finally, the Court finds that the Special Master's review of the video recordings is appropriate for the reasons explained above. Therefore, the Court denies the Government's motion for reconsideration.

**IT IS THEREFORE ORDERED BY THE COURT** that the Government's Motion for Reconsideration of the Court's Appointment Order and Objections (Doc. 163) is **denied**.

**IT IS SO ORDERED.**

Dated: November 29, 2016

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

---

[44] *See United States v. Beers*, 189 F.3d 1297 (10th Cir. 1999) (explaining that *Brady* requires the prosecution to reveal information that it has in its actual or constructive possession or knowledge, and that information possessed by federal investigating officers "is typically imputed to the prosecutors of the case"); *United States v. Brooks*, 966 F.2d 1500, 1502–04 (D.C. Cir. 1992) (explaining that government's obligations under *Brady* include "not only a duty to disclose exculpatory information, but also a duty to search possible sources for such information"); *Carey v. Duckworth*, 738 F.2d 875, 878 (7th Cir. 1984) ("[A] prosecutor's office cannot get around *Brady* by keeping itself in ignorance, or compartmentalizing information about different aspects of a case.").