16CR20032J-ord(VideoAnalysis).wpd

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO. 16-CR-20032 |
|     Plaintiff | : | |
| | : | |
| v. | : | SPECIAL MASTER DAVID R. COHEN |
| | : | |
| LORENZO BLACK, *et al.*, | : | **FIRST REPORT REGARDING** |
|     Defendants | : | **VIDEO RECORDINGS** |
| | : | |

In its Order appointing the undersigned, the Court directed me to "[i]dentify, excise, and retain privileged or confidential information from the video recordings made at CCA that have been submitted to the Court;" and to "[p]rovide copies of video recordings with the privileged or confidential information removed to the Government and Coordinating Discovery Counsel." *Appointment Order* at 5 (docket no. 146). This Report explains what I have done in pursuit of those directives.

Earlier, the Court ordered the Government to submit to the custody of the Court certain "video recordings depicting privileged attorney-client communications at the Corrections Corporation of America Leavenworth Detention Center" (hereinafter, "CCA-Leavenworth"). Order at 1 (Doc. 102). The Special Master's review of the responsive materials shows the Government submitted video-recordings obtained from CCA-Leavenworth's PELCO multi-camera video system, which were stored on: (a) six DVR hard drives; and (b) 31 DVD disks. The recordings were made between November 24, 2015, and May 16, 2016.

The Special Master visited CCA-Leavenworth in order to understand how the PELCO video system worked. The PELCO system allowed prison personnel to monitor and record activity using approximately 154 video cameras throughout the facility. The input from these cameras was recorded onto a total of six different DVR hard drives. For example, DVR drive no. 1 contains video recordings from 16 different cameras, while DVR drive no. 5 contains video recordings from 32 different cameras. A given camera was always recorded onto the same DVR drive. Thus, for example, video from the Front Gate Camera was always recorded onto DVR drive no. 1, while video from the South Barber Shop Camera was always recorded onto DVR drive no. 5.[1] Each DVR drive held, at most, about three months' worth of video, with new video replacing old video in a looping fashion. On May 16, 2016, the Government took possession of the six PELCO DVR drives and subsequently delivered them to the Court. It is unclear when the Government obtained possession of the 31 DVD disks, which it also delivered to the Court.

CCA-Leavenworth has nine attorney-inmate meeting rooms. Only seven of these rooms have cameras in them. All seven of these cameras were recorded only onto DVR drive no. 6. These seven cameras, out of the 154 cameras in the facility, are the only ones that might have captured privileged or confidential information, because they recorded meetings between clients and their attorneys.[2]

Further analysis reveals that CCA-Leavenworth did not use two of the attorney-client

---

[1] Defense Exhibit 439, which is a chart created by the Government, is an accurate list of the PELCO video cameras and the DVR drives to which they were assigned.

[2] DVR drive no. 5 captured video from a camera in the hallway adjacent to the attorney-client meeting rooms. This camera is referred to as "low custody attorney" in Defense Exhibit 439. It does not capture any privileged or confidential information.

meeting rooms – both of which do have cameras – during the entire recording period.[3] The chart below summarizes this information.

| Camera Location | PELCO Camera Number | Used for Attorney Meetings? | Privileged Material Recorded? |
|---|---|---|---|
| Attorney Meeting Room 1 | [no camera] | Yes | No |
| Attorney Meeting Room 2 | [no camera] | Yes | No |
| Attorney Meeting Room 3 | 6-18 | Yes | YES |
| Attorney Meeting Room 4 | 6-19 | No | No |
| Attorney Meeting Room 5 | 6-20 | No | No |
| Attorney Meeting Room 6 | 6-21 | Yes | YES |
| Attorney Meeting Room 7 | 6-22 | Yes | YES |
| Attorney Meeting Room 8 | 6-23 | Yes | YES |
| Attorney Meeting Room 9 | 6-24 | Yes | YES |

This information leads to three fundamental conclusions, set out below.

