IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>       Plaintiff,<br><br>    v.<br><br>LORENZO BLACK,<br>KARL CARTER,<br>ANTHON AIONO,<br>ALICIA TACKETT,<br>CATHERINE ROWLETTE, and<br>DAVID BISHOP,<br>       Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**RESPONSE OF SPECIAL MASTER TO GOVERNMENT'S CORRECTED MOTION (DOC. 341) TO QUASH SUBPOENAS OF THE SPECIAL MASTER AND VACATE THE SPECIAL MASTER'S ORDER OF PRODUCTION**

The Special Master hereby responds in opposition to the government's corrected motion (Doc. 341) to quash subpoenas issued by the Special Master and vacate the Special Master's Order of Production. The government's motion should be summarily denied, for the reasons stated below.

**MEMORANDUM IN SUPPORT**

A.  <u>FACTS RELEVANT TO THE MOTION</u>

1. An indictment in this case, which is designated as a complex criminal case, was returned on May 4, 2016. (Doc. 64)

1

2. Initial conferences and hearings revealed issues of significant concern, involving (a) recorded inmate-attorney telephone calls and (b) video recordings made in attorney-client conference rooms at a detention facility operated by Corrections Corporation of America, near Leavenworth, Kansas ("CCA").

3. The hearings also raised serious concerns of alleged prosecutorial negligence or misconduct by the United States Attorney's Office for the District of Kansas ("USAO").

4. Defendants and the Federal Public Defender (as movant intervenor) ("FPD") identified issues rising to a level of constitutional significance, particularly allegations of Fifth and Sixth Amendment violations.

5. The government and FPD both asked for appointment of a Special Master. The Court appointed the undersigned, pursuant to Fed. R. Civ. P. 53 and the inherent equitable authority of the Court, to investigate matters specifically identified by the Court and the parties. (Doc. 143)

6. The Court directed the investigation be conducted in three phases. After completion of Phases I and II, Phase III commenced on May 17, 2016.

7. The Special Master was directed to focus Phase III not only on the procedural changes needed to ensure privacy for privileged communications at CCA, but also on the USAO's conduct, including: (a) knowledge and intent regarding recording of inmate calls and privileged communications at CCA; (b) how the USAO procured audio and video recordings; and (c) the extent to which USAO personnel listened to, watched, or used these recordings. The Court

explicitly directed that all relevant parties must cooperate fully with the Special Master. (Doc. 253)

8. The Special Master filed a Phase III report on October 20, 2017 (Doc. 298). The Court then set a hearing for November 28 to "discuss the Special Master's findings concerning the government's failure to comply with the Phase III investigation" and "any other issues the parties may want to address related to the Phase III investigation." (Doc. 300)

9. On November 3, Mr. Steven Clymer entered his appearance as Special Attorney for the United States. The hearing was continued until January 18, 2018, at his request. (Doc. 308)

10. On December 19, 2017, Mr. Clymer filed the government's motion to quash the Special Master's subpoenas *ad testificandum*, which had been issued and served on several USAO employees and a former employee of the USAO in order to obtain testimony at the January 18 hearing.

11. In the same motion, the government moved to vacate the Special Master's Order to produce documents and other items (hereinafter "the materials") on January 2, 2017 for review of all parties (Doc. 317), and to quash a subpoena *duces tecum* for production of those same materials at the January 18 hearing.

11. On December 21, 2017, the Court ordered a stay of compliance with pre-hearing submission of materials identified in the Special Master's Order of Production and referenced in his subpoena *duces tecum*. (Doc. 345)

B. <u>ARGUMENT AND AUTHORITIES</u>

1. <u>The Order of Production</u>.

The Special Master's Order of Production was issued pursuant to Fed. R. Crim. Pro. 16. The Court has stayed compliance with that Order, which the Special Master assumes also stays responses and replies to the government's motion to vacate. To the extent the Court's stay does not lift the obligation to submit responses and replies, the following arguments and authorities in opposition to the motion to quash the subpoena *duces tecum* are applicable.

