# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

**UNITED STATES OF AMERICA,**
    *Plaintiff,*
    **v.**                   Case No. **16-20032-JAR**

**LORENZO BLACK, *et al.*,**
    *Defendants.*

---

## FEDERAL PUBLIC DEFENDER'S RESPONSE TO THE GOVERNMENT'S MOTION TO TERMINATE PHASE III OF THE SPECIAL MASTER'S INVESTIGATION (D.E. 336)

---

The government's motion to terminate Phase III should be denied for three reasons.[1] First, the government waived its arguments. Second, substantial evidence of systemic Sixth Amendment violations[2] warrant continued inquiry to determine appropriate remedies.[3] Third, Phase III has already produced evidence of the United States Attorney's Office's common scheme or plan to repeatedly violate defendants' constitutional rights.

---

[1] Docket Entry (D.E.) 336; see also D.E. 306. We note that the government filed its response December 18, 2017, some ten days after the court-ordered deadline, without requesting an extension or seeking leave to file out of time. D.E. 308 & 310 (setting December 8, 2017, response filing deadlines). D. Kan. Rule 7.4(b) ("Absent a showing of excusable neglect, a party or attorney who fails to file a responsive brief or memorandum within the time specified in D. Kan. Rule 6.1(d) waives the right to later file such brief or memorandum.").

[2] D.E. 118 at 65 "actually hundreds of Sixth Amendment violations . . ."

[3] See *Shillinger v. Hawthorne*, 70 F.3d 1132, 1143 (10th Cir. 1995).

Finally, quibbling over prospective relief — before the Court has made factual findings or legal conclusions — is premature.

### 1. The government waived or forfeited its objections to Phase III.

The government tardily argues that the Court lacks authority to investigate the USAO's operations and decision-making: "[The] Phase III investigation oversteps . . . boundaries."[4] The government has already waived[5] these objections through its consent, conduct, and inactions.

### 1.1 *The Government Consented to the Special Master's Appointment.*

At the outset of the litigation, the parties jointly requested that the Court appoint a Special Master[6] and it granted that request.[7] The government cannot now argue that the Court never had the authority to

---

[4] D.E. 336 at 10-15.

[5] *Hamer v. Neighborhood Housing Services of Chicago,* __ U.S. __, 138 S.Ct. 13, at n. 1 (2017) ("The terms waiver and forfeiture—though often used interchangeably by jurists and litigants—are not synonymous. '[F]orfeiture is the failure to make the timely assertion of a right [;] waiver is the 'intentional relinquishment or abandonment of a known right.'").

[6] D.E. 110 at 10 ("The government requests that the Court appoint a Special Master . . ."); D.E. 120 at 18-19 ("As mentioned during the prior hearings, the parties agree that appointment of a Special Master may aid the Court with this pending issue regarding the video recordings of attorney meeting rooms at CCA."); D.E. 146 at 2 ("The parties' briefs reveal that: (1) the parties agree and consent to the Special Master's performance of certain duties . . .").

[7] D.E. 146.

grant its own request. Subsequently, the Special Master filed nine reports.[8] Not once did the government object to the Court's authority to appoint the Special Master to conduct this investigation. The government has thus waived — repeatedly — any objection to that authority.

Having consented to the appointment of the Special Master, the equitable-estoppel doctrine prohibits the government from arguing that the Court erred in doing it.[9] The government not only consented to the appointment but pledged to "cooperate fully with the Special Master[.]"[10] Even assuming, *arguendo*, the Court erred in making the initial appointment, the government invited it.[11]

---

[8] D.E. 176 (Nov. 14, 2016); D.E. 177 (Nov. 15, 2016); D.E. 180 (Nov. 18, 2016); D.E. 183 (Dec. 6, 2016); D.E. 184 (Dec. 16, 2016); D.E. 186 (Dec. 21, 2016); D.E. 187 (Dec. 21, 2016); D.E. 193 (Jan. 31, 2017); D.E. 214 (Mar. 16, 2017).

[9] *Davis v. Wakelee*, 156 U.S. 680, 689 (1895) ("[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him."); *see also Zedner v. United States*, 547 U.S. 489, 503-04 (2006); *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001).

[10] D.E. 237 at 7.

