**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.  16-20032-02-JAR-TJJ |
| | ) |
| KARL CARTER, | ) |
| | ) |
| Defendants. | ) |

## DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS
## FOR PROSECUTORIAL MISCONDUCT

Defendant Karl Carter ("Defendant Carter"), by and through undersigned counsel David J. Guastello, and in accordance with Local Rule 7.1(c), respectfully submits his reply in support of his motion to dismiss.

## I.    INTRODUCTION

Defendant Carter asserts in his motion to dismiss that this Court should dismiss the superseding indictment with prejudice based on the prosecutorial misconduct committed by the government in obtaining and disseminating attorney-client telephone communications between Carter and his attorneys and the unlawful video recording of attorney-client meetings between Carter and his attorneys at CCA.  The actions of the government constitute a violation of defendant Carter's Fifth and Sixth Amendment rights.  Alternatively, defendant Carter suggests that this Court should dismiss the superseding indictment pursuant to its inherent equitable powers to impose sanctions in light of the above referenced prosecutorial misconduct coupled with it lack of willingness to follow this Court's order to cooperate with the requests of the special master and its bad faith spoliation of evidence.

The government, in its in its Response in Opposition, argues that (1) none of the communications between Carter and his attorney in the WDMO case are relevant in the instant case and should be disregarded by the Court; (2) the conversations Carter had with his attorneys are not privileged; and (3) even if the communications between Carter and his attorneys are privileged there is no prejudice.  (Gov't Resp, D.E. 353 at 8)  The government conveniently ignores the fact that the primary purpose of Phase III of the special master's investigation is to determine whether or not the government intentionally and purposefully procured and obtained recordings of attorney-client communications, and whether or not, the government listened, viewed and/or used such recordings.  (Gov't Resp., D.E. 353 at 1-38)  The government has not cooperated with the special master's investigation which has negatively impacted Carter's ability to assert and protect his Constitutional rights.  Further, while it is obvious why the government would like this Court to ignore the fact that it possessed and distributed attorney-client phone recordings between Carter and his WDMO attorney, this demonstrates how the prosecutorial misconduct in the District of Kansas can spill over to prejudice a defendant prosecuted in another district.  As discussed below, defendant Carter asserts that the conversations he had with his attorneys are in fact privileged and he has suffered both actual and presumed prejudice.  Further, as argued more fully in the motion to dismiss, Carter suggests that this Court should exercise its equitable powers and impose the sanction of dismissal based on the government's refusal to follow this Court's orders and the special master's investigation.

## II.    LEGAL ANALYSIS/ARGUMENT

### A.    Defendant Carter's phone calls with his attorneys were privileged and the privilege was not waived

The attorney client privilege protects "confidential communications by a client to an attorney in his capacity as a legal advisor." *Fisher v. United States*, 425 U.S. 391, 403, 96 S.Ct. 1569, 48 L.ed.2d 39 (1976)).  The privilege afforded to confidential communications between client and attorney is well established in the Federal Courts and was recognized at Common Law. *Prichard v. United States*, 18 F.2d 326 (6th Cir. 1950), aff'd 339 U.S. 974, 70 S.Ct. 1029, 94 L.Ed. 1380 (1950).  There exists a policy of "insuring the right of every person to freely and fully confer with and confide in a person having knowledge of the law and skilled in its practice, so that adequate advice may be received and proper defenses asserted. *Baird v. Koerner*, 279 F.2d 623 (9th Cir. 1960).  The general rule is the confidential communications between client and attorney, are not to be revealed at any time.  The privilege, indeed, is not that of the attorney, but of the client; and it is indispensable. *Chirac v. Reinicker*, 24 U.S. 280, 294 (1826).

Defendant Carter alleges in his motion to dismiss that two calls between defendant and undersigned counsel were obtained by the government and distributed in discovery to the parties in *U.S. v. Black*.  (D.E. 333 at 4)  Carter further alleges that those calls consisted of legal advice regarding the underlying litigation in *U.S. v. Black*.  (Id.)  In addition, five calls were intercepted and distributed in discovery between Defendant Carter and attorney Johnston.  (Id.)  These calls consisted of discussions of legal strategy, advice and facts of the underlying case in the WDMO. (Id.)  All of the calls between defendant Carter and his attorneys were communications initiated by the client to his attorney in their capacity as a legal advisors and are therefore privileged.

