| | |
|---|---|
| **From:** | Rask, Scott (USAKS) |
| **To:** | Barnett, Debra (USAKS) 1; Beall, Thomas (USAKS) 1; Metzger, Emily (USAKS); Flannigan, Kim (USAKS); Slinkard, Duston (USAKS) |
| **Cc:** | Oakley, Chris (USAKS); Tomasic, Erin (USAKS) |
| **Subject:** | RE: Pleading |
| **Date:** | Tuesday, September 6, 2016 5:17:51 PM |
| **Attachments:** | CCA Special Master Supplement.docx |

In the hope of minimizing the delay in the review process, I will try to send as I finish a section.  Here are the first 3 pages that covers the intro and request to present evidence.

Scott

**From:** Rask, Scott (USAKS)
**Sent:** Tuesday, September 06, 2016 5:07 PM
**To:** Barnett, Debra (USAKS) 1 <DBarnett1@usa.doj.gov>; Beall, Thomas (USAKS) 1 <TBeall1@usa.doj.gov>; Metzger, Emily (USAKS) <EMetzger@usa.doj.gov>; Flannigan, Kim (USAKS) <kflannigan@usa.doj.gov>
**Cc:** Oakley, Chris (USAKS) <COakley@usa.doj.gov>; Tomasic, Erin (USAKS) <etomasic@usa.doj.gov>
**Subject:** RE: Pleading

Okay thanks.

With respect to the language on page 3 about "reserving our right to present evidence" in our pleading filed on August 15.  In looking at doc. 110 at 15 is where we mention "and if needed, set a hearing for the presentation of evidence by the government . . ."  Is that where we reserved our right, as I am not finding another direct reference in the pleading to that effect?

Thanks,

Scott

**From:** Barnett, Debra (USAKS) 1
**Sent:** Tuesday, September 06, 2016 4:41 PM
**To:** Rask, Scott (USAKS) <SRask@usa.doj.gov>; Beall, Thomas (USAKS) 1 <TBeall1@usa.doj.gov>; Metzger, Emily (USAKS) <EMetzger@usa.doj.gov>; Flannigan, Kim (USAKS) <kflannigan@usa.doj.gov>
**Subject:** RE: Pleading

Scott,

Just so you know, the changes that I discussed with you all were from Tom, Duston, Emily and myself.

Thanks, Deb



**From:** Rask, Scott (USAKS)
**Sent:** Tuesday, September 06, 2016 4:30 PM
**To:** Beall, Thomas (USAKS) 1 <TBeall1@usa.doj.gov>; Metzger, Emily (USAKS) <EMetzger@usa.doj.gov>; Barnett, Debra (USAKS) 1 <DBarnett1@usa.doj.gov>; Flannigan, Kim (USAKS) <kflannigan@usa.doj.gov>; Oakley, Chris (USAKS) <COakley@usa.doj.gov>; Tomasic, Erin (USAKS) <etomasic@usa.doj.gov>
**Cc:** Capwell, Carrie (USANYE) <CCapwell@usa.doj.gov>
**Subject:** Pleading

All:

Here is the latest version to which I will add the suggested changes from Emily and Deb. Carrie has also provided some helpful info regarding Rule 6(e), as that seemed to be a concern to Judge Robinson in the first hearing. I will find a way to incorporate that into an area that need not be considered by the Special Master or the Court. Erin will also be looking for some additional case law on a privilege area from about p. 28. I expect this editing process to ensure the tone is appropriate will take at least one hour, but may be closer to two.

Scott

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 16-20032-JAR |
| | ) |
| LORENZO BLACK, | ) |
| KARL CARTER, | ) |
| ANTHON AIONO, | ) |
| ALICIA TACKETT, | ) |
| CATHERINE ROWLETTE, | ) |
| and | ) |
| DAVID BISHOP, | ) |
| | ) |
| Defendants. | ) |

**UNITED STATES' SUPPLEMENTAL RESPONSE TO THE FEDERAL PUBLIC DEFENDER OFFICE'S MEMORANDUM IN SUPPORT OF PROPOSED ORDER TO APPOINT A SPECIAL MASTER, MOTION FOR AN OPPORTUNITY TO PRESENT EVIDENCE, AND GOVERNMENT'S PROPOSED ORDER APPOINTING A SPECIAL MASTER**

The United States of America, by and through undersigned counsel, responds to the Federal Public Defender Office's (FPD's) Memorandum in Support of Proposed Order to Appoint a Special Master (doc. 119). The parties agree the Special Master should be given the following duties:

- eExcise and retain video recordings of attorney-client meetings at CCA;
- Provide copy of video recordings without attorney-client meetings to the government and Coordinating Discovery Counsel;

Ms. Rokusek stated that she was not even comfortable meeting with Dertinger to discuss this issue given the accusations. Ms. Rokusek asked AUSA Flannigan whether she should meet with Dertinger, and AUSA Flannigan responded that she did not know the answer, and suggested that Ms. Rokusek call Kansas Disciplinary Administrator Stan Hazlett to inquire. Ms. Rokusek suggested that she would also be conflicted on Phommaseng's case given that she believed Phommaseng conveyed the information contained in the proffer report to Dertinger. SAUSA Tomasic stated that she had not contemplated that conflict. Ms. Rokusek explained that Dertinger and Phommaseng were friends inside CCA, and she believed Phommaseng passed the information in John Doe's proffer to Dertinger.

