IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**UNITED STATES OF AMERICA,**
                        *Plaintiff,*

**v.**                                        Case No. 16-cr-20032-JAR-02

**KARL CARTER,**
                        *Defendant.*

---

**BRIEF OF THE ETHICS BUREAU AT YALE
AS *AMICUS CURIAE* IN SUPPORT OF DEFENDANT AND THE
FEDERAL PUBLIC DEFENDER**

---

Cheryl A. Pilate
*Counsel of Record*
Morgan Pilate LLC
926 Cherry Street
Kansas City, MO 64106
M: (816) 471-6694
F: (816) 472-3516
cpilate@morganpilate.com

Lawrence J. Fox
*Of Counsel*
Yale Law School
127 Wall Street
New Haven, CT 06511
M: (215) 816-8571
F: (212) 687-2123
lawrence.fox@yale.edu                       Dated: November 9, 2018

## INTEREST OF *AMICUS CURIAE*[1]

The Ethics Bureau at Yale is a clinic composed of fourteen law school students supervised by Lawrence J. Fox, an experienced practicing lawyer, lecturer, and ethics professor. The Bureau has drafted *amicus* briefs in matters involving lawyer and judicial conduct and ethics; has assisted defense counsel with ineffective assistance of counsel claims implicating issues of professional responsibility; and has provided assistance, counsel, and guidance on a pro bono basis to not-for-profit legal service providers, courts, and law schools.

Because the impending matter implicates the right of every criminal defendant to communicate confidentially with his or her lawyer, *Amicus* believes that it might assist this Court in resolving the important issues presented. All parties have consented to the filing of this brief.

---

[1] *Amicus* affirms that no counsel for a party authored this brief in whole or in part and that no person other than *Amicus* and its counsel made a monetary contribution to its preparation or submission. The views expressed herein are not necessarily those of Yale University or Yale Law School.

## INTRODUCTION

This case threatens a fundamental precept of the American legal tradition: protecting the confidentiality of communications made between a defendant and his or her lawyer. Principles of legal ethics and Sixth Amendment jurisprudence make clear that intrusion into the attorney-client relationship endangers the ability of a lawyer to carry out a representation, erodes the right to counsel, and undercuts public trust in our legal system. Parties are bound to obey these ethical and constitutional considerations. Courts must also protect these principles to further ensure the fairness and legitimacy of the adversarial process.

This case concerns the government's intrusion into confidential attorney-client communications at the CCA-Leavenworth facility (CCA, now called CoreCivic). On August 9, 2016, this Court conducted an emergency hearing to address motions from the Federal Public Defender (FPD) based on information that the government was in possession of confidential attorney-client communications recorded at CCA. *See* Doc. 253; Mem. and Order Directing Phase III Investigation at 2. The FPD, not the government, brought the existence of audio recordings of confidential attorney-client calls to this Court's attention. *Id.* at 10. CCA contains Securus Pay-Telephones, which inmates use to call individuals outside the prison. Doc. 10; Special Master's Report at 15. These telephone calls are recorded by the Securus system, stored, and may

be downloaded, allowing for preservation outside the system. *Id.* at 14. There are at least 188 documented instances in which private calls between lawyers and their clients were recorded. *Id.* at 21. This Court has acknowledged "grave concerns about government intrusion into attorney-client communications" at issue in this case, particularly when "as many as 95 persons inside and outside the walls of CCA may be implicated and ultimately charged." Mem. and Order Directing Phase III Investigation at 6.

The government provided the defendants in this case with recordings of phone conversations on August 16, 2016, but failed to advise the defendants that there were audio recordings of attorney-client communications. *See* Mem. and Order Directing Phase III Investigation at 12. Though it remains unclear how early the government became aware that the CCA recordings included confidential attorney-client communications, Special Assistant United States Attorney Erin Tomasic admitted that she learned that a Secret Service Agent had "inadvertently listened to an attorney-client phone call" as early as January 2016. *Id.* at 13. Tomasic never informed the defendants or this Court about this development because "she assumed that it was 'an exceptional circumstance.'" *Id.* at 13-14.

The government's failure to disclose to this Court and the defendants that it possessed recordings of confidential attorney-client communications, despite indications that they were privileged materials, violates the Sixth

4

Amendment. *See Shillinger v. Haworth*, 70 F.3d 1132, 1142 (10th Cir. 1995). Contrary to an earlier Professional Responsibility Advisory Office opinion, the government unilaterally took the position that the communications at issue were not privileged, and it failed to notify both this Court and the defendants in this case that it possessed confidential attorney-client communications. *See id.* at 15. The government's egregious actions in this case strike at the heart of the principle of confidentiality, undermine the sacrosanct attorney-client relationship, and must be addressed by this Court.

