## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **Case No. 16-CR-20032-JAR** |
| | ) | |
| **Plaintiff,** | ) | **Government's Reply to the Federal** |
| | ) | **Public Defender's Response to the** |
| **v.** | ) | **Government's Motion for** |
| | ) | **Reconsideration of the Final** |
| **KARL CARTER,** | ) | **Production and Briefing Order Dated** |
| | ) | **November 21, 2018** |
| **Defendant.** | ) | |
| _____ | ) | |

The United States of America, by and through its counsel of record, Assistant United States Attorney Steven Clymer, appointed as Special Attorney pursuant to 28 U.S.C. § 515 to represent the United States in connection with Phase III of the Special Master Investigation, hereby replies to the Federal Public Defender's response [Docket #706] to the government's motion for the Court to reconsider and vacate the "Final Production and Briefing Order" issued on November 21, 2018. The Court's Order is Docket #690. The government's corrected reconsideration motion is Docket #697. The FPD's response is Docket #706.

### A. **Introduction**

On December 15, 2018, the government filed a motion asking this Court to reconsider its production and briefing order. The motion makes the following points:

1. Reconsideration is appropriate because the motion presents new facts, and reconsideration of the Court's order is necessary to avoid clear error and manifest injustice.

2.  Section 455 of Title 28 of the United States Code establishes an ethical rule applicable to federal courts and court-appointed special masters.  It requires both disqualification of the Special Master based on his own sworn testimony, and termination of the Phase III investigation.  This, in turn, compels the Court to reconsider and to vacate the production and briefing order.

3.  Continuation of the Phase III investigation would be a violation of the constitutionally-required separation of powers.  This further compels this Court to reconsider and to vacate the production and briefing order.

4.  The production order should be reconsidered and vacated because it has no legal basis, itself violates separation of powers, and is unnecessary and overly burdensome.

The Federal Public Defender ["FPD"] has responded to only some aspects of the reconsideration motion, leaving other government contentions largely or wholly unaddressed.  For example, neither the FFPD nor the Special Master has offered a substantive response to the government's constitutional claims.  The reconsideration motion explains that the Court's appointment of a Special Master to serve as an arm of the Court in an investigation of the United States Attorney's Office, and, at the same time, to be an inquisitor, an investigator, a represented party, and a witness, all with unfettered *ex parte* access to the Court, violates the constitutionally-required separation of powers.  The motion further explains that the Court's production order – which expressly directs the Department of Justice ["DOJ"] how to conduct its business – is a further violation of this important constitutional requirement.  Because there is no meaningful

opposition to these dispositive reasons for terminating the Phase III investigation,[1] the Court should grant the government's motion.

Where the FPD's response does address an aspect of the government's motion, it ignores key facts, cites inapposite legal doctrine, and distorts the record.  For his part, the Special Master, who is ethically obligated to disqualify himself without waiting for this Court to do so, has chosen not to respond.

In reply to the FPD's response, the government maintains the following:

## B. <u>Reconsideration is Required Here.</u>

The FPD argues that reconsideration is unwarranted.  It apparently believes that the government should not be heard *at any time* about the Court's production and briefing order.  The FPD refuses to acknowledge a critical fact – that, at the completion of the evidentiary hearing, the Court denied the government's request for an opportunity to brief the propriety of a further demand for government production of documents.  Given the Court's refusal to permit the government file a brief describing its claims in the first instance, the government had no recourse other than to advance its arguments in a reconsideration motion.  And, as noted in that motion, the Court expressly invited the government to proceed in this manner.  R.T. 806-07; Docket #697 at 5.

Thus, the FPD's arguments – that the Court should deny the government a "second chance for the losing party to make its strongest case or to dress up arguments that previously failed";[2] or

---

[1] The FPD's response merely suggests in a footnote that the Tenth Circuit already rejected the government's separation of powers claim.  FPD Response at 4, n.15.  This suggestion is not true. *See* Point F at 14, *infra*.

