1                    UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF KANSAS
2

3   UNITED STATES OF AMERICA,

4        Plaintiff,

5   v.                              Docket No. 16-20032-02-JAR

6   KARL CARTER,                    Kansas City, Kansas
                                    Date:  12/14/2018
7

8        Defendant.
    . . . . . . . . . . . . . . . . . . .

9
                           TRANSCRIPT OF
10              MOTION FOR DISCOVERY HEARING
           BEFORE THE HONORABLE JULIE A. ROBINSON
11              UNITED STATES DISTRICT JUDGE

12
    APPEARANCES:
13
    For the Government:  Mr. Steven D. Clymer
14                       (Appearing telephonically)
                         Department of Justice - USAO
15                       Lrm Eckert, William
                         100 S. Clinston Street
16                       Suite 9000
                         Syracuse, New York 13261
17
                         Mr. Duston J. Slinkard
18                       Office of United States Attorney
                         444 Southeast Quincy
19                       Suite 290
                         Topeka, Kansas 66683-3592
20
                         Mr. Stephen R. McAllister
21                       Office of United States Attorney
                         500 State Avenue
22                       Suite 360
                         Kansas City, Kansas 66101
23

24

25

```
 1    APPEARANCES:

 2    (Continued)

 3    For the Defendant Karl Carter:
                        Mr. David J. Guastello
 4                      The Guastello Law Firm, LLC
                        811 Grand Boulevard
 5                      Suite 101
                        Kansas City, Missouri 64106
 6
      For the Movant Federal Public Defender:
 7                      Ms. Melody J. Brannon
                        Mr. Kirk C. Redmond
 8                      Office of Federal Public Defender
                        117 Southwest Sixth Street
 9                      Suite 200
                        Topeka, Kansas 66603
10

11

12

13

14

15

16

17

18

19

20

21

22
      _____
23
            Kelli Stewart, CSR-KS, CRR-MO, RPR, CRR, RMR
24                     Official Court Reporter
              259 U.S. Courthouse, 500 State Avenue
25                   Kansas City, Kansas 66101
```

```
 1                    (1:37 p.m. proceedings commenced).

 2              THE COURT:  All right.  You can be seated.

 3          All right.  We're on the record in United States

 4     versus Karl Carter.  The case number is 16-20032.

 5          Mr. Clymer, are you on the phone on behalf of

 6     Department of Justice?

 7              MR. CLYMER:  Yes, I am, Your Honor.

 8              THE COURT:  All right.  And parties state

 9     your appearances.

10              MR. SLINKARD:  Yes, Your Honor.  As you've

11     noted, Steven Clymer is present by telephone on behalf

12     of the government.  The government is represented here

13     in the courtroom by United States Attorney, Steve

14     McAllister; Assistant United States Attorney, Duston

15     Slinkard.  Also present is John Schubert with the U.S.

16     Secret Service.

17              THE COURT:  All right.

18              MR. GUASTELLO:  David Guastello on behalf of

19     Mr. Carter, who's filed a waiver for purposes of today's

20     hearing.

21              THE COURT:  Yes.

22              MS. BRANNON:  Your Honor, the Federal Public

23     Defender appears through Melody Brannon and Kirk

24     Redmond.

25              THE COURT:  All right.  The FPD filed a
```

1   motion to schedule a hearing on its motion for

2   discovery, which is Document 572 filed August 20, 2018.

3   The motion for hearing was just filed December 10th,

4   2018.  And so that's why we're here.

5        Ms. Brannon.

6            MS. BRANNON:  Your Honor, the gist of our

7   motion is that based on our investigation and working

8   with Securus, we found a number of CCA clients whose

9   calls had been accessed.  We presented quite a bit of

10  evidence about this at the hearing.

11       But where we are now is that we have reason to

12  believe that the government is in possession of recorded

13  calls for certain clients and that those calls in some

14  cases include attorney-client communications.

15       So the basis of our motion is we would like to

16  get those calls out of the U.S. Attorney's possession

17  and to identify any derivative information that may have

18  come from those calls.

