## EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**UNITED STATES OF AMERICA,**
*Plaintiff,*

**v.**                                                          Case No. **16-20032-JAR**

**LORENZO BLACK, et al.,**
*Defendants.*

## DECLARATION OF MELODY BRANNON

I, Melody Brannon, the Federal Defender for the District of Kansas, declare and state the following in support of the Federal Public Defender's application for attorney fees:

1. It is difficult for the FPD to trace how the exact amount of time we lost as a direct result of the government's failure to preserve and failure to cooperate with witness and document production.

2. The FPD keeps time using a data system. We identify a case by client (here, Lorenzo Black), and by type (here, a "consultation").

3. We then identify what kind of work we have done on the case by selecting from seven general categories: court, supervision, client, factual development, legal development, travel, and electronic litigation support.

4.      We can be more specific about the work we are doing in a "quick note add" section in the system. However, I have instructed FPD employees not to record any case-related detail or data in the system. I take this approach (as do many other Federal Defenders) in order to protect the confidentiality of our work. We are periodically subject to a national work-management study conducted by an outside entity that analyzes our time records. While we have been told that our data is "scrubbed" before release to this outside entity, I want to limit, as much as possible, the confidential information that goes into the system in the first place. Consequently, we are able to determine how much time we have spent on a case within each general system category (how much time in court, how much time on legal development, and so forth), but not with more specificity.

5.      The FPD undertook the litigation in *Black* despite a real risk to our budget. Our budget is determined by the total weighted case openings (WCO) in our office each fiscal year. Case weights directly correlate to our budget, although this is not the only determining factor. Cases are assigned weights based on the national averages of attorney hours spent in cases of the same type. We received minimal credit for *Black*. For example, a single felon-in-possession case is weighted at more than eight times the credit that the FPD received for our work on *Black* in the district court over the last three years. The case-weights system does not account for outlier case types

such as this, and it therefore grossly under-credited the time our office in fact expended on *Black*.[1]

6.  This impact on how our budget is calculated was not the only risk that the FPD took on during this litigation. From the beginning, the federal defense bar anticipated retaliation and threats from the USAO should any defense lawyer challenge their conduct. Indeed, some CJA panel counsel decided that they would rather leave the panel and lose their income from CJA cases than face the hostile environment created by the USAO. Despite the risk of repercussions to our own office (and, by extension, our clients), the FPD proceeded, recognizing that we have the institutional strength, resources, and resilience to stand up to the government in ways that private counsel cannot. Had private counsel been forced to take on this case, it could easily have destroyed their practice and more. Our risk was less dramatic, but not insignificant.

**I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.**

Executed on: September 24, 2019

s/ Melody Brannon
Melody Brannon

---

[1] Defender Services provided one additional temporary position to alleviate some of the burden on the FPD.