- ***DVR Drive Nos. 1-5, and the 31 DVD disks, Will Be Released to the Parties.***

First, only DVR drive no. 6 contains video recordings of privileged or confidential information. Drive nos. 1-5 do *not* contain video recordings of privileged or confidential information. Further, none of the video recordings on the 31 DVD disks were captured using PELCO Cameras 6-18 to 6-24, so these DVD disks also do not contain privileged or confidential

---

[3] CCA-Leavenworth states it almost never uses attorney rooms 4 and 5 for inmate meetings. Further, CCA-Leavenworth's attorney visitation logs, used to document which rooms were assigned for each attorney-inmate meeting, show no assignments to attorney rooms 4 or 5. Spot-checking the video recordings confirms that no meetings occurred in these two rooms during the recording period.

information. Accordingly, within the next few days, the Special Master will arrange for delivery of copies of these five DVR drives and 31 DVD disks to the Government (Chris Oakley), which will make them available to Coordinating Discovery Counsel (Shazzie Naseem).

- ***DVR Drive No. 6 Will <u>Not</u> Be Released to the Parties.***

Second, although some of the video recordings on DVR drive no. 6 contain privileged or confidential information, many do not. Specifically, in addition to video from the seven cameras that recorded attorney-client meeting rooms, DVR drive no. 6 also holds video from 21 other cameras in CCA-Leavenworth. These 21 other cameras, which are in the kitchen, parking lot, recreation yard, and so on, did not record privileged or confidential information.

The mechanics of the PELCO video system, however, make it very difficult to isolate recordings from a given camera. This means it would be challenging and expensive to extract from DVR drive no. 6 only those recordings that are from the 21 cameras that are not recording attorney-client meeting rooms. To avoid this problem, the Government has agreed it will not use and does not need video-recordings taken from these 21 other cameras. Accordingly, the Special Master will not produce to counsel *any* video recordings contained on DVR drive no. 6, and will retain DVR drive no. 6.[4]

---

[4] In connection with analysis of the *audio* recordings submitted by the Government, the Special Master made available to each attorney recordings of inmate calls made to that attorney. *See Second Report Regarding Telephone-Call Audio Recordings* at 3-5 (docket no. 187). The mechanics of the PELCO video system make it expensive to provide to each attorney analogous video material.

- ***Hundreds of Attorney-Inmate Meetings were Recorded.***

And third, in order to understand the scope of the privilege issue addressed by the parties in their briefs, the Special Master undertook a summary examination of the video from the seven cameras on DVR drive no. 6 that recorded attorney-client meeting rooms.  These recordings were made between February 20 and May 16, 2016, a period of 86 days, for a total of about 14,000 hours.[5]  Even assuming the seven cameras could only record attorney-client meetings during 40 business hours per week, and that two of these cameras (in Meeting Rooms 4 and 5) never recorded a meeting, the Special Master would still have to review about 2,400 hours of video to determine exactly which, and how many, attorney-client meetings were recorded.

Instead, the Special Master obtained visitor logs from CCA-Leavenworth and randomly chose about 30 attorney visits that occurred throughout the 12 weeks in the recording period.  The Special Master then examined the video recordings to determine if these attorney visits with an inmate were recorded.  This analysis revealed that every attorney-inmate meeting listed on the attorney visitor log that took place in an attorney room that held a video camera was, in fact, recorded.  The attorney visitor logs for the 12-week recording period showed a total of over 700 attorney visits to the attorney rooms where recording took place (marked by the cells shaded in red

---

[5] Seven cameras x 86 days x 24 hours/day = 14,448 hours of video.  For some reason, however, certain time periods were not recorded.  For example, there are no recordings on DVR drive no. 6 (from *any* cameras) from April 27-28, 2016.  Various recording gaps exist on the other DVR drives, as well.

in the chart above). It appears all of these attorney-inmate meetings were recorded. Of course, this analysis does not address whether any person ever viewed these recordings.

**RESPECTFULLY SUBMITTED,**

/s/ David R. Cohen
**David R. Cohen**
**Special Master**

**DATED**: January 31, 2017