2. <u>The Subpoena *Duces Tecum.*</u>

The Court has also stayed compliance with the Special Master's subpoena *duces tecum,* which orders appearance at the January 18, 2018 hearing and production of the same materials identified in the Order of Production. Rule 17(c), Fed. R. Crim. P., provides for issuance of a subpoena *duces tecum* directing the government to produce documents and other things in advance of trial. The substantive rule for the bulk of discovery in criminal cases is Rule 16; Rule 17(c) is not a broad discovery device to get around Rule 16. *United States v. Nixon,* 418 U.S. 683, 699 (1974).

As the government's motion points out, Rule 17 does not create an independent basis for pretrial production of discoverable materials. Rather, it allows a trial court to order the government to produce designated materials in Court "before trial or before they are to be offered in evidence." Rule 17(c)(1).

4

In *Nixon*, the Supreme Court set out the proper analysis when addressing a motion to quash a subpoena *duces tecum* served on the government. The *Nixon* Court found that the issuer of a subpoena *duces tecum* must "clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity." *Id.* at 700; *see United States v. Morris*, 287 F.3d 985, 991 (10th Cir. 2002). If these hurdles are cleared, a Rule 17(c) subpoena *duces tecum* for production of materials "may be quashed if their production would be "'unreasonable or oppressive,' but not otherwise." *Nixon*, 418 U.S. at 698 (emphasis added) (quoting Rule 17(c)).[1]

   a. Relevancy

The government asserts the demanded materials "have no relevance to the case and controversy before the Court in the underlying case." Motion at 6. This claim is patently incorrect. Among the issues squarely before the Court for an evidentiary hearing are allegations in motions of Defendants Carter and Bush that the USAO's negligence and misconduct have impaired their constitutional rights to a fair trial. Defendants claim that: (1) USAO knew of, and failed to demand cessation of, CCA's ongoing recording of inmate-attorney telephone calls and meetings in inmate-attorney conference rooms; (2) USAO listened to and viewed these recordings for use in the Office's investigations and litigation; (3) USAO destroyed the only computer containing evidence that would support or dispute such claims; and (4) USAO failed to cooperate with the Special Master in

---

[1] The government offers argument addressing only relevancy, admissibility, and specificity, which the Special Master addresses below. Motion at 6-10 (Doc. 341) The government offers no additional argument supporting its bare assertion that compliance with the subpoenas would be unreasonable or oppressive.

producing for his examination the available electronic records most likely to either support or cast doubt on the Defendants' Fifth and Sixth Amendment claims. Those colorable (and sometimes uncontested) assertions, together with the other findings already made by the Court after prior hearings, are more than sufficient to show relevance of the demanded materials to defenses in the *Black* case.

In addition to adducing evidence relevant to pending defense motions that raise substantive trial or sentencing defenses—including prosecutorial misconduct—the January 18 hearing is scheduled to discuss the Report of the Special Master and obtain answers to questions previously identified by the Court. This includes available remedies, should either prosecutorial wrongdoing or willful and wrongful failure to cooperate with the Special Master's investigation be proved. In sum, there is no question but that the materials requested are highly relevant.

b. Admissibility

The government claims the demanded materials are inadmissible. Motion at 8. The government offers three arguments to support its claim: the Special Master is not representing a defendant, the Court has no need for the subpoenaed material, and the materials are not subject to disclosure because "much of" them are subject to various privileges. *Id.* None of these arguments is persuasive.

The government allows that the subpoena should be quashed because "the Special Master, as an arm of the Court," does not need access to these

materials "in order for the Court to adjudicate the claims of the parties in the case." The Special Master has been charged to investigate, among other things, the circumstances surrounding CCA's activities, and the USAO's role in those activities and its conduct of prosecution. This task includes collection of materials relevant to those issues. The Court, not the prosecutor, will decide what materials it needs to adjudicate the case before it, including evidence for or against defenses available to movant-Defendants. The prosecutor's opinion of what the Court needs is irrelevant to the question of admissibility.

As for its citation of various privileges to support an argument for inadmissibility, the government's argument and its citation to *Nixon* are upside down. Privileges are *exceptions* to admissibility, and they are available to block production of *otherwise admissible* materials. Indeed, the *Nixon* court affirmed the trial court's **denial** of a motion to quash a subpoena *duces tecum* directed at the President of the United States, overruling the same arguments the government makes here regarding USAO employees (including separation of powers).