[11] *United States v. Lopez-Medina*, 596 F.3d 716, 733 n. 10 (10th Cir. 2010); *United States v. DeBerry*, 430 F.3d 1294, 1302 (10th Cir. 2005) ("Having induced the court to rely on a particular erroneous proposition of law or fact, a party may not at a later stage use the error to set aside the immediate consequences of the error.").

1.2    *The government timely objected to the Court's non-dispositive
Phase I and Phase II Order.*

Granted, the government did initially object to the *scope* of the Special

Master's duties,[12] asking the Court to reconsider the appointment order while

primarily objecting to having to bear the inquiry's costs.[13] Yet the Court

overruled that objection: "contrary to the Government's suggestion, the

Government did not withdraw its consent entirely to the appointment of a

Special Master in this case."[14] The government never challenged that order.

Instead, it vowed to cooperate with the Special Master and comply with the

Court's orders.[15]

---

[12] D.E. 146 at 2 ("the parties are not in full agreement, as the FPD asserts the Special Master should pursue additional duties, to which the Government objects.").

[13] D.E. 163 at 13, filed October 27, 2016 ("The United States, having withdrawn at the September 7, 2016 hearing its consent to the process employed by the Court, requests reconsideration of the Court's appointment of a special master for three reasons: first, under the doctrine of sovereign immunity, the United States cannot be required to pay the special master expenses in this criminal case over its objection; second, the level of financial contributions required of the District of Kansas is disproportionate, unreasonable, and excessive; and finally, the instant case is not the proper forum in which to address, at the expense of the United States, the policies and practices of CCA, an independent contractor and non-party.").

[14] D.E. 182 at 8, filed November 29, 2016.

[15] ABA Journal News, *Federal judge orders special master to investigate federal prosecutors after hard drive is erased,* May 18, 2017, ("U.S. Attorney Tom Beall made this statement to AP: 'Our office has been cooperating with the special master all along—and we intend to continue doing so.'"), http://www.abajournal.com/news/article/federal_judge_orders_special_master_to_investigate_federal_prosecutors_afte

And for some eleven months following the Special Master's appointment,[16] the USAO diligently created the appearance of cooperation. Indeed, after the Special Master filed nine wide-ranging reports,[17] the government conceded that, while it initially "opposed aspects of the role of the Special Master…the government has endeavored to cooperate fully with the Special Master, and has not opposed any of the orders, directions, and requests made by the Special Master."[18] This endeavor, if it ever existed at all, was short-lived.

### 1.3    The government did not timely object to the Court's Phase III Order, waiving or forfeiting the objections it now advances.

On May 17, 2017, the Court issued a 48-page *Memorandum ad Order Directing Phase III Investigation.*[19] The order was explicit: Phase III's focus

---

[16] The Special Master was appointed in October of 2016. D.E. 146. At the very earliest, the government objected to the Special Master's Phase III inquiry on the grounds it now asserts in Mr. Clymer's letter to the Special Master in September of 2017. D.E. 298-9.

[17] D.E. 176 (Nov. 14, 2016); D.E. 177 (Nov. 15, 2016); D.E. 180 (Nov. 18, 2016); D.E. 183 (Dec. 6, 2016); D.E. 184 (Dec. 16, 2016); D.E. 186 (Dec. 21, 2016); D.E. 187 (Dec. 21, 2016); D.E. 193 (Jan. 31, 2017); D.E. 214 (Mar. 16, 2017).

[18] D.E. 237 at 7, filed April 17, 2017; *see also* D.E. 298 at 2 ("Beginning in November of 2016, the Special Master worked cooperatively with the OUSA to craft language . . ."); at 3 ("At the same time, the Special Master also worked cooperatively with the OUSA to craft search terms to be applied to the OUSA's electronic repository of emails and other documents.").