The government argues the privilege is waived by disclosure of a protected communication to a third party.  (Gov't Resp., D.E. 353 at 12)  As this Court is well aware, any

waiver of the attorney-client privilege must be done knowingly and intelligently by the client. *Patterson v. Illinois*, 487 U.S. 285, 292 (1988) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)) ("In the past, this Court has held that a waiver of the Sixth Amendment right to counsel is valid only when it reflects -an intentional relinquishment or abandonment of a known right or privilege."); (*see United States v. Ary*, 58 F.3d 775 (10th Cir. 2008) (explaining that attorney-client privilege is waived when disclosure of communication is voluntary)).  The government in its response describes the process in which attorney-client calls could be placed on a "private" list that presumably would prevent the recording of the calls.  The only way attorney-client calls were not recorded or monitored is if the inmate places the calls from one of the Securus pay phones installed at CCA, and the inmate's attorney had initiated the CCA phone call procedure. (Gov't Resp., D.E. 353 at 5)  Importantly, the procedure for making an attorney number private can only be initiated and completed by the attorney and not the client.  Further the procedure for placing an attorney number on the private list was buried a thirty-page inmate handbook, no additional notice to inmates other than the handbook was provided, no notice on CCA's website informing the defense bar about the procedures for privatizing attorney phone numbers.  In short, the procedure created by CCA and Securus for privatization of the calls was inadequate such that any alleged waiver was not done knowingly and intelligently by defendant Carter.

**B.      The WDMO videos are privileged, the privilege was not waived and defendant has suffered prejudice**

The government suggests that Carter has a cognizable Sixth Amendment right only in the calls between Carter and undersigned counsel and not in the communications between Carter and his WDMO attorney.  (Gov't Resp., D.E. 353 at 27)  In support of it argument that Carter's Sixth Amendment right attaches only after charges were filed in this case on April 9, 2016 the government relies on *United States v. Williston*, 862 F.3d 1032 (10th Cir. 2017).  In *Williston*, the

defendant was in custody on unrelated state charges when the government served him with a grand jury subpoena. *Williston*, 862 F.3d 1028.   Williston ultimately testified before the grand jury and his testimony was later used in his federal prosecution. *Id*., 1028-1029.   Among the issues on appeal, Williston raised a Sixth Amendment argument that he was required to have a lawyer present during his grand jury testimony.   *Id*. at 1033.   As the Tenth Circuit pointed out, defendant's argument "hinges on his alleged status as a de facto defendant at that time, even though he had not yet been charged with any federal crime." *Id*., 1033-1034.

The facts here are easily distinguished from those in *Williston*.   Carter had obviously been charged federally in the WDMO and attorney Johnston was representing him in that matter. But most importantly, this is not a situation where Carter is suggesting that he was entitled to have counsel present during questioning before a grand jury like in *Williston*.   Rather, Carter is suggesting that the government obtaining and distributing confidential and privileged communications between him and his lawyers is a violation of his Fifth and Sixth Amendment rights.

The Government next asserts that the video recordings of defendant Carter and attorney Johnston are not privileged communications and that defendant is unable to show that the government has used these communications to prejudice the defendant. (Gov't Resp., D.E. 353 at 19-21)  Specifically the government suggests that "[s]oundless video of an attorney-inmate meeting cannot, standing alone, reveal attorney-client privileged information unless a participant is using sign language or the viewer can read lips." (Gov't Resp., D.E. 353 at 19)  This Court has already made the finding that the video recording of the attorney-client meeting rooms at CCA-Leavenworth were of such quality that one could easily observe non-verbal communications. (D.E. 253 at 24)  The clarity of the surveillance cameras at CCA is further demonstrated by

quality of the image of federal prosecutors touring the CCA facility in exhibit 2 of defendant's

motion to dismiss.  (D.E. 333, exhibit 2)

> **C.    Defendant Carter has suffered both actual and presumed prejudice by the government's intentional intrusion into privileged attorney-client communications.**

Lastly, the government suggests that even if defendant can show that the communications

are privileged, "Defendant cannot show that the government has used these communications in a

manner that has prejudiced his counsel's ability to provide effective assistance of counsel to

Defendant."  (Gov't Resp., D.E. 353 at 21)    The government, relying upon *Weatherford v.*

*Bursey*, 429 U.S. 545, 558 (1977), argues that intrusions into the attorney-client relationship are

not *per se* violations and therefore defendant must demonstrate prejudice.  (Gov't Resp., D.E.

353 at 24)  The facts in *Weatherford* involved an informant who was present during an attorney-

client meeting.  Importantly, in *Weatherford* there was no evidence that the informant, who was

present during two attorney-client meetings, had conveyed information about defense strategy to

the government.  *Weatherford*, 429 U.S. at 558.  Unlike here, in *Weatherford* the court could

easily determine the extent, if any, of the disclosure of the attorney-client communication. Here

the entireties of attorney-client telephone communications were recorded and disseminated by

the government.  The government's intentional intrusion into attorney-client communications is

further supported by the fact that the government subpoenaed all video from CCA after the

AUSAs had toured the facility giving them reason to know the request included attorney-client

communications.    In short, unlike *Weatherford* the government has intentionally intruded into

the attorney-client relationship and the full extent to the dissemination of those communications

remains to a large degree unknown.