Ms. Rokusek stated surely AUSA Flannigan and SAUSA Tomasic would not take the word of two inmates making accusations against her. In response, SAUSA Tomasic explained that an agent was in the process of viewing CCA video recordings to corroborate the cooperators' statements. The agent intended to use CCA's visitation log to view footage around the time of Ms. Rokusek's visits with Dertinger. SAUSA Tomasic explained that the agent was looking at video recordings around the time of Ms. Rokusek's video to see Dertinger's reaction and the other inmates' reactions after he met with Ms. Rokusek. SAUSA Tomasic explained that, thus far, the agent had only found video of Dertinger walking down the hall near the time of one of Ms. Rokusek's visits. SAUSA Tomasic explained that the agent was also tasked with locating attorney-client video recordings.[16] Ms. Rokusek asked if she could have some time to decide on

> Commented [OC(4)]: ? Is this what you intend to say?

---

[16] This was the second time SAUSA Tomasic notified Ms. Rokusek that the government was in possession of CCA recordings including footage of attorney-client meetings. Ms. Rokusek did not seem concerned by this second notification as she did not ask for clarification of any sort. Ms. Rokusek did not inquire regarding the procedure that would be used in handling the video recordings of attorney-client meetings. And SAUSA Tomasic did not explain the taint team procedure that had been employed, and would have continued to be employed, in the *Black* case. Specifically, SAUSA Tomasic did not explain that Agent Stokes was locating the relevant footage,

contacting their attorney on the recorded and monitored lines at CCA, the inmates waived their privilege.[24]

> **1. Regardless of the fact that the phone calls are not privileged, the United States does not object to the Special Master's excise of the recorded calls.**

The United States has shown that an inmate waives privilege by not advising his attorney to request that CCA "block" the attorney's number from its recording system and by making a phone call to his attorney on a telephone he knows is subject to recording. Although the law is clear that these calls are not privileged, agents involved in the review of recorded telephone calls have taken steps to cease review once it became apparent that the phone call involved a law office, and when it learned that an agent had inadvertently listened to between ten and fifteen seconds of a call, SAUSA Tomasic contacted the defense attorney.[25] Thus, even assuming the recorded inmate calls are privileged, the government did not intentionally obtain them and did not access any attorney-client communications.

Therefore, if the Court is so inclined, the United States does not oppose tasking the Special Master with excising phone calls between an attorney and client. If so ordered, the Court should direct the Special Master to order defense counsel to provide the Special Master with all known phone numbers of the attorneys representing the defendants involved in the recorded calls to aid the Special Master.

### D. Video Recordings

---

[24] "*Sedillos v. Bd. of Educ. of Sch. Dist. No. 1*, 313 F. Supp. 2d 1091, 1093 (D. Colo. 2004) ("the attorney-client privilege can be waived by [a]ny voluntary disclosure by the client of an otherwise privileged confidential communication").

[25] "In order to be covered by the attorney-client privilege, a communication between a lawyer and client must relate to legal advice or strategy sought by the client." *United States v. Johnston*, 146 F.3d 785, 794 (10th Cir. 1998).

As stated in the Government's Recommendation Related to Scope of Special Master and Proposal Not to Retain Certain Evidence (doc. 120, filed 3/23/16), no prosecutor nor agent has viewed any video of attorney-client meetings in the video provided by CCA in this case, or any other case. (Doc. 120 at 3-4). Therefore, the FPD's statement in their suggestions that "the practice and purpose of these recordings, the time-span, the facilities that engaged in these recordings, and the distribution of these recordings to any USAO or agent, present an exceptional condition" is untrue. Unless the FPD is alleging the government is being untruthful, and has evidence to support such a bold allegation, the governments' response should be sufficient.

**II. Additional tasks the Court may want to assign to the Special Master**

    *A. Computers from CCA's law libraries*

Agents copied hard drives from computers located in the law libraries at CCA pursuant to the April 8, 2016, search warrant. Based upon information revealed during the investigation, it appears that inmates were coordinating the exchange of contraband by leaving "notes" on the computers discussing the delivery and location of contraband. However, since the computers were located in the law libraries, it is possible that an inmate used the computer to draft a letter to counsel. It is the understanding of the United States that the computers did not have internet access, so no email communications should be present on the drives, however, if an inmate chose to type a letter to counsel using the computer available to all inmates in the law libraries, that letter and/or data associated with the data may be on the computer.

> **Commented [OC(7)]:** Erin—you will need to add more facts, including what you and Tanya had put in place as far as taint procedures.

Prior to the FPD's motion, government counsel had discussed with attorneys assigned to the *Black* defendants, proposed methodology in searching the computers to make sure no privileged information was revealed to government investigators. However, since the parties are requesting the Court to appoint a Special Master, it may be appropriate to assign the special master

34