## ARGUMENT

### I. The Right to Confidentiality Is a Foundational Principle of Our Legal System and Is Enshrined Within the Sixth Amendment Right to Counsel.

"There are few of the business relations of life involving a higher trust and confidence than that of attorney and client, or . . . few more anxiously guarded by the law . . . ." *Stockton v. Ford*, 52 U.S. 232, 247 (1850). The law endows the relationship between lawyer and client with the shroud of confidentiality. As the U.S. Supreme Court has long recognized:

> The rule which places the seal of secrecy upon communications between attorney and client is founded upon the necessity, in the interest and administration of justice, of the aid of persons having knowledge of the law and skilled in its practice, which assistance can only be safely and readily availed of when free from the consequences of the apprehension of disclosure.

5

*Hunt v. Blackburn*, 128 U.S. 464, 470 (1888). This "seal of secrecy" protects the very heart of the American justice system.

The principle of confidentiality "applies not merely to matters communicated in confidence by the client but also to all information relating to the representation, whatever its source." *See* Kans. Rules of Prof'l Conduct R. 1.6 cmt. 5. It serves the core purpose of encouraging the client "to communicate fully and frankly with the lawyer even as to embarrassing or legally damaging subject matter" and facilitating "the full development of facts essential to proper representation." Kans. Rules of Prof'l Conduct R. 1.6 cmt. 2, 4. *See also Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) ("[S]ound legal advice or advocacy serves public ends and . . . depends upon the lawyer's being fully informed by the client."). Therefore, breach of the duty of confidentiality hobbles the sacred relationship between a client and his or her lawyer.

The possession of recordings of attorney-client communications by opposing counsel eviscerates the bedrock principle of confidentiality, hindering lawyers' ability to fulfill their roles as zealous advocates, undermining clients' Fourteenth Amendment right to access the courts, and eroding confidence in the legal system. *See, e.g.*, *Fisher v. United States*, 425 U.S. 391, 403 (1976) ("[I]f the client knows that damaging information could more readily be

6

obtained from the attorney following disclosure than from himself in the absence of disclosure, the client would be reluctant to confide in his lawyer and it would be difficult to obtain fully informed legal advice."); *Mann v. Reynolds*, 46 F. 3d 1055, 1061 (10th Cir. 1995) (citing *Ching v. Lewis*, 895 F.2d 608, 609 (9th Cir. 1990)) ("The opportunity to communicate privately with an attorney is an important part of . . . meaningful access [to the courts]." (quotation omitted)). Breach of the duty taints the adversarial process, regardless of whether opposing counsel actually uses the information obtained via the breach, or simply knowingly possesses it.

The right to confidentiality does not end at the jailhouse door. In particular, "even in a jail, or perhaps especially there, the relationships which the law has endowed with particularized confidentiality must continue to receive unceasing protection." *Lanza v. New York*, 370 U.S. 139, 143-44 (1962). Courts have repeatedly recognized the special need to protect the confidences of an incarcerated defendant and her lawyer. "[C]ommunications in a jail setting should be afforded as much privacy as is reasonably possible under the circumstances." *Case v. Andrews*, 603 P.2d 623, 626 (Kans. 1979). Similarly, the Eighth Circuit has also found that "[f]orcing prisoners to conduct their meetings with their attorneys in the open or to yell over the phone . . . . impedes[s] the detainees' ability to prepare for trial, jeopardize[s] the confidentiality of their attorney-client communications and invade[s] their

right to privacy." *Johnson-El v. Schoemehl*, 878 F.2d 1043, 1052-53 (8th Cir. 1989) (internal citations and quotations omitted).

Moreover, the same values that undergird the duty of confidentiality are essential to preserving the Sixth Amendment right to counsel. The right to counsel—the "central feature of our adversarial system"—upholds core Sixth Amendment values, including fairness, defendant autonomy, and privacy. *See* Martin R. Gardner, *The Sixth Amendment Right to Counsel and Its Underlying Values: Defining the Scope of Privacy Protection*, 90 J. Crim. L. & Criminology 397, 397 (2000). Confidentiality is crucial to protecting those interests. Breaching the confidentiality of the attorney-client relationship undercuts the right to counsel's "core purpose": to "assure aid at trial." *United States v. Gouveia*, 467 U.S. 180, 188 (1984).