[2] FPD Response at 1-2, citing *United States v. D'Armond*, 80 F.Supp.2d 1157, 1170-1 (D. Kan. 1999); *Voelkel v. General Motors Corp.*, 846 F.Supp. 1482, 1483 (D. Kan. 1994); *Sonnino v. University of Kansas Hosp. Authority*, 221 F.R.D. 661, 664 (D. Kan. 2004).

a means of redressing a "failure to present its strongest case in the first instance"[3] – miss the point. The government's reconsideration motion is not a "second chance"; it is the government's first and only opportunity to alert the Court to the serious ethical, statutory, constitutional, and practical concerns that cast doubt on these proceedings generally and on the production and briefing order specifically. The Federal Public Defender urges this Court to disregard these important claims. The Court should reject this advice and consider the government's claims.

Further, the FPD is flatly wrong when it suggests that the governing legal standards – "clear error" and "manifest injustice" – have not been met. FPD Response at 6. When a similarly situated district court rejected analogous government claims concerning the disqualification of a special master under 28 U.S.C. § 455 and separation of powers concerns, a federal appellate court agreed with the government that the lower court had committed "clear error," the standard that warrants reconsideration here. *See Cobell v. Norton*, 334 F.3d 1128, 1140 (D.C. Cir. 2003) (noting that the Department of the Interior had asserted that a district court's reappointment of a monitor/special master despite ethical and separation of powers concerns was "clear error" and stating that "[w]e agree"). It is obvious that it would be "clear error" for a federal court to continue to use an ethically-disqualified special master and "manifestly unjust" to persist in violations of the separation of powers doctrine. Accordingly, under District of Kansas Local Rule 7.3, this Court should reach the merits of the government's reconsideration motion to ensure that such outcomes are avoided here.[4]

---

[3] FPD Response at 2, citing *TBG, Inc. v. Bendis*, 845 F. Supp. 1459, 1460 (D. Kan. 1994); *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991).

[4] The FPD's claim that the government's reconsideration motion "misconstrues the relational link between the challenged Order and the feared injustice," Response at 4, is misguided. As explained in the government's motion, it seeks reconsideration of *both* the production *and* the briefing order for several reasons, including because the Special Master must be disqualified and Phase III must be terminated. These remedies are necessary responses to the ethical and constitutional infirmities

Finally, even if there was no basis for reconsideration here, the government could properly raise these serious ethical and constitutional concerns in one or more "stand-alone" motions. Thus, if the Court harbors any reservations about the propriety of reconsideration under Local Rule 7.3 – even though it should not – the Court should treat those aspects of the government's motion raising ethical and constitutional concerns as having been advanced in a separate, stand-alone motion and reach the merits.

**C.** **The FPD's Waiver Argument Seeks to Have This Court Ignore its Ethical Obligations and is Inconsistent with Tenth Circuit Law.**

The FPD's response argues that there has been a waiver, and thereby encourages this Court to avoid discharging its ethical responsibilities under 28 U.S.C. § 455(a). It suggests that the government strategically waited until there was an adverse judicial ruling before claiming that disqualification is required. FPD Response at 8-9. This argument lacks merit.

The FPD's waiver argument relies on non-existent facts. There has been no adverse judicial ruling here -- this Court has yet to decide this case on the merits – and the government has not sought *this Court's* disqualification. The motion to disqualify the Special Master was prompted by his own sworn testimony on November 16, 2018, which, for the first time, irrefutably established that he had formed opinions adverse to the United States Attorney's Office ["USAO"] and certain of its employees through *ex parte* contacts and did so before he was empowered to investigate the USAO. On that same day, the government requested an opportunity to submit briefing. After the Court's rejection of that request, the government raised this matter at its first opportunity to do so.

---

identified in the reconsideration motion. The FPD's response has it backwards. *Id.* ("Vacating the Order will neither disqualify the Special Master nor terminate the Phase III investigation.").