19       To expedite this, we provided the U.S. Attorney's

20  Office with a list of a little-- 100, 110 or so names of

21  clients that we had confirmed their calls were accessed

22  - and we did that through Securus - and then, by

23  comparison, determined that we believed that those calls

24  include attorney-client recordings.

25       So by giving that to the government, we've asked

1    them to identify if they still actually have those

2    recorded calls and to provide any related information

3    such as how they got them, who they've been disseminated

4    to and whether there was derivative evidence that came

5    from those calls.

6          We have worked with the U.S. Attorney.  They have

7    identified I believe now 26 to 28 cases where they have

8    recorded calls.  They are not in a place that they would

9    admit that they include attorney-client calls.

10         But certainly because they have those calls and

11   we've done the work on the other side to show that they

12   should include attorney-client calls, we're trying to

13   come up with a process for them to return those and keep

14   them intact in case anybody needs to use them in the

15   future, but to get them out of the U.S. Attorney's

16   possession.  And, secondly, for them to finish and

17   complete the investigation into the other 75 or so

18   people who we've identified.

19         So that's where we are today.  We've worked on

20   this.  We have a couple of proposals for the court,

21   although we haven't agreed on all of the mechanics of

22   doing this, and we also have a couple of deadlines to

23   propose to the court.

24         We've recognized that throughout this that the

25   government has had obligations regarding the court's

 1  subpoena *duces tecum* as well as the hearings, but we do

 2  feel a sense of urgency to get these communications out

 3  of the U.S. Attorney's possession.

 4          THE COURT:  And are these recordings outside

 5  the scope of the clawback order that I issued back in

 6  2016?

 7          MS. BRANNON:  I think there was some question

 8  about the scope of that clawback order.  The names we

 9  have provided to the government did include names that

10  were-- that arose in *Black*, not just the defendants but

11  those phone calls in *Black*.  And Mr. Slinkard has noted

12  if the names we provided were in the clawback-- or how

13  they interpreted the clawback order and that those had

14  been returned, but I think that's about 8 or 10 of

15  those.

16       And what we've done since then is identified

17  right now at least 26 cases where they are still in

18  possession of these recordings.  And based on our

19  comparison, we believe that includes attorney-client

20  calls.

21          THE COURT:  At least 26 cases, but you-- you

22  mentioned another number before.

23          MS. BRANNON:  Right.  So we provided over 100

24  names, the work that they've done so far has confirmed

25  these 26 to 28 cases.  The rest of them have not, to my

1    understanding, been fully investigated and they have not

2    yet made a determination.  And I think Mr. Slinkard can

3    explain his process a little bit more.

4          We have-- you know, we have the records showing

5    that those calls were accessed and that they include

6    attorney-client numbers.  We just don't know what the

7    status is, whether the government are actually the ones

8    who accessed them.  We found a handful where it was

9    either defense counsel or someone else who accessed

10   those, so we've excluded those.  But that-- that does

11   leave about 70 cases where the result is unknown.

12              THE COURT:  Okay.

13              MS. BRANNON:  At least to us.

14              THE COURT:  All right.  And your proposals--

15   Mr. Slinkard, is there anything you'd like to say before

16   I hear what you all have come up with so far?

17              MR. SLINKARD:  I think so.  Let me take a

18   stab at it and if it doesn't assist the court-- Your

19   Honor, what I'd like to show the court at this time is a

20   spreadsheet.  I'm not offering this as an exhibit as

21   proof of anything at this point but to sort of show work

22   in progress.

23          So the Public Defender initially filed its motion

24   seeking to have the United States identify cases in

25   which it had obtained calls.  We conferred with them

1    about the fact that we do not have a tracking or logging

2    function that would enable that to work in the way they

3    were necessarily envisioning.

4         They agreed to provide us with the names of

5    individual defendants about whose situation they were

6    concerned based upon a belief that the evidence they had

7    obtained from Securus and otherwise suggested there

8    might be potentially privileged calls that had been

9    accessed by someone at CCA and, thus, potentially

10   obtained by the government.