The *Nixon* Court first tested the subpoena to former President Nixon for whether the Special Prosecutor had jumped through the three threshold hoops of Rule 17(c), noting that, if these threshold tests were unmet, the subpoena could be quashed and "there would be no occasion to reach the claim of privilege asserted with respect to the subpoenaed material." *Nixon*, 418 U.S. at 698. After "[h]aving determined that the requirements of Rule 17(c) were satisfied," the *Nixon* court concluded the trial court correctly held that the President's claim of

privilege failed regarding at least some of the subpoenaed materials. *Id.* at 713-14.

In this case, as in *Nixon*, it is certain the government's broad-brush claims of privilege cannot succeed against **every** aspect of the subpoena *duces tecum*. *See* government's motion at 8 (Doc. 341) ("**All** of this documentation and testimony is privileged and thus inadmissible.) (emphasis added). To take one example, the government asserts the documents requested are subject to the investigatory privilege. *Id.* The *Touhy* regulation that codifies this privilege explains the government should resist production of documents where "[d]isclosure would reveal investigatory records compiled for law enforcement purposes, ***and*** *would interfere with enforcement proceedings or disclose investigative techniques and procedures the effectiveness of which would thereby be impaired.*" 28 C.F.R. §16.26(b)(5) (emphasis added). The government has made no showing whatsoever that the requested materials would interfere with enforcement proceedings or disclose investigative techniques, much less that this disclosure would actually impair the effectiveness of those techniques going forward. To take a more specific example, the Court and the defendants already know the government uses taint teams; there can be no serious argument that production of documents "relating to the actual or potential use of 'taint teams' in *Black*, including documents outlining general policies and procedures and regulations that would have applied in *Black*," will impair the government's use of taint teams going forward.

8

The Special Master is willing to concede that the government's assertions of privilege are not frivolous, and *may* be well-taken as to *some* of the subpoenaed materials or testimony.  *See* Doc. 336-1 (Special Master stating to Mr. Clymer that, in the subpoena *duces tecum*, "I will be dramatically narrowing the materials I am requesting [compared to the earlier Requests for Production sent to United States Attorney Thomas Beall], as I believe many of the points in your letters to me are well-taken," and "Once you see what my limited/tailored requests are, we can discuss whether you still believe they are overbroad.").  But the government's insistence that the *entirety* of each subpoena must be quashed is overreaching and cannot be sustained on the facts or the law.

  c. Specificity

The government's motion concludes that the demands in the subpoena *duces tecum* "describe only broad, unfocused categories of information, and do not identify specific evidentiary items." Motion at 10.  Saying this, however, does not make it so.  The government's conclusion is made without legal support, nor any link to any demand that allegedly lacks precision or focus.  The Special Master's demands are limited to known categories of information possessed in the ordinary course of business at the USAO, documents already discussed or informally requested with no response or objection from the USAO, and information discussed or referred to by USAO personnel in open court.  *Compare Morris*, 287 F.3d at 991 (10th Cir. 2002) (quashing a subpoena *duces tecum* because, although the information sought was "highly relevant and is arguably admissible," defendant was "unable to verify whether the requested material even

9

exists"). Here, the usual standards of specificity are certainly met: the demands are narrow enough for the government to know what is being demanded and to respond either with production, or a privilege log, or notice that nothing responsive to the demand is in the government's possession or control.

2. The Subpoenas *ad testificandum.*

To the extent the preceding arguments related to subpoenas *duces tecum* are applicable to subpoenas *ad testificandum*, they are incorporated here. But those arguments apply only by analogy. The subpoenas *ad testificandum* are for testimony at the January 18, hearing. They are not controlled by the "early production" provisions of Rule 17(c).

Federal employees are not exempt from being required to appear as commanded in a subpoena from a federal court in a federal criminal case. The government's motion to quash does not allege the subpoenas were improperly issued or served. There is no allegation of any privilege that would excuse the named federal employees from *appearing* and being sworn in for testimony. And there is no explanation of any impediment to their appearances except, apparently, that they are precluded from actually doing anything beyond appearing in response to the subpoena and raising the privilege of nondisclosure set out in 28 C.F.R. §16.21-26.