[19] D.E. 253.

was whether the USAO committed misconduct by violating the Sixth

Amendment rights of CCA-Leavenworth detainees.[20] For example, the Court

directed the Special Master to "investigate when the government became

aware of the audio recordings of attorney client calls, and what actions it took

in response to that knowledge."[21] The investigation would attempt to uncover

whether these constitutional violations were intentional:

> The Phase III investigation will further focus on whether the
> government's conduct in obtaining attorney-client calls was intentional
> and purposeful, or inadvertent and unintentional. Although any
> intrusion into attorney-client communications is of grave concern, the
> government's intent or lack of intent will inform the Court as to the
> type and extent of appropriate remedial action the Court will order.
> Thus, the Court directs the Special Master to investigate the intent of
> the USAO's attorneys and staff as well as the intent of investigative
> agents.[22]

Though any motion to reconsider this order was due within 14 days,[23]

the USAO chose not seek that relief. The government knew it could file such

---

[20] *Id.* at 23 ("the Court directs the Special Master to investigate the intent of the USAO's attorneys and staff as well as the intent of investigative agents."); at 43 ("this Order directs a Phase III investigation of the government's knowledge and intent, the government's procurement of the recordings, and whether the government listened to, watched, or otherwise used the audio and video recordings of attorney-client communications."); at 45-47.

[21] D.E. 253 at 12.

[22] *Id.* at 23.

[23] D. Kan. Rule 7.3(b) ("Parties seeking reconsideration of non-dispositive orders must file a motion within 14 days after the order is filed unless the court extends

a motion because it had done so at other times in this same case.[24] Yet it watched its 14-day deadline to do so here sail past. In fact, the USAO's next relevant filing was a *Notice of Correction of Record*, [25] informing the Court that the USAO may have given it false information because — contrary to its repeated representations — its attorneys had indeed intentionally listened to attorney-client communications.

The USAO could have argued that this Court "generally lack[ed] authority to investigate the operations and decision-making of a United States Attorney's Office," in a motion to reconsider — properly filed within 14 days of the Court's order. It chose not to. By deciding to remain silent, it decided to waive its objection.[26]

---

the time."); *Tomelleri v. MEDL Mobile, Inc.,* No. 14-2113-JAR, 2015 WL 5098248, at *1 (D. Kan. Aug. 31, 2015).

[24] D.E. 159 & 163 (Government's motions asking the court to reconsider its orders).

[25] D.E. 276.

[26] *City of Albuquerque v. Soto Enterprises, Inc.*, 864 F.3d 1089, 1093 (10th Cir. 2017) ("unlike jurisdictional defects (which cannot be waived and can be raised *sua sponte* by the court), courts lack authority to remand *sua sponte* for procedural defects, and the parties can waive such defects by failing to raise them in a timely manner"); *Hale v. Fox*, 829 F.3d 1162, 1167 n.3 (10th Cir. 2016) (where government "waived or at least forfeited" timeliness issue in habeas action, "we do not address this issue"); *McCormick v. Parker*, 821 F.3d 1240, 1245-46 (10th Cir. 2016) (declining to consider procedural defense in habeas action in light of state's "textbook example of waiver"); *Teamsters Local Union v. NLRB*, 765 F.3d 1198, 1201 (10th Cir. 2014) ("We don't often raise arguments to help litigants who decline to help themselves, especially when the litigants have consciously waived the arguments by steering us away from them and toward the merits instead.").

The Tenth Circuit agrees, having held that waiting six weeks to assert a privilege defense, as the government now attempts, constitutes waiver.[27] Here the government waited almost four months. A party must act with expediency to avoid waiver of a claim:[28]

> No procedural principle is more familiar to this Court than that a constitutional right, or a right of any other sort, may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.[29]

The government's knowledge, conduct, and silence waived the arguments it now advances to terminate Phase III.

---

[27] *See United States v. Airy*, 518 F.3d at 785; *Peat, Marwick, Mitchell, & Co. v. West*, 748 F.2d 540, 541-2 (10th Cir. 1984) (Waiting more than two months to register an objection constitutes waiver).

[28] *United States v. Ary*, 518 F.3d 775, 783 (10th Cir. 2008) (Examining three main factors in determining waiver regarding the involuntary disclosure of privileged information: (1) the specificity with which the defendant identifies the material; (2) the expediency by which the defendant informs the government that it seized protected material; and (3) the expediency by which the defendant seeks judicial action to enforce the protection.).

[29] *United States v. Olano*, 507 U.S. 725, 731 (1993) (internal quotations marks omitted).

### 1.4 The government waived its objections to the Special Master's request for information.

On July 10, 2017, the Special Master issued a Phase III request to the USAO for information and production of documents.[30] The government did not register any opposition to that request until September 12, 2017 – two months later.  And it presented that objection by a letter to the Special Master,[31] rather than asking the Court for relief.