The possible ways in which Carter may have been prejudiced are too numerous to list. The government may have listened to attorney-client communications pre-indictment and used the information to foster their ongoing pre-trial investigation, used the information either directly or derivatively to charge the defendant, used the information for determining the timing of arrest and charges among other possible prejudicial uses.   The government may have listened to defendant Carter's calls with his WDMO attorney to determine defense sentencing strategy, whether defense counsel was likely to proceed to sentencing in May 2016 or instead request a continuance.   The government had an incentive to charge Carter prior to his sentencing in the WDMO in order to gain his cooperation or take away his credit for "acceptance of responsibility."  Ultimately defendant Carter did lose any credit for acceptance of responsibly due to the criminal complaint filed in this matter.   That being said, regardless of whether defendant Carter has suffered actual prejudice (which he has) due to the government's intentional intrusion into his Sixth Amendment rights, prejudice should be presumed. *Shillinger v. Hawthorn*, 70 F.3d 1132, 1142 (10th Cir. 1995) ("we hold that when the state becomes privy to confidential communications because of its purposeful intrusion into the attorney-client relationship and lacks a legitimate justification for doing so, a prejudicial effect on the reliability of the trial process must be presumed.")

**D.    The Court should dismiss the superseding indictment with prejudice based on the government's spoliation of evidence, its unwillingness to cooperate with this Court's order and Phase III of the special master's investigation.**

The government asserts that defendant's claim that the government has been unwilling to cooperate with the requests of the special master is "both inaccurate and irrelevant."  (Gov't Resp., D.E. 353 at 33)  The record adequately reflects the government's level of cooperation with this Court's Orders and the requests of the special master and does not need to be further

addressed here.  The government goes on to suggest that "the Special Master's investigation is

not even relevant to Defendant's case."  (Gov't Resp., D.E. 353 at 34)  This argument seems

directly opposed to Steven Clymer's letter to the Special Master regarding the request for

production of materials.  In that letter Mr. Clymer states,

> [m]ore importantly, there is no evidence that any defendant indicted in the
> Black case suffered a violation of his or her Sixth Amendment right to
> counsel or infringement of his or her attorney-client privilege.  Indeed, it is
> my understanding that only one of the six indicted defendants in Black,
> Karl Carter, was housed at CCA during the investigation, and there is no
> evidence known to me suggesting that the government viewed or used any
> video of Carter meeting with an attorney or listening to or used any audio
> files of a telephone call involving Carter and his lawyer.  (Indeed, I know
> of no evidence showing that such video or audio files were obtained by the
> government.)

(D.E. 298-9 at 10-11)  Mr. Clymer appears to be relying, in part, on the assertion that only

defendant Carter has a potential Sixth Amendment assertion as a basis to support the

government's refusal to produce materials requested by the special master.  Mr. Clymer went on

to inaccurately assert that the government never obtained audio files of defendant Carter and his

attorneys.  This assertion by Mr. Clymer is simply not true.

In fact, the government in its Response in Opposition highlights the relevance of the

special master's investigation to defendant Carter's case.  In its response the government argues

that "Defendant cannot show that the government has even listened to the calls or viewed the

video, which would be necessary to any showing of prejudice."  (Gov't Resp., D.E. 353 at 28)

The special master in previous phases the investigation established that the government in fact

obtained and distributed multiple calls between defendant Carter and his attorneys.  Later, this

Court authorized Phase III of the investigation, directing the special master "to investigate

whether or not the government intentionally and purposefully procured and obtained recordings

or attorney-client communications, and whether or not, the government listened, viewed and/or

used such recordings.ö  (D.E. 253 at 6)  The governmentøs refusal to cooperate with Phase III is highly relevant to defendant Carter and directly impacts his ability to assert and protect his Constitutional rights.

## III.    CONCLUSION

Defendant Carter respectfully suggests that due to the governmentøs violation of Carterøs Fifth and Sixth Amendment rights coupled with its refusal to follow this Courtøs orders and lack of cooperation with the special masterøs investigation, this court should exercise its equitable powers and impose the sanction of dismissal with prejudice.  For all of the above reasons and the reasons set forth in defendantøs motion to dismiss, defendant Carter respectfully requests that the Court grant his motion to dismiss.

Dated:  January 5, 2018                            Respectfully submitted,


                                        /s/ David J. Guastello_____
                                        David J. Guastello (MO# 57924) (KS# 22525)
                                        811 Grand Boulevard, Suite 101
                                        Kansas City, Missouri 64106
                                        Telephone: (816) 753-7171
                                        david@guastellolaw.com

                                        **ATTORNEY FOR DEFENDANT**
                                        **KARL CARTER**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 5th day of January 2018, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which sent notification of such filing to all registered participants.

<u>/s/ David J. Guastello</u>
David J. Guastello
Attorney for Defendant