At the heart of the right to counsel lies the goal of "achiev[ing] a fair system of justice," which depends on ensuring a fair trial for criminal defendants. *Gideon v. Wainwright*, 372 U.S. 335, 344 (1963). The U.S. Supreme Court has acknowledged the "obvious truth" that "any person haled into court . . . cannot be assured a fair trial unless counsel is provided for [that person]." *Id.* Fundamental to this fairness is protecting defendant autonomy, the fact that defendants "need not surrender control entirely to counsel." *McCoy v. Louisiana*, 138 S. Ct. 1500, 1508 (2018); *see also Faretta v. California*, 422 U.S. 806, 820 (1975) ("[The Sixth Amendment] speaks of the

'assistance' of counsel, and an assistant, however expert, is still an assistant."). The Kansas Rules of Professional Conduct reflect this insight as well: lawyers help defendants effectuate the objectives of representation. *See* Kansas Rules of Prof'l Conduct R. 1.2(a) ("A lawyer shall abide by a client's decisions concerning the lawful objectives of representation . . . ."). Confidentiality, which guarantees the ability to speak in confidence with one's lawyer, is a core ingredient to preserving that alliance.

Implicit in the U.S. Supreme Court's concern for fair trials and defendant autonomy is an effort to safeguard privacy between a lawyer and a defendant. *See, e.g.*, *Patterson v. Illinois*, 487 U.S. 285, 290 n.3 (1988) ("Once an accused has a lawyer, a distinct set of constitutional safeguards aimed at preserving the sanctity of the attorney-client relationship takes effect."). Notably, the Court alluded to a Sixth Amendment right to privacy in *United States v. Morrison*, 449 U.S. 361 (1981). In *Morrison*, two federal drug enforcement agents met with a criminal defendant, without her counsel's knowledge or permission, and sought to obtain her cooperation in a related investigation. *See* 449 U.S. at 362. The Court acknowledged that this type of encounter could raise Sixth Amendment concerns. *See id.* at 366-67 ("[W]e do not condone the egregious behavior of the Government agents. Nor do we suggest that in cases such as this, a Sixth Amendment violation may not be remedied in other proceedings.").

9

The U.S. Supreme Court has refused to give the government free rein to disrupt the right to counsel. For example, in *Weatherford v. Bursey*, a government informant listened to confidential communications between a criminal defendant and his counsel. *See* 429 U.S. 545, 547-48 (1977). The Court suggested that a Sixth Amendment violation could arise out of "a situation where the State's purpose was to learn what it could about the defendant's defense plans and the informant was instructed to intrude on the lawyer-client relationship." *Id.* at 557-58. Justice Thurgood Marshall further elaborated on that point in his opinion, stating that "governmental incursions into confidential lawyer-client communications threaten criminal defendants' right to the effective assistance of counsel." *Id.* at 563 (Marshall, J., dissenting). *See also id.* at 564 ("Insofar as the Sixth Amendment establishes an independent right to confidential communications with a lawyer, that right by definition is invaded when a government agent attends meetings of the defense team at which defense plans are reviewed.") (Marshall, J., dissenting). In short, the Sixth Amendment right to counsel depends on protecting the sanctity of the attorney-client relationship.

## II. The Government's Intrusion into the Attorney-Client Relationship Violates the Sixth Amendment.

The government's intrusion into the relationship between defendants and their lawyer—and its subsequent failure to notify this Court—violates the

10

Sixth Amendment. *Shillinger v. Haworth*, 70 F.3d 1132, 1142 (10th Cir. 1995). Because ensuring "the fairness of the adversary proceeding" is a "benchmark" of the Sixth Amendment, *Nix v. Whiteside*, 475 U.S. 157, 175 (1986) (quotation omitted), the government had an affirmative obligation to bring to the Court's attention its intrusion into the attorney-client communications. *See Black v. United States*, 385 U.S. 26, 29 (1966); *O'Brien v. United States*, 386 U.S. 345, 354 (1967). This obligation is triggered by the intrusion, regardless of whether the defendant actually demands the disclosure. *See Black*, 385 U.S. at 28, 28-29 (holding that "justice require[d] that a new trial be held" when the Solicitor General advised the court of surreptitious overhearing of privileged communications, even though the prosecuting attorneys did not know that the privileged communications were available at the time of the trial). Here, the government failed to notify this Court of the intrusion into the attorney-client relationship; instead, it unilaterally decided that such disclosure was unnecessary. *See* Mem. and Order Directing Phase III Investigation, at 14-15.