More significantly, the FPD's waiver argument misconstrues the nature of the Court's ethical and statutory obligation here.  The government is not asserting a claim or a right that it can forfeit or waive.  Rather, it is calling this Court's attention to undisputed facts – based on the statements and sworn testimony of the Special Master himself – that raise serious ethical concerns under a federal statute, 28 U.S.C. § 455(a), which obligates the Court to act.[5]  As the Supreme Court has explained, this statute "place[s] the obligation to identify the existence of those grounds [for recusal] upon the judge himself, rather than requiring recusal only in response to a party affidavit."  *Liteky v. United States*, 510 U.S. 540, 548 (1994).  In this respect, Section 455(a) is unlike Section 144, upon which the FPD relies.  *United States v. Pearson*, 203 F.3d 1243, 1276 (10th Cir. 2000) ("A judge may be disqualified for bias under either 28 U.S.C. §§ 144 or 455. Mr. Pearson proceeds under § 455(a), which, unlike § 144, places 'the obligation to identify the existence of [bias or prejudice] upon the judge himself, rather than requiring recusal only in response to a party affidavit.'") (quoting *Liteky*, 510 U.S. at 548).  This Court is duty-bound to enforce Section 455(a) without regard to whether or when the government requests

---

[5] The FPD's response cites to two inapplicable statutes, 28 U.S.C. § 144, which describes only a procedure for seeking judicial recusal based on "personal bias or prejudice," and 28 U.S.C. § 155, which pertains to temporary transfer of bankruptcy judges.  FPD Response at 8.  But it avoids discussion of the federal statute that actually applies here: 28 U.S.C. § 455(a).

Section 455(a) states that "[a]ny justice, judge, or magistrate judge of the United States *shall* disqualify himself in any proceeding in which his impartiality might reasonably be questioned." (Emphasis added).  It is beyond dispute that when a court-appointed special master's impartiality is reasonably questioned, Section 455(a) requires a federal court to disqualify him.  Fed. R. Civ. P. 53(a)(1)(C) ("A master must not have a relationship to the parties, attorneys, action, or court that would require disqualification of a judge under 28 U.S.C. §455, unless the parties, with the court's approval, consent to the appointment after the master discloses any potential grounds for disqualification."); *Paycom Payroll, LLC v. Richison*, 758 F.3d 1198, 1208 (10th Cir. 2014) ("Federal Rule of Civil Procedure 53(a)(2) applies § 455 to special masters."); *see also* Government Reconsideration Motion at 6-7 & n.2.

disqualification. *In re McCarthey*, 368 F.3d 1266, 1269 (10th Cir. 2004) ("The statute thus places the judge under a self-enforcing obligation to recuse himself where the proper legal grounds exist.").

Another Tenth Circuit decision further undermines the FPD's waiver contention. In *United States v. Wells*, 873 F.3d 1241 (10th Cir. 2017), the appellate court was presented with an argument that a party's claim under Section 455 had been waived. The *Wells* Court rejected the invitation to resolve the case on this basis. "We believe that it is especially appropriate to reach the merits of this issue because recusal-based arguments uniquely implicate the integrity of the justice system." *Id*. at 1250. In doing so, the *Wells* Court relied on a concurring opinion in another appellate decision, *United States v. Barrett*, 111 F.3d 947 (D.C. Cir. 1997), expressing a similar view. "Although I agree that timeliness is a factor to be considered, the obligation section 455(a) places on judges means that even an untimely recusal claim cannot deprive a circuit court of its responsibility to review a judge's failure to recuse. In my view, the integrity and public reputation of the federal judiciary require clear and firm answers on the merits to even delayed charges of judicial impropriety." *Id*. at 955 ((Tatel, J., concurring). The Tenth Circuit is unwilling to rely on a waiver argument to sidestep its ethical obligation to address the merits of a claim under 28 U.S.C. § 455(a). If there is an appeal here, it will reach the merits. This Court should do the same.

**D.  <u>The Record Conclusively Demonstrates that the Special Master Must be Disqualified.</u>**

The FPD's response makes clear that much is undisputed here. The FPD's response does not dispute that the special master is subject to 28 U.S.C. § 455(a) and that this Court is duty-bound to enforce this statute. *See* Fed. R. Civ. P. 53(a)(1)(C)(2). Further, the Special Master's own testimony and statements leave no room for dispute that, before the May 17, 2017 Phase III order authorized the Special Master to investigate the USAO, he had formed and expressed

opinions adverse to the USAO and some of its employees. Finally, the FPD's response does not contest that the Special Master's expressed opinions would cause a reasonable person to question his impartiality. These uncontroverted facts, standing alone, require immediate disqualification under Section 455(a). Even "[i]f the issue of whether § 455 requires disqualification is a close one, the [Special Master] must be recused." *Bryce v. Episcopal Church in the Diocese of Colorado*, 289 F.3d 648, 659 (10th Cir. 2002).