11        The spreadsheet that I've shown you lists names

12   on the far left column.  Those are the names provided by

13   the Defender.  We've put through and tried to identify

14   specific cases in which those were-- where those

15   defendants were charged in the District of Kansas, and

16   in some cases they had multiple cases and it's been a

17   process of whittling down to see what the most recent

18   case or the most appropriate case was.

19        We've checked all of those names against-- with

20   the agents against whether or not calls were obtained in

21   the CCA investigation.  And, of course, all the calls

22   obtained in the CCA investigation were, as far as I'm

23   aware, subject to the earlier clawback order of the

24   court and produced to the court and are now being held

25   by the court.

 1          We've then checked to see if those defendants'
 2   calls were otherwise obtained in addition to if-- if
 3   they were obtained in the CCA investigation, whether
 4   they were obtained independently otherwise.  And that's
 5   in process.
 6          So what this reflects, as I've-- as I've said as
 7   I've given updates to the Defender along the way, we
 8   view places where "yeses" appear on this spreadsheet to
 9   be firm, because that means evidence has been found.
10   Either we have call request forms or we know that we
11   have the actual telephone calls for a given defendant.
12   Where we have indicated "no," those would all, of
13   course, remain subject to if we find positive evidence
14   that we had calls, you know, we would update that.  So
15   this-- this has been a work-in-progress and remains a
16   work-in-progress.
17          The process that Ms. Brannon described that
18   we've-- that we've substantially agreed to and had in
19   place to-- to develop this information thus far is we
20   have to deal with-- check with the case attorneys to an
21   extent because they're the ones who know what they did
22   in the case.  But then we also were going to
23   independently check, I or someone working at my
24   direction or working at Mr. McAllister's direction, will
25   physically check the physical files for cases in our

 1    office, will check access areas on the network such as--

 2    the court's heard testimony that there are drives that

 3    we place discovery materials on, to see if any of these

 4    call sets for these given defendants reside in any of

 5    those places.

 6         Now, again, to date, with a couple of exceptions

 7    that I think the court has heard about where we knew

 8    that we received a call that had an attorney involved in

 9    it, informed the defense, disgorged that call, we're not

10    aware-- we're operating on the information that the

11    Defender has given us to believe that there may be

12    potentially privileged calls for these individuals

13    commingled within telephone recordings that we may have.

14         We're not making an attempt to sort or making an

15    attempt to filter or-- or anything of that nature, but

16    we are trying to identify for them voluntarily where we

17    have obtained calls in the cases that they're looking to

18    see if our office obtained calls.  And then the next

19    step of that will be, because of their concern that

20    these commingled-- that these calls may be commingled

21    with potentially privileged information, a process to

22    segregate that.

23         And what we're proposing in general terms is that

24    we would take that information, reduce it to where it

25    already appears on something like a disk or a thumb

1    drive and-- and the physical form of data, bring that

2    and any paper information and-- and give it into the

3    custody of the court so that-- to hold.

4         Where it appears on a network only, we would

5    create from that network removable media that we would

6    give to the court and then we would remove all copies

7    from any network or any location in which they reside or

8    there's access to them from the U.S. Attorney's Office.

9         At that point we would voluntarily, in our view,

10   be disgorging material or giving material into the hands

11   of the court that some of which, of course, has

12   absolutely nothing-- no taint associated with it

13   perhaps.  But if there are potentially privileged

14   matters, it would all be out.

15        And timeline-wise, as Ms. Brannon alluded to

16   dates, what we're jointly proposing I believe is that by

17   January 7th we believe that we could get to the court

18   the calls or derivative information, if any, that

19   concerns any potentially privileged calls for any of the

20   cases that have-- for any of these defendants that

21   they've previously identified to us which we have to

22   date found that we have the calls.