There is no presumption suggested in those regulations (or in the United States Attorney's Manual ("USAM")), however, that a subpoenaed USAO employee or former employee lacks authority to testify. Indeed, the presumption

is that testimony will *not* routinely be withheld. When the United States is a party, these regulations provide for disclosure authority, not disclosure denials. Any attorney in charge of a case, including an attorney assigned to a USAO (like Mr. Clymer), has the authority to direct compliance with subpoenas to testify unless a demand triggers a privilege in Section 16.26, at which time the decision moves to a supervisory official. In general, in federal cases in which testimony from a USAO employee is sought, authorization is to be *granted* if it is appropriate under relevant substantive law and regulations. USAM §1-6.340.

Of course, there do exist privileges in 28 C.F.R. §16.26 that may be raised by DOJ to preclude substantive testimony of its employees. But in *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951), and in almost every reported case thereafter, the procedure for asserting *Touhy* privileges against subpoenas to DOJ employees and former employees remains the same: if the subpoena is accompanied by a summary of the testimony the employee will be asked to give (as is true in this case), then the employee must (1) appear and be sworn, and (2) either answer questions, or decline to answer for lack of permission from DOJ. Case law does not support the government's motion that the subpoenas should simply be quashed.

Even if the government is correct in this case that "much of" the information the Special Master seeks is subject to privilege (which the Special Master does not concede), at least some of the requested information is not, and the federal employees who are subpoenaed are properly called to provide non-privileged, relevant information. Case law addressing *Touhy* makes clear that

11

subpoenaed government witnesses may not be held in contempt for failing to *testify* without DOJ authority; but they must still *appear*, and then invoke privilege if (and only if) appropriate. "[O]nce a [criminal] defendant follows the *Touhy* procedures, a court may compel attendance or production even if the Government refuses it." *United States v. Fuentes-Correa*, 2013 WL 588892 at *7 (D.P.R. Feb. 13, 2013).

Soon after its *Touhy* decision, the Supreme Court accepted regulatory privilege assertions in the context of a civil case where the government was a party. *United States v. Reynolds*, 345 US. 1, 12 (1953). However, the Court carefully noted there was a difference in criminal cases:

> The rationale of the criminal cases is that, since the Government which prosecutes an accused also has the duty to see that justice is done, it is unconscionable to allow it to undertake prosecution and then invoke its governmental privileges to deprive the accused of anything which might be material to his defense.

*Id*. This same sentiment was echoed in *Committee for Nuclear Responsibility, Inc., v. Seaborg*, 463 F.2d 788, 793-94 (D.C. Cir. 1971), when the D.C. Circuit stated: "Any claim to executive absolutism cannot override the duty of the court to assure that an official has not exceeded his charter or flouted the legislative will." The *Seaborg* court explained:

> [N]o executive official or agency can be given absolute authority to determine what documents in his possession may be considered by the court in its task. Otherwise the head of an executive department would have the power on his own say so to cover up all evidence of fraud and corruption when a federal court or grand jury was investigating malfeasance in office, and this is not the law.

*Id*. at 794.

In sum, the *Touhy* regulations cited by the government may provide grounds for instruction to the subpoenaed witnesses not to testify regarding certain discrete matters. But the regulations do not provide any grounds for quashing the subpoenas *ad testificandum* entirely, especially on the certainly-wrong basis that *every* aspect of *every* topic listed in the *Touhy* descriptions that accompanied the subpoenas is privileged.

## CONCLUSION

For the reasons stated above, the government's motion should be denied.

Respectfully submitted,

*/s/ David R. Cohen*
David R. Cohen
Special Master
24400 Chagrin Blvd. #300
Cleveland, OH 44122
216.831.0001
david@specialmaster.law

14

<u>Certificate of Service</u>

    I hereby certify that on December 28, 2017, I electronically filed the foregoing response using the Court's CM/ECF system, which will send a notice of electronic filing to all counsel of record.

    <u>/s/ *David R. Cohen*</u>