This was not enough. From the outset, the Court gave the parties clear directives about how to present — and preserve — objections to the Special Master's requests:

> If the Special Master issues an informal ruling or order that is not on the record (such as the resolution of a discovery dispute) either orally, via email, or through other writing, and a party wishes to object to that ruling or order, the party shall ask the Special Master to formalize the ruling or order by filing it on the docket or appearing before a court reporter. **Such request shall be made within three days** of issuance of the informal order or ruling, else the opportunity to object **shall be waived**.[32]

---

[30] *Id.* at 1.

[31] D.E. 289-9 (later filed by the Special Master on October 20, 2017) at 22 ("I would like to bring to your attention authority demonstrating that wide-ranging investigations like this one … trigger separation of powers concerns.").

[32] D.E. 146 at 11 (emphasis added).

And at the government's behest, the Court created a 14-day deadline to object to the Special Master's formal reports. [33] These Court published these deadlines in its October 11, 2016, Order, drawing no objections.

The government missed this deadline as well. It failed to ask the Special Master to formalize his production order, much less within the three-day deadline. [34] Instead, the government sat on its hands for over seven months before rousing itself to challenge the Special Master's authority at all. [35] It did not acknowledge the Court's deadlines or seek leave to file outside of them. [36] Therefore, it has waived its ability to object now.

---

[33] D.E. 146 at 10 n. 9 ("Rule 53(f)(2) provides that parties may file objections 'no later than 21 days after a copy of the [Special Master's order, report, or recommendations] is served, unless the court sets a different time.' FPD suggested setting a time of 7 days instead of 21, while the Government suggested 14 days. The Court chooses to set a 14-day period for filing of objections.").

[34] D.E. 146 at 11

[35] D.E. 336, filed December 18, 2017 (Government's Motion to Terminate Phase III).

[36] Again, D. Kan. Rule 7.4(b) ("Absent a showing of excusable neglect, a party or attorney who fails to file a responsive brief or memorandum within the time specified in D. Kan. Rule 6.1(d) waives the right to later file such brief or memorandum.").

## 2.    Substantial evidence of Sixth Amendment violations justify Phase III.

With a straight face, the government refuses to produce evidence of its misconduct because the defense has no evidence of its misconduct.[37] The government's argument is not just circular but wrong. The defense investigation, the Special Master's inquiry, and the government's own confessions established substantial evidence of systemic Sixth Amendment violations by the USAO. Ignoring this premise requires ignoring the entire record.[38] The Special Master identified over 700 video recordings of attorney-client meetings that the government obtained with a grand-jury subpoena. The government threatened to use these recordings in an attempt to force a defense attorney to abandon her client, thereby gaining a tactical advantage. The government routinely and informally obtains recorded phone calls, including attorney-client calls, without ever notifying counsel. It concedes destroying critical evidence in this case — in defiance of the Court's orders.[39]And it belatedly confessed to intentionally listening to attorney-

---

[37] D.E. 336 at 15; *see also* D.E. 306 at 3 ("defense concerns about violations of the Sixth Amendment and attorney-client privileged are "unfounded;" the Special Master's investigation has "uncovered no such proof.").

[38] *See, e.g.*, D.E. 304.

[39] *Id.* at 38-40.

client phone calls, [40] admitting that it falsely denied this misconduct to the Court.[41] There is substantial evidence of Sixth Amendment violations, compounded by the government's "troubling lack of transparency."[42]

Any shortfall of evidence at this point is the direct result of intentional government obfuscation. The Special Master's last status report: "at this juncture, neither the [USAO] nor USSS is cooperating with the Special Master's investigation."[43] The USAO obstructed the Sixth Amendment inquiry, stalling its progress,[44] and now has the temerity to claim victory. In other words, having erected its strawman, the government then proceeded to

---

[40] *Black*, D.E. 276; *United States v. Ashley Huff*, 14-cr-20067-09-CM, D.E. 529 (Notice of Clarification and Correction) and 536 (Supplemental Notice of Clarification and Correction); *United States v. Juan Herrera-Zamora*, 14-cr-20049-01-CM, D.E. 176 (Notice of Record Correction).