This Circuit has held that similar intrusions constitute *per se* violations of the Sixth Amendment. *Shillinger*, 70 F.3d at 1142. In *Shillinger*, a prosecutor received information about a conversation between an inmate and his lawyer from a deputy sheriff who overheard the conversation while in the prison. *Id.* at 1134. Because the prosecutor sought to determine the substance

11

of the defendants' conversations with his lawyer and attorney-client communications were actually disclosed, the *Shillinger* court found that the purposeful intrusion struck "at the center of the protections afforded by the Sixth Amendment." *Id.* at 1141. The *Shillinger* court distinguished that case from *Weatherford v. Bursey*, 429 U.S. 545 (1977), in which the U.S. Supreme Court held that the Sixth Amendment had not been violated where an informant did not actually disclose the content of overheard confidential conversations to the prosecutors. *Id.* at 1139. The *Shillinger* court also emphasized that, unlike in *Weatherford*, no legitimate law enforcement purpose was served by the intrusion into the attorney-client relationship. *Id.*

The present case is more akin to *Shillinger* than *Weatherford*. In *Weatherford*, the Court was able to clearly identify which attorney-client communications were overheard. *See* 429 U.S. at 558. *See also* Mem. and Order Directing Phase III Investigation, at 15 n.27 ("[T]he [*Weatherford*] [C]ourt . . . isolate[d] what meetings and communications were had between the attorney and client, . . . determine[d] whether the informant even communicated these to the prosecution, and . . . conclude[d] that none of the information gleaned was used at trial."). The Court was also able to verify that the content of the conversations was not communicated to the prosecution, thus reducing the risk that the fairness of the adversarial process had been disrupted. *Weatherford*, 429 U.S. at 845.

As this Court has already recognized, such is not the case here. *See* Mem. and Order Directing Phase III Investigation, at 15 n.27. Here, the government has acknowledged that it received various privileged communications. Unlike in *Weatherford*, this Court cannot identify with certainty either how much of the communications the prosecution listened to or whether the prosecution used the privileged information. Lastly, unlike in *Weatherford*, the government's intrusion into the attorney-client relationship served no necessary law enforcement purpose. As in *Shillinger*, the unethical intrusion into the attorney-client relationship served no necessary end: the inmates in this litigation were already securely confined at the time of the government's intrusion. Thus, there is no plausible law enforcement reason that the government could seek to make itself party to the communications at issue.

It is irrelevant whether such disclosure actually prejudiced a trial. A prejudicial effect on the reliability of the trial process must be presumed because "no other standard can adequately deter this sort of misconduct." *Shillinger*, 70 F.3d at 1142 (holding that the presumption is triggered "when the state becomes privy to confidential communications because of its purposeful intrusion into the attorney-client relationship and lacks a legitimate justification for doing so"); *see also Perry v. Leeke*, 488 U.S. 272, 279 (1989) (noting that "direct governmental interference with the right

to counsel is a different matter" with respect to the burden of proving prejudice). Because this intrusion into the attorney-client relationship lacked a legitimate justification, the presumption of prejudicial effect applies.

The government, despite knowing of its possession of privileged attorney-client communications, failed to disclose this fact to this Court. Its intrusion into the attorney-client relationship, its lack of a legitimate purpose for doing so, and its decision to hide that intrusion from this Court run afoul of the Sixth Amendment. So too does it severely undermine the adversarial process in which our system of justice is rooted.

## CONCLUSION

The government's intrusion into the attorney-client relationship and subsequent failure to disclose its possession of privileged materials transgresses the foundational principle of attorney-client confidentiality. It also violates the Sixth Amendment, which relies "on the legal profession's maintenance of standards sufficient to justify the law's presumption that counsel will fulfill the role in the adversary process that the Amendment envisions." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). Fairness and the integrity of the adversarial process demand that this Court condemn the large-scale erosion of the principles at the heart of our profession and our justice system.

14

Respectfully submitted,

/s/ Cheryl A. Pilate
CHERYL A. PILATE #14601
*Counsel of Record*
Morgan Pilate LLC
926 Cherry Street
Kansas City, MO 64106
M: (816) 471-6694
F: (816) 472-3516
cpilate@morganpilate.com


LAWRENCE J. FOX
*Of Counsel*
Yale Law School
127 Wall Street
New Haven, CT 06511
M: (215) 816-8571
F: (212) 687-2123
lawrence.fox@yale.edu

## CERTIFICATE OF SERVICE

I hereby certify that on the November 12, 2018, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to the Special Master and all parties, including Movant Parties and Interested Parties in the case.

/s/ Cheryl A. Pilate
Cheryl A. Pilate #14601
*Counsel of Record*
Morgan Pilate LLC
926 Cherry Street
Kansas City, MO 64106
M: (816) 471-6694
F: (816) 472-3516
cpilate@morganpilate.com