Confronted with this evidence, the FPD advances three disingenuous and unpersuasive arguments.

First, the FPD argues that "[r]eceiving *accurate* information unfavorable to the Government *from the Government* during this very litigation does not create an unfair and disqualifying bias. Otherwise, any party could disqualify a Court or Special Master by merely introducing inculpatory information and then complaining when that information is accepted." FPD Response at 7 (emphasis in original); *see also id.* at 11 ("This Court must reject the Government's recusal claim as self-inflicted . . . .").

This assertion has no application here. As a factual matter, the record – including the Special Master's own testimony – conclusively demonstrates that he formed his opinions based at least in part on *ex parte* contacts with persons other than USAO officials. *See, e.g.*, R.T. 2757-58 (telling United States Attorney Beall during their first meeting shortly after the appointment order that "I'm hearing stories that, if half of them are true, something is very wrong."); R.T. 2771-73 (agreeing that "when [he] first got involved in the investigation and [he] tried to understand the lay of the land . . . [he] thought there was a cancer and [he was] willing to do what [he] could do properly to help fix it" and that when he met with AUSA Barnett, "probably" in December, he told her "based on the investigation [he] had done to date, [he] had identified some people in the office,

the U.S. Attorney's Office, who [he] would characterize as bad apples or problematic and that [he was] willing to help do what was necessary and be the, quote, bad guy in order to get those people fired");[6] *see also* Exhibit 1166 (describing Special Master as reporting that he had received information from unidentified attorneys about certain AUSAs).[7]

More significantly, as a legal matter, it is not the Special Master's mere *receipt of information*, from whatever source, and whether accurate or not, that raises concerns under 28 U.S.C. § 455(a).  Instead, the Special Master's disqualification is required because *he formed (and expressed) opinions* that reasonably cast doubt on his impartiality in this matter as a result of the *ex parte* contacts.  Thus, in *Cobell*, Kieffer's disqualification was not required merely because he had attended a government meeting *ex parte*; it was because he thereby developed opinions that cast doubt on his impartiality.  *Cobell*, 334 F.3d at 1144 ("The district court's account also demonstrates that Kieffer's opinion was based in part upon *ex parte* communications received in his extra-judicial capacity as Monitor. These facts so clearly cast a shadow over Kieffer's impartiality that the district court abused its discretion in appointing Kieffer to be Special Master . . . .").  Similarly, here it is not the source or the merit of the Special Master's opinions that mandate disqualification; what matters is that he developed disqualifying opinions from information-gathering that he conducted outside the scope of his appointment order.

---

[6] The Special Master qualified this testimony by use of the word "probably" only with respect to when he had this conversation with Barnett, not whether the conversation occurred. *See* R.T. 2772 ("I certainly said it to her at some point.").

[7] The FPD expresses interest in investigating whether AUSA Barnett agreed to assist the Special Master in his plan to have certain USAO attorneys fired.  FPD Response at 11 ("We suggest that if the Government presses this issue, the record is incomplete. Beall and Barnett should be recalled.").  Although the relevance of such inquiry is neither clear nor explained by the FPD, and it is inconceivable that either Beall or Barnett can offer any testimony that would undercut the Special Master's own sworn statements establishing that he must be disqualified, the government has no objection to the FPD recalling these witnesses for this limited purpose.

Second, the FPD cites to the Supreme Court's decision in *Liteky* to establish that judicial recusal is not warranted "on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings"; or because of "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases" or based on "expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display." FPD Response at 10. All of this is true, but this argument is a non-sequitur. Nothing in the government's motion suggests that it seeks disqualification for any of these reasons.[8]

Third, the FPD falsely asserts, without the benefit of citation to the record, that the Special Master developed his opinions about the USAO during "this investigation as authorized by the Court's Order." FPD Response at 11. Similarly, the FPD later claims that "[t]he Order appointing him contemplated the Phase III duties that were later initiated. Any information he has obtained, he has obtained in his same role and responsibilities." *Id.* at 14. If the FPD means to suggest that the Special Master was authorized to investigate the USAO *before the May 17, 2017 Phase III order*, this suggestion is demonstrably false. This Court's appointment order, Docket #146, issued on October 11, 2016, describes the Special Master's Phase I "feasibility evaluation," and his anticipated Phase II duties, which the Court later approved on November 16, 2016. Docket #179.