23        Then we would finish checking the physical files,

24   the network drives and-- and consulting with the

25   agencies to try and complete the rest of the list of

1    names to determine whether or not we have calls and, if

2    so, collect those calls and submit them to the court by

3    January 28th.

4            So we'd be talking January 7th for the ones that

5    have been identified thus far that are not, of course,

6    the *Black* investigation calls that have already been

7    given to the court's custody.  But for any others that

8    we've now identified and know we have calls, we'd get

9    those to the court by the 7th of January.  We'd try to

10   get through the remainder of the list, identify if there

11   are any other calls, and get those to the court and

12   derivative information of attorney calls by

13   January 28th.

14           So that's substantially what I believe we're in

15   agreement on as a procedure and mechanism to handle this

16   motion.  I think we've each drafted a proposed order

17   and, frankly, with all the various events that have been

18   going on the last week, we just haven't fine-tuned that

19   to 100 percent agreement on proposed order language.

20   I'm not sure how substantial our differences are, but

21   those are the-- I think what Ms. Brannon alludes to as

22   being different proposals.  But I think they're common

23   with respect to what I've recited unless she disagrees.

24           THE COURT:  All right.  So at this point you

25   have different, albeit maybe slightly different,

 1   proposed orders that would include these agreed upon

 2   deadlines of January 7th and January 28th?

 3             MR. SLINKARD:  Yes, Your Honor.

 4             THE COURT:  What are the differences in the

 5   orders?  What's the concern?

 6             MS. BRANNON:  Your Honor, I think one of the

 7   primary concerns is how much involvement the Federal

 8   Public Defender would have in the event the U.S.

 9   Attorney wanted to retrieve what they call

10   non-privileged calls.

11        I think once its within the court's custody, it

12   should be up to the government to petition to get those

13   calls back, and we're talking about non-attorney-client

14   calls, rather than for the Federal Public Defender to be

15   involved at all in sort of parsing those out.  That

16   seems to be one difference.

17        Our motion-- our proposed order is pretty short,

18   which is just:  These need to be turned over to the

19   court.  The government needs to attest that all copies

20   have been destroyed.  You know, the Federal Public

21   Defender gets a copy as well for our habeas litigation.

22        But in the, I think, unlikely event that the

23   government really needs to come back and retrieve any of

24   these, it's going to be something where there's ongoing

25   litigation, that they can't obtain these calls from any

1   other source, including Securus or the Federal Public

2   Defender, and have to show a need to go through the

3   process of parsing those out.

4        Just seems like those are outliers that we don't

5   need to really contemplate in the order itself, and I

6   think that's the primary difference.

7             THE COURT: All right. Mr. Slinkard.

8             MR. SLINKARD: I don't know if Ms. Brannon

9   wants-- do you want each of us to give a copy of our

10  orders to the court at this point?

11            MS. BRANNON: Sure.

12            MR. SLINKARD: So I'll offer mine up. I

13  would agree with her and I think it-- it may be in some

14  ways a failure to understand I guess. The

15  government's-- each other I mean.

16        The government's view is that we're voluntarily

17  giving up this call information with respect to anything

18  that is not potentially privileged, that all of this is

19  stuff that was collected by the government that is

20  properly, unless it is privileged, within the control

21  and custody of the government. And that we're just--

22  we're giving it all up to meet the concern that there

23  may be potentially privileged items in there.

24        What we're suggesting is, because of that, we

25  ought to be able to, if we have a need, either

1  litigative or investigative, we ought to be able to get

2  it back, subject to any necessary process that had to be

3  followed to ensure that nothing privileged came back to

4  us.

5      And so I think Ms. Brannon's concern is that

6  we're trying to put the burden on them to filter, and

7  that isn't the intention, but I-- I think that may be

8  what they perceive.

9      What we're suggesting is that we ought to have a

10  right to get back anything unprivileged and not-- not to

11  have to make a showing or justify to anyone getting back

12  anything not privileged.