[41] See D.E. 276 Government's Notice of Record Correction, ("the foregoing information is provided to the Court and counsel to clarify and correct any and all prior representations that may be deemed misleading or potentially misleading . . .); *U.S. v. Ashley Huff,* D.Kan. 14-cr-20067-09-CM, D.E. 536 *Supplemental Notice of Clarification,* at 2  (admitting that SAUSA Tomasic listened to recorded calls between Ash and her attorney, and that " AUSA Flannigan and the case agents were aware of this particular call that 'involved' Mr. Session. Case agents may have also listened to this recorded call. AUSA Flannigan does not recall ever personally listening to this call, though she may have been present when the recorded call was played in preparation for the sentence hearing.").

[42] D.E. 253 at 29.

[43] D.E. 298 at 8.

[44] We address this more fully in our Motion to Show Cause, D.E. 301.

demolish "the pitiful scarecrow of its own creation."[45] Though the Court has noted the probability of "hundreds of Sixth Amendment violations,"[46] the government willfully ignores that evidence and its own concessions, urging the Court to abandon its mission based on the reality-defying premise that no violations exist.

The government's circular argument may sound analogous to selective prosecution cases, at least in terms of the discovery sought by the defense.[47] In *United States v. Armstrong*, the defense sought discovery of whether race had any role in the prosecutorial decision.[48]  The Court acknowledged some defenses — such as selective prosecution — may require a court to "exercise judicial power over a special province of the Executive."[49] This is, in part, because prosecutors are "subject to constitutional constraint."[50] Ultimately, the Court set a bar for discovery of prosecutorial policy, practices, and

---

[45] *United States v. Havens*, 446 U.S. 620, 630 (1980) (Brennan, J. dissenting).

[46] D.E. 118 at 65.

[47] The government continues to treat the Specials Master as a party to the proceeding rather than as an arm of the Court. That distinction in power and access should be made clear.

[48] 517 U.S. 456, 465 (1996).

[49] *Id. (internal marks omitted)*.

[50] *Id.*

discretion—the defense[51] must present clear evidence that the prosecution has violated the constitutional principle at stake.[52]

If *Armstrong* set the appropriate bar, then we have already cleared it several times over. By the USAO's own admissions in its *Notices*, at least one member of its office intentionally listened to conversations between attorneys and clients in at least two separate cases. That evidence *alone* is sufficient to require the government to produce discovery on the issue — even concerning internal policy and practice. The defense has more than met the burden of *Armstrong,* entitling it to discover evidence of governmental practice and policy in obtaining protected attorney-client communication.

### 3.    Phase III is essential to determine the proper remedy for the government's Sixth Amendment violations.

We agree with the government: individual defendants can and will seek legal redress of the Sixth Amendment violations through their individual cases.[53] But that is not the exclusive, nor even advisable, path this matter should take. Motions were filed in over 70 cases involving defendants

---

[51] This standard, of course, applies to the defense. The Special Master is not a party, and *Armstrong* does not contemplate the Court's inherent authority to require the government to respond to its inquiries.

[52] *Id.* at 465.
[53] D.E. 336 at 19.

prosecuted by the USAO and detained at CCA. [54] But the commonality of the issues dispersed among so many cases suggests consolidation rather than division. Stove-piping individual claims relying on the same core operative facts wastes judicial resources and risks inconsistent results.

This litigation has revealed a common scheme or plan[55] by the USAO to violate the Sixth Amendment rights of defendants. Karl Carter, a defendant in this case, has a motion to dismiss pending[56] that, standing alone, justifies Phase III. But Mr. Carter's motion rests on more than the same facts that exist in many other criminal prosecutions in this district. The USAO obtained recorded attorney-client phone calls in many cases, unrelated to the named defendants in this case, and then disseminated those confidential communications in discovery to numerous other parties — including

---

[54] A search of CM/ECF shows that more than 70 defendants in the District of Kansas filed return of property motions following the initial disclosure of government's conduct in August 2016 and subsequent filings and hearings in this case. Many of these motions are still pending in District Court and many more preserved the issues and are within the time limits for post-conviction remedies to be pursued.

[55] *United States v. Damato*, 672 F.3d 832, 845 (10th Cir. 2012) ("acts are part of a common scheme or plan if they are 'substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purposes, or similar modus operandi.'") (quoting U.S.S.G. § 1B1.3 app. n. 9(A)).