---

[8] The FPD also strains to distinguish *Cobell*. FPD Response at 13-15. It notes (correctly) that the disqualified special master there developed his problematic opinions while he was a "court monitor" and only later was elevated to the status of a special master, whereas the Special Master here formed his problematic opinions while he was a special master. What the FPD fails to do, however, is explain why this difference matters. In both cases, based on *ex parte* contacts, a court-appointed official developed an opinion or opinions about matters that he was not then authorized to investigate, and these opinions would cause a reasonable person to question his impartiality. Under these circumstances, 28 U.S.C. § 455(a) requires disqualification. This Court is bound by 28 U.S.C. § 455(a) whether or not it finds *Cobell* persuasive or applicable.

At the same time, however, this appointment order *expressly prohibited* the Special Master from investigating the conduct of the USAO:

> The Court continues to consider whether to direct the Special Master to undertake additional investigative duties as requested by the FPD. *Generally, the FPD asks the Court to direct the Special Master to investigate whether, and the extent to which, the Government has violated the Sixth Amendment and/or Fed. R. Crim. P. 6(e) in this and other criminal cases. The Court has chosen to limit the Special Master's duties to those to which the Government consents at this time.* The Court may later expand the scope of the Special Master's appointment (or may appoint a second Special Master and/or a neutral expert) . . . . [to assume other duties].

Docket #146 at 7 (emphasis added).[9]

Thus, it is beyond dispute that when the Special Master formed his disqualifying opinions about the USAO through *ex parte* contacts, all of which occurred months before the Phase III order, he had no judicial authority to conduct any investigation of the USAO. He was acting outside the scope of the appointment order. In sum, the FPD's response offers no reason for this Court to refrain from doing what Section 455(a) requires under these circumstances: immediately disqualify the Special Master.

### E. The Special Master's Disqualification Requires the Termination of the Phase III Investigation.

The Special Master's sworn testimony conclusively establishes that he held and expressed disqualifying opinions months before he began his Phase III investigation. As a result, a knowledgeable observer would reasonably question the impartiality of the decisions that he made during the Phase III investigation, the *ex parte* communications that he had with the Court, and the orders and reports that he issued. *United States v. Cooper*, 283 F. Supp. 2d 1215, 1224 (D. Kan. 2003) (explaining that the proper perspective is that of "an objective, knowledgeable member of

---

[9] As explained in the government's motion at pages 14-15, the government had consented only to a special master serving as a filter for potentially privileged materials.

the public"). Such an observer would be left to wonder whether the opinions that Special Master disclosed to Beall and Barnett in October and December 2016 caused him to tilt his investigation in ways detrimental to the government, communicate unfavorable views to the Court, omit from reports information helpful to the government, or minimize any helpful information that he included. The government does not accuse the Special Master of doing any of these things; it merely asserts the obvious – that the opinions the Special Master admittedly expressed to Beall and Barnett months before he began his Phase III investigation reasonably raise questions whether he might have done so.

Accordingly, in its reconsideration motion, the government explained that "[t]he Special Master's apparent lack of impartiality casts a shadow over Phase III in its entirety," requiring that this Court "disregard his work product from the outset of his investigation" and terminate Phase III. The government cited a federal appellate court's decision supporting this outcome – *In re Kempthorne*, 449 F.3d 1265, 1269 (D.C. Cir. 2006) – and provided a relevant quotation from that decision. Government Reconsideration Motion at 13.