13      But with respect to things that are potentially

14  privileged, we'd have to either have some adequate

15  mechanism approved by the court in place to ensure we

16  didn't get that back or if they know as a result of

17  their work what there is about a given set of calls that

18  they believe to be improper for us to have or

19  privileged, that they would tell us that so we could

20  either go obtain those calls again anew, making sure to

21  exclude the potentially privileged items.

22      Or if it was a question of getting them back from

23  the court, we'd know from them and what they've

24  identified in their work are the potentially privileged

25  calls they're concerned about so that those could be

1    filtered out through some process that the court

2    approves of.

3          That's really all we're looking for is that if

4    they are asserting that there's something wrong with

5    some given piece of-- group of commingled calls that

6    we'd be seeking to get back, that they'd tell us what

7    they could to help us make sure we didn't get anything

8    back that concerned them and that-- that all parties,

9    the court and the parties, would recognize that with

10   respect to anything unprivileged, there's really no

11   reason we should have to seek permission to have this

12   back because we're voluntarily giving it up.  It ought

13   to just be something we could get back.

14         That's the principal difference I think between

15   what we have phrased and what they have phrased.  My

16   draft order is probably a little more complicated just

17   because I was trying to address possible-- possible

18   things that I could foresee potentially coming up so

19   that we'd have guidance on it.

20              THE COURT:  All right.  So as I understand

21   it, here's what you all agree to:  You agree that the

22   court claws back all recordings that are within the

23   scope of the *Black* investigation.  The government to

24   produce those by January 7th.  That's going to be calls

25   that may not be attorney-client calls but may also

1   include attorney-client calls commingled.

2            MR. SLINKARD:  Yeah, not exactly.  The *Black*

3   litigation calls, the calls obtained in the *Black*

4   investigation rather, have all been in the court's

5   custody since the court's clawback order in mid-August

6   of 2016.

7            THE COURT:  I thought-- well, Ms. Brannon I

8   thought said something about six-- there are six

9   people-- I forget what I wrote down.

10        My understanding is that there might be some

11  additional-- about six that may be within the scope of

12  the clawback order but that are in your possession

13  currently.

14            MR. SLINKARD:  I don't think so.  The ones--

15  I'm not in any way debating the scope of the clawback

16  order, but-- but I guess in the way we've gone at this,

17  they've given us the 100-odd names of defendants that

18  they were concerned about.  I've asked the agents, of

19  these 100-odd names, which ones had calls obtained in

20  *Black*.  And if the calls were obtained in the

21  investigation in *Black*, confirmed that those were calls

22  that were disgorged to the court pursuant to that

23  earlier clawback order.  I've marked "yes" in the column

24  "Calls Obtained in *Black*," and I've put in the comments

25  that those went to the court.

 1        So I'm not aware of any of the ones obtained in

 2    *Black* that weren't given to the court.  These are

 3    others.

 4                THE COURT:  But with respect to those same

 5    individuals, there's a possibility that there were calls

 6    that weren't in connection with the *Black* investigation

 7    that are in the government's possession.

 8                MR. SLINKARD:  Yes.

 9                THE COURT:  That's something you have yet to

10    determine.  But this spreadsheet is based on the work of

11    the FPD and they-- to the extent they've indicated, and

12    their work is not complete, but to the extent they've

13    indicated that they think you have calls that include

14    attorney-client calls, that's been indicated on the

15    spreadsheet.

16                MR. SLINKARD:  Right.  The only piece that's

17    on the spreadsheet that's from the FPD are the names.

18    Everything else reflected on there is work we have done

19    from those names.

20                THE COURT:  Okay.

21                MR. SLINKARD:  But yes, in essence, I think

22    if I'm understanding, yes, I would agree with that.

23                THE COURT:  So, again, the January 7 deadline

24    is for production of any additional calls of people

25    whose calls, if they were accessed, were accessed in

1    connection with the *Black* case.

2              MR. SLINKARD:   For-- for example, Your Honor,

3    on the second page of the spreadsheet, Julie Clifton.