[56] D.E. 333.

unidentified law enforcement agencies.[57] The government caused the spillover of privileged communications from this case into others.

The breadth of the government's intrusion has compelled the Special Master's to conduct an extremely complex and resource-intensive investigation.[58] The government has consistently objected to funding the inquiry.[59] Now the government urges the Court to piecemeal the litigation, forcing every affected defendant to bear individually the investigative burden to develop the same core facts. The Court should decline that invitation as inefficient, contrary to judicial economy, and foreign to the interests of justice.[60]

### 4. Phase III should not be terminated based on a premature argument that prospective relief is unwarranted.

Finally, the government argues "further investigation is not warranted in order to fashion any prospective relief."[61]  Yet it is premature to speculate

---

[57] Def. Ex. 449.

[58] Fed.R.Civ.Pro. 53(a)(1)(C); D.E. 146 at 2, n.2.

[59] D.E. 163.

[60] As the Court observed during the hearing on September 7, 2016, "we're here because of the Justice Department, not because of the defense, not because of the Court …" D.E. 135 at 150.

[61] D.E. 336 at 19.

about remedies.[62] Undeterred, the government contends that any potential remedies "would be inappropriate and unconstitutional for the Court to prospectively require the U.S. Attorney's Office to adopt specific internal policies or procedures[.]" This completely misses the mark. While the judiciary does not write policy for the USAO, but it is a core constitutional role of the courts to provide relief for governmental misconduct[63] and to deter future misconduct.[64] The parties' efforts to reach an agreed resolution have been unsuccessful, and the government's refusal to cooperate in the investigation — in violation of the Court's order to do so — may warrant additional remedies.[65]

---

[62] In August 2017 and again in December 2017, the FPD offered by letter to discuss and negotiate a Memorandum of Agreement with the USAO to address the issues raised by the Phase III inquiry. Those efforts have not been well received.

[63] *Shillinger*, 70 F.3d at 1142 ("we hold that when the state becomes privy to confidential communications because of its purposeful intrusion into the attorney-client relationship and lacks a legitimate justification for doing so, a prejudicial effect on the reliability of the trial process must be presumed. In adopting this rule, we conclude that no other standard can adequately deter this sort of misconduct.").

[64] *See, e.g., Terry v. Ohio*, 392 U.S. 1, 12 (1968) ("Ever since its inception, the rule excluding evidence seized in violation of the Fourth Amendment has been recognized as a principal mode of discouraging lawless police conduct. … Thus its major thrust is a deterrent one.").

[65] *Chambers v. Nasco*, 501 U.S. 32, 43-45 ("A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process.").

## Conclusion

In an effort to avoid judicial and public scrutiny while profiting from its own obstruction, the government asks the Court to forego the hearing and terminate the Special Master's inquiry. But the government's protests arrive too late and without foundation. Its motion comes too little and much too late, advancing only long-waived claims while willfully shutting its eyes to the state of the record and refusing to account for its own conduct. The government's motion should be denied.

Respectfully Submitted,

s/ Melody Brannon
MELODY BRANNON #17612
Federal Public Defender
for the District of Kansas
117 SW 6th Avenue, Suite 200
Topeka, Kansas 66603-3840
Phone: 785.232.9828
Fax: 785.232.9886
Melody_Brannon@fd.org

s/ Branden A. Bell
BRANDEN A. BELL #22618
Assistant Federal Public Defender
for the District of Kansas
117 SW 6th Avenue, Suite 200
Topeka, Kansas 66603-3840
Phone: 785-232-9828
Fax: 785-232-9886
Branden_Bell@fd.org

s/ Kirk C. Redmond
KIRK C. REDMOND #18914
First Assistant Federal Public
Defender
for the District of Kansas
117 SW 6th Avenue, Suite 200
Topeka, Kansas 66603-3840
Phone: 785-232-9828
Fax: 785-232-9886
Kirk_Redmond@fd.org

s/ Rich Federico
RICH FEDERICO #22111
Staff Attorney
for the District of Kansas
117 SW 6th Avenue, Suite 200
Topeka, Kansas 66603-3840
Phone: 785-232-9828
Fax: 785-232-9886
Rich_Federico@fd.org

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 29, 2017, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record in this case.

<u>s/ Rich Federico</u>
Rich Federico