Without suggesting that *Kempthorne* is wrongly decided, the FPD vainly struggles to explain why this outcome is not required here. First, the FPD disingenuously suggests that the government's motion makes this argument in a "single sentence" and that it should be rejected as "inadequately briefed." FPD Response at 15. In fact, the government's motion sets out this straightforward argument in a full paragraph; cites to legal authority supporting it, namely *Kempthorne*, a decision that the FPD describes with approval, FPD Response at 14-15; quotes a relevant passage from this decision; and obviously provides sufficient explanation for the FPD to grasp its argument. The briefing on this point is more than adequate to present this issue to this Court and, if necessary, to preserve it for appeal.

Second, the FPD contends that "if this Court must disregard the Special Master's work product, then so must the Government." FPD Response at 15. The government does not oppose this arrangement. The FPD further notes that the government occasionally has cited, with approval, passages from some of the Special Master's reports. *Id*. This, however has no bearing on this Court's obligation to refrain from relying on a tainted investigation conducted by a Special Master who must be disqualified.

Third, the FPD warns that the Court would have to "appoint a new Special Master to recreate" any disregarded work product, and states that this outcome is not required because recusal of the Special Master is not necessary. FPD Response at 16. This is a conclusory assertion, not a reasoned argument. If this Special Master must be disqualified, which, as explained above, is required by application of Section 455(a) to undisputed evidence in the record, and his investigation is tainted, which also follows from the facts and the law, then this Court's ethical obligations require that his work product be disregarded. This is true without regard to whether another special master should be appointed to conduct an investigation unsullied by an appearance of partiality.

Fourth, the FPD endeavors to show that the Special Master is unbiased because of his "endless patience with the USAO during 2016 and most of 2017." FPD Response at 16. This misses the point. The government does not claim that the Special Master is "biased." Rather, the Special Master's own sworn testimony shows that he expressed opinions that would cause his impartiality to reasonably be questioned, whether or not he subjectively harbors an anti-USAO bias. Disqualification under Section 455(a) is required "when there is the appearance of bias, regardless of whether there is actual bias." *Bryce*, 289 F.3d at 659. Any forbearance that the

Special Master may have shown to the USAO has no bearing on whether his expression of opinions adverse to both the USAO and certain AUSAs reasonably created an appearance of bias.

In sum, there is irrefutable evidence that the Special Master expressed disqualifying opinions at the outset of his investigation. This would cause reasonable questions about not only the Special Master's impartiality; but also the impartiality of his entire investigation and his interaction with the Court. This is simple common sense and compels disqualification of the Special Master, termination of the Phase III investigation, and that the production and briefing order be vacated.[10]

## F. **The FPD Offers No Meaningful Response to the Government's Showing That Separation of Powers Concerns Require Termination of Phase III.**

The government's reconsideration motion explains that the Special Master here "became something like a party himself"; assumed "an investigative, quasi-inquisitorial, quasi-prosecutorial role that is unknown to our adversarial legal system"; and "acted as an internal investigator, not unlike a departmental Inspector General except that he report[s] not to the Secretary but to the district court." *Cobell*, 334 F.3d at 1141-42. It also explains that the Phase III order has become "a license to intrude into the internal affairs of the Department, which simply is not permissible under our adversarial system of justice and our constitutional system of separated powers." *Id*. at 1143.

The FPD's sole response to this troubling evidence that the Phase III investigation is a violation of the separation of powers appears in a footnote. There, the FPD contends that "The

---

[10] In an apparent effort to preserve the Court's production order even if the Special Master is disqualified, the FPD asserts that the Special Master "plays almost no role in the Order itself." FPD Response at 7. The record shows otherwise. R.T. 2479.

Government argued, and lost, the same issue to the Tenth Circuit in petitioning for mandamus." FPD Response at 4 n.15. This contention fails for two reasons.

First, it is false. Although the questions raised in the government's mandamus petition included whether the Phase III investigation violated the separation of powers, Government Mandamus Petition at 22-26, when the Tenth Circuit granted the petition in part, its order did not address this issue, *see In Re United States*, No.18-3007 (10th Cir. Feb. 26, 2018), apparently trusting that this Court would respect the constitutional limits on its authority. Thus, the government did not "lose" this issue in the Tenth Circuit.