4    That is a case where we have obtained calls or calls

5    were obtained with our knowledge.  We have the call

6    requests, we have the calls.  And so we would be getting

7    those calls and delivering those calls to the court and

8    any derivative information that in any way revealed any

9    potentially privileged calls from those calls.  And

10   similarly, Dalevon Dixon on the same page.

11         So all of the ones that we presently indicate on

12   this generation of the spreadsheet that we know we have

13   the calls, we'd be getting those to the court by

14   January 7th.

15              THE COURT:   Okay.

16              MR. SLINKARD:   For the ones on the

17   spreadsheet where we don't yet know, we're committing to

18   try and get a definitive-- as definitive as we can an

19   answer and produce any calls for those that we find

20   positive answers for by January 28th.

21              THE COURT:   Okay.  So then-- then the

22   question becomes what happens.  The court has impounded

23   all of these calls.  These calls may well include

24   attorney-client calls, they may well include

25   non-attorney-client calls or calls that aren't subject

1   to any privilege.  And they're in the court's

2   possession.  They need to be filtered.  One, so that the

3   attorney-client calls, if any, can be identified with

4   specificity.  And, two, so that the ones that are not

5   attorney-client calls can be identified.  The government

6   may want those for investigative purposes.

7            So the question is:  What mechanism do you use to

8   filter and to return not-- calls that are clearly

9   non-privileged?  Now, there may be some that there's a

10  dispute as to whether they're privileged or not.

11           MR. SLINKARD:  Yes.

12           THE COURT:  Because there may be

13  conversations with attorneys that aren't attorneys of

14  record, there may need to be some determination of

15  whether it is an attorney or not and if so, you know,

16  then--

17           MR. SLINKARD:  The only--

18           THE COURT:  -- is it, you know, an

19  attorney-client communication or not.

20           MR. SLINKARD:  The only disagreement I'd have

21  with what the court just said on that is, I mean,

22  obviously if the court says they have to be filtered,

23  they have to be filtered.  We don't believe that they

24  necessarily would ever have to be filtered if they're

25  never needed again.

1          THE COURT:  Right.

2          MR. SLINKARD:  So that's what we're more

3    getting to is if they're needed again that-- for

4    example, if there is-- let's say there's a set of calls

5    for defendant "X" and part of our agreement is that when

6    we give them into the court, that the FPD would be able

7    to look at them and analyze them for their litigation

8    purposes.

9          So let's say down the road at some point we do

10   have either as a result of-- as a result of a 2255 or

11   some other reason that we need the calls for defendant

12   "X," what-- what we're asking is that they would share

13   with us at that point, okay, well, out of defendant

14   "X"'s calls, we're only concerned about calls to this

15   number, or something like that that we could use to

16   either obtain a sanitized version of them again or have

17   them filtered to get them back.

18         We're operating on the assumption that many of

19   these calls will never be needed back because the cases

20   are-- are at this point in the past.

21         THE COURT:  So when you say there's not

22   probably going to be a necessity for many of these,

23   you're really talking about-- well, there's two reasons

24   they might be necessary.  One is because there's ongoing

25   investigation in a pending criminal case or an

 1   anticipated future criminal case.  But two, it's because

 2   in defending habeas litigation you would want to

 3   discover perhaps calls that the FPD thinks are clearly

 4   not privileged.  And obviously there may need to be

 5   litigation about whether the calls that the FPD thinks

 6   are privileged in the court's view are privileged.  So

 7   you're talking about what your discovery rights would be

 8   within the context of the 2255 litigation.

 9          MR. SLINKARD:  Perhaps, but I think maybe

10   less so.  And there may be some disagreement as to this,

11   but in the 2255 litigation-- and I-- and I realize some

12   of these are disputed points but at least as things

13   stand generally.

14          In the 2255 litigation, if they're going to put

15   forth that there was a privileged call that we had that

16   was a problem, they're going to bear some initial burden

17   of showing that.  And by putting that call forth,

18   they'll probably put it in issue.  And it won't be so

19   much of an issue of filtering at that point because by

20   claiming it, again, it will, as Your Honor says, have to

21   be examined to determine was it under privileged

22   circumstances, did it cover privileged content, that

23   sort of thing.