Second, even had the Tenth Circuit rejected the government's separation of powers claim, it would have done so based on the evidence presented to it. Since the mandamus order issued, important new facts have emerged in the form of the dramatic expansion of the Special Master's role. Specifically, the Court permitted the Special Master to elicit testimony from USAO employees at an evidentiary hearing and to personally question them, including about matters about which he had personal knowledge. It also permitted an attorney to represent the Special Master, thereby treating him as a party despite his unfettered *ex parte* access to the Court. It also allowed the Special Master to testify as a witness, including by offering his own account of matters about which both he and his counsel had questioned USO employees. *See* Government Reconsideration Motion at 15, n.8.

Thus, even had the Special Master's role at the time of the mandamus litigation been within constitutional limits, this clearly is no longer true. And, importantly, neither the Federal Public Defender not the Special Master has made any attempt to respond on the merits to the government's contention that this expanded role violates the constitutionally-mandated separation

of powers.    Accordingly, on this ground alone, the Court should terminate the Phase III investigation and vacate the briefing and production order.

### G. <u>The Production Order Finds No Support in the Rules of Civil Procedure, this Court's "Inherent Authority," or This Court's Contempt Power.</u>

In its reconsideration motion, the government explains that none of the rules that impose disclosure obligations on the government in federal criminal cases – Fed R. Crim P. 16(a), 17, and 26.2, and 18 U.S.C. § 3500 – provides a basis for the production order.    The FPD does not challenge this contention.    Nor can the FPD deny that this is a criminal case, one based on an indictment returned by a federal grand jury against named defendants.[11]    Instead, the FPD argues that "[t]he Federal Rules of Civil Procedure, the Court's contempt powers, and the Court's inherent authority each authorize the Court's production order."    FPD Response at 17.    This claim is meritless.

#### 1. The Civil Discovery Rules Do Not Apply Here.

The FPD correctly notes that there is Tenth Circuit authority for the proposition that a return of property motion under Fed. R. Crim. P. 41(g) (formerly Rule 41(e)) *sometimes* is treated as a civil proceeding.    FPD Response at 17, n.74.    "W*here criminal proceedings against the movant have already been completed*, a district court should treat a rule 41(e) motion as a civil complaint." *United States v. Clark*, 84 F.3d 378, 381 (10th Cir. 1996), citing *Onwubiko v. United States*, 969 F.2d 1392, 1397 (2d Cir. 1992) and *United States v. Martinson*, 809 F.2d 1364, 1366–67 (9th Cir. 1987).    Thus, in the cases upon which the FPD relies, there either was no longer an active criminal case against the movant or the movant filed his return of property motion as an independent action, not as part of an active criminal case.    *United States v. Madden*, 95 F.3d 38 (10th Cir. 1996),

---

[11] Further, the FPD's response does not dispute any of the facts set out in the government's reconsideration motion, such as those set out at pages 17-34.

involved a return-of-property motion that a criminal defendant filed *after he had been convicted*. *Id*. at 39. *In re Special Grand Jury 89–2*, 450 F.3d 1159 (10th Cir. 2006), involved a motion brought by federal grand jurors *outside of the criminal process entirely* and simply described *Madden*. *Id*. at 1167. *United States v. Maez*, 915 F.2d 1466 (10th Cir. 1990), involved a criminal defendant's *post-sentencing* return-of-property motion. *Id*. at 1167.

This limitation, which distinguishes the FPD's Rule 41(g) motion here, is hardly surprising. The FPD's position would yield nonsensical results, enabling any criminal defendant from whom property was seized, and indeed any person from whom property was seized, whether charged with a crime or not, to circumvent the disclosure rules that apply in federal criminal cases by the simple expedient of filing a Rule 41(g) motion. Indeed, the FPD claims a right to whatever discovery the Federal Rules of Civil Procedure envision.[12] This would make a mockery of the limitations in the criminal disclosure provisions in the Federal Rules of Criminal Procedure and Title 18. Thus, it is not surprising that *none* of the cases the FPD cites suggest that a Rule 41(g) claimant is entitled to broad civil discovery rights. Instead, they address entirely different issues. *Clymore v. United States*, 415 F.3d 1113 (10th Cir. 2005), *Madden*, and *In re Special Grand Jury 89–2* address only the timing requirements for filing a notice of appeal; *Maez* involves a challenge to a district court's denial of the return of property motion, not discovery; and *Clark* involves a claim that service of notice was insufficient. The FPD does not cite to any case suggesting that a Rule 41(g) claimant is entitled to the discovery contemplated by the Federal Rules of Civil Procedure and the