24          So I-- I'm not sure that I see the filtering as

25   so much an issue for litigating the 2255s, because FPD

1   will have access to the materials, they'll choose which

2   ones to litigate.  And through litigating them, then

3   there will have to be some disclosure.

4        It would be perhaps after a successful 2255 if we

5   were, you know, re-prosecuting some aspect or there was

6   something to do-- that we might need back into this

7   evidence for litigation, otherwise it would be for other

8   investigative purposes.

9        Again, we're not expecting a landslide of needing

10  to see these, we just want to acknowledge that we're

11  giving up stuff that-- that it may be commingled with

12  things we can't have but that itself is not something

13  that we have to give up.  We're willing to do it, we

14  just don't want to have to obtain authorization to get

15  it back.

16            THE COURT:  Well, but if it's not in your

17  custody, it's in the FPD's possession and the court's

18  possession, you're going to have to do something to get

19  it back.

20            MR. SLINKARD:  We're going to have to ask,

21  yes.  We're just saying we shouldn't have to make a

22  showing, you know, other than that we have something

23  that the court would approve of as an adequate way to

24  safeguard against any privileged information or

25  something along those lines.  But there's no merits we

 1    would have to show to be entitled to the information.

 2             THE COURT:  Well, again, we're going to be in

 3    the context then of civil litigation.  The civil rules

 4    really apply to 2255s.  I think you would have to ask--

 5    just like any other civil litigation, you'd first ask

 6    the party that has possession of it.  And then if you're

 7    not able to resolve it, then you file a motion and the

 8    court decides.

 9             I mean, I think that's-- and I don't know that it

10    needs to be-- any of that needs to be fleshed out in

11    this order because, depending on the circumstances and

12    maybe something you all can agree to, but if not, that's

13    what the court's role is.  But I don't know that we

14    necessarily need to figure that out now because we're

15    really talking about potentially hundreds of lawsuits.

16             And, frankly, I think the way we're going to need

17    to do the 2555 cases going forward is to figure out--

18    probably to consolidate them for discovery purposes with

19    one judge, one magistrate judge and maybe one district

20    judge at that point, and enter an order that sort of

21    addresses, you know, these global issues about

22    discovery.  But I don't know that we need to do that at

23    this point.

24             At this point we're just trying to accomplish you

25    doing-- they've done their investigation.  "They," the

1   FPD.  They're continuing to investigate.  You're going

2   to investigate.  And, you know, the spreadsheet you've

3   given me is the product of what you've investigated so

4   far but your investigation goes on.

5        And then by January 28th, you know, the clawback

6   hopefully will be complete.  And that is just

7   information-- I should say that's evidence that will be

8   preserved for purposes of the future litigation.

9             MR. SLINKARD:  Yes.

10             THE COURT:  Okay.  So I will look at these

11  two orders and probably not get into any mechanism in

12  which the government will-- will get back non-privileged

13  recordings.  Hopefully it won't have to be litigated.

14  And obviously you're going to need to be in a position

15  to discover things in order to defend the 2255

16  litigation.  There may be instances where there's some

17  other reason that, you know, the court can determine

18  that you're entitled to possession as well, but that's

19  something we can deal with later.

20        All right.  So I will look at these two orders

21  and adopt those deadlines and may change them a little

22  bit, but essentially that will be the spirit of what I

23  enter.

24             MS. BRANNON:  Judge, I'd like to put one more

25  caveat on the record.  These are the cases we've been

 1   able to identify so far and the clients who we have who

 2   are still in custody.  We're not dealing with anybody

 3   who might be out of custody or whose phone records were

 4   obtained through Wyandotte County or whatever.  This is

 5   the best we can do right now, but I just wanted to make

 6   sure nobody thought that this was right-- a completely

 7   exhaustive list.  It's what we're trying to work through

 8   right now.