---

[12] Even assuming *arguendo* that a claimant identified in a properly-filed Rule 41(g) motion is entitled to some discovery in support of his claim, this would not provide a basis for the production order here, where the FPD has yet to identify a single Rule 41(g) claimant or show any entitlement to relief, and where the "property" at issue is in the Court's possession and the government has no opposition to its return.

government is not aware any such decision.[13]  In short, there is no authority supporting the FPD's

contention that civil discovery rules apply here and adoption of this unsupported position would

improperly undercut the limitations in criminal discovery rules.

### 2. **The FPD's Unsupported Claims of Contempt-Based and Inherent Discovery Authority Do Not Provide a Basis for the Production Order.**

The FPD's response baldly asserts that its filing of orders to show cause somehow vests

this Court with authority to order the government to produce documents well beyond what the

applicable rules and statutes provide, and that this Court also has "inherent authority" to do so.

FPD Response at 19-20.  The FPD offers no authority to support these claims.  The Court should

reconsider its novel production order because there is no legal support for it.  *See United States v.*

*Moussaoui*, 483 F.3d 220, 237 (4th Cir. 2007) ("Because the district court's [disclosure] orders

were unprecedented and entirely unnecessary, we hold that they were beyond the inherent powers

of the court.").

### H. **The FPD Offers No Response to the Government's Contentions that the Production Order Itself Violates Separation of Powers, and is Overly Cumbersome and Unnecessary.**

The government's reconsideration motion asserts independent grounds for this Court to

reconsider and vacate the production order.  It explains that the order violates separation of powers

by commanding the Department of Justice how to conduct its business – requiring it to use a

specified word search to locate digital documents and precluding certain employees from assisting

---

[13] In *In re Singh*, 892 F. Supp. 1 (D.D.C. 1995), a return-of-property claimant argued, as does the FPD, that "since his motion for return of property under Fed.R.Crim.P. 41(e) is to be treated as a civil equitable action to recover personal property, [he] may utilize and benefit from all of the discovery rules, including Rule 30(b)(6) [governing depositions], set forth in the Federal Rules of Civil Procedure."  The district court did not address this claim.  Instead it determined that a deposition would serve no constructive purpose and denied a motion to compel a deposition as moot.  *Id*. at 5.

in locating responsive documents.  The motion further explains that the production order is overbroad, fatally vague, cumbersome, and unnecessary.   The FPD does not respond to any of these arguments, each of which is sufficient for the Court to reconsider and vacate the production order.  The government urges the Court to do so.

## I. **<u>Conclusion</u>**

For the reasons stated above, the government respectfully requests that the Court reconsider and vacate the production and briefing order, disqualify the Special Master, and terminate the Phase III investigation.

If the Court nonetheless denies part or all of the government's reconsideration motion, the government requests that the Court order that the time periods set out in the Court's order for producing documents and submitting briefing begin to run on the date on which this Court issues its ruling on the government's reconsideration motion.   The government advises the Court, however, that, for reasons set out in the government's reconsideration motion, the Department of Justice likely will respectfully decline to comply with the production order if it remains in place

as presently drafted.  If the Court denies the government's reconsideration motion and the Department of Justice thereafter reaches such a decision, it will promptly notify the Court.

Respectfully submitted this 26th day of December, 2018.

Steven D. Clymer
Assistant United States Attorney
Special Attorney for the United States
NDNY Bar Roll # 509281

United States Attorney's Office
Northern District of New York
900 Federal Building
100 South Clinton Street
Syracuse, NY 13261
(v) 315-448-0672
(f) 315-448-0658

**Certificate of Service**

I hereby certify that on the 26th day of December, 2018, the foregoing was electronically filed with the clerk of the court for the District of Kansas using the CM/ECF system, which will send a notice of electronic filing to all counsel.

*S/Deanna Lieberman*
Deanna Lieberman
Paralegal Specialist
United States Attorney's Office
Northern District of New York