 9          THE COURT:  All right.  And I heard testimony

10   about this during the hearing we had.  I mean, this is

11   the product of Mr. Federico's work and his ongoing work.

12   And you all focused on people still in custody because

13   in your view that was the-- the class of 22-- potential

14   2255 litigants who are still in custody.

15          MS. BRANNON:  The triage approach, yes.

16          THE COURT:  Right.  Okay.  I understand.

17      Okay.  All right.  So I will put something

18   together and try to honor what we talked about.  And is

19   there anything else we need to talk about?

20          MR. SLINKARD:  I don't know that we need to

21   talk about it, Your Honor, but just to make the court

22   aware.

23      When you issued your preservation order at the

24   end of the last evidentiary hearing, we indicated to you

25   that we would communicate that and we have communicated

1    that.  We continue to work with the data system staff

2    at-- computer system staff, computer information staff

3    at the Executive Office of U.S. Attorneys.  I think

4    that's been productive.

5         The court had asked us for language.  I don't

6    know that we're going to have language to propose, but I

7    do think in the not-too-distant future we'll be in the

8    position to report back to the court about the various

9    types of information, categories and-- and what the

10   abilities and what steps are taken on that.

11        So we're not ready to-- to update on that today,

12   but there has been progress.  And I just wanted to make

13   the court aware so you could anticipate sooner rather

14   than later some sort of status report on-- on that.

15             THE COURT:  Okay.  That will be helpful.

16        All right.  Anything more?

17             MS. BRANNON:  No, Your Honor.  Thank you.

18             THE COURT:  All right.  We will go ahead and

19   disconnect you, Mr. Clymer, unless you had anything

20   more.

21             MR. CLYMER:  No, Your Honor, I just-- one

22   suggestion, Judge, and I'm not sure if this is amenable

23   to the parties because I haven't had a chance to talk

24   about it.  The two orders that you were given today were

25   both drafted today and exchanged very shortly before the

1   hearing.  It seems to me that the parties are in

2   substantial agreement, both in terms of what has to be

3   done and the timing in which it has to be done.

4        It may be beneficial instead of the court trying

5   to meld the two or reach some sort of happy medium

6   between these two proposed orders, to give the parties a

7   couple more days to see if they can draft a jointly

8   agreeable proposed order and then present that to the

9   court.

10        MS. BRANNON:  Judge, we've been talking about

11  this all week.  This is the third, fourth, fifth

12  conversation we've had about it.  We've both distilled

13  the issues as best we can and we would ask that the

14  court not do that.

15        MR. SLINKARD:  We're willing, if the court

16  thinks it would be helpful or Ms. Brannon does at some

17  point.  But otherwise, I think it takes two.  So you

18  have your proposals.  We're certainly willing to work to

19  harmonize them if the court after you read them thinks

20  that would be useful, just let us know.

21        THE COURT:  Okay.  Well, I'll do my best.  If

22  I think that I can't do it, I'll get you all on the

23  phone and we'll talk about it some more, but I'll try

24  to-- it will be-- it won't be as detailed as what you've

25  submitted, Mr. Slinkard, because, as I said today, we're

1  not going to try to figure out the back end of this

2  until later.  This is really more about preservation.

3       But I'm-- I understand the government's concerns

4  and I understand that if we're talking about

5  communications that I think are not privileged and the

6  government has a need for them, the government should be

7  able to get them through discovery.  So I-- I certainly

8  acknowledge that.  There's no question about that.

9       All right.  So I will try my best and get an

10  order out to you here shortly.  Thank you.

11       All right.  We'll be in recess.

12            (2:12 p.m., proceedings concluded).

13

14                    *  *  *

15

16

17            C E R T I F I C A T E

18     I certify that the foregoing is a correct

19  transcript from the record of proceedings in the

20  above-entitled matter.

21

22  June 4, 2019.

23

24

25            /s/ Kelli Stewart
            KELLI STEWART, CSR, RPR, CRR, RMR
            United States Court Reporter