**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 4, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellant,

v.

KARL CARTER,

    Defendant.

--------------------------------------

FEDERAL PUBLIC DEFENDER,

    Movant - Appellee.

No. 20-3042

_____

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 2:16-CR-20032-JAR-2)**
_____

William A. Glaser, Attorney, U.S. Department of Justice, Washington, D.C. (Stephen R. McAllister, United States Attorney, District of Kansas; Steven D. Clymer, Special United States Attorney, Brian A. Benczkowski, Assistant Attorney General; Brian C. Babbitt, Acting Assistant Attorney General; and Robert A. Zink, Acting Deputy Assistant Attorney General with him on the briefs), on behalf of the Plaintiff-Appellant.

Melody Brannon, Federal Public Defender (Paige A. Nichols, Assistant Federal Public Defender with her on the briefs), Kansas Federal Public Defender, Topeka, Kansas, on behalf of the Movant-Appellee.

_____

Before **TYMKOVICH**, **BALDOCK**, and **BACHARACH**, Circuit Judges.
_____

**BACHARACH**, Circuit Judge.

_____

This appeal grew out of *United States v. Black, et al.*, which involved allegations of drug crimes committed at a detention facility. In the course of this prosecution, the United States Attorney's Office in Kansas (USAO) obtained video and phone call recordings from the detention facility. Some of the recordings involved attorney-client communications between detainees and their attorneys.

After learning that the USAO had these recordings, the Federal Public Defender (FPD) intervened for the defendants in *Black*, who had been housed at the detention facility. After intervening, the FPD moved for return of the recordings containing attorney-client communications, invoking Rule 41(g) of the Federal Rules of Criminal Procedure. This motion spurred the district court to order an investigation into the USAO and its possession of the recordings.

When the investigation ended, the district court

- dismissed the indictment against the last remaining defendant in *Black* (Mr. Karl Carter) and

- ordered the USAO to provide the FPD with all of the recordings of attorney-client communications in the USAO's possession.

In the course of these rulings, however, the district court made statements adverse to the USAO and found contempt based partly on a failure to preserve evidence.

2

The investigation led over a hundred prisoners to file post-conviction motions, challenging their convictions or sentences based on alleged Sixth Amendment violations stemming from intrusions into attorney-client conversations.

The USAO doesn't question the dismissal of Mr. Carter's indictment or the order to furnish the FPD with the recordings. Instead, the USAO argues that the investigation was unlawful, the district court made erroneous statements and findings about possible violations of the Sixth Amendment, the district court clearly erred in its contempt findings, and the district judge erred by stating that she would reassign herself to the post-conviction cases.

We dismiss the appeal for lack of jurisdiction and prudential ripeness.

## I.    The district court made adverse statements and findings that could potentially be applied in the 100+ post-conviction cases.

The district court appointed a Special Master, who conducted the investigation in three phases. In Phase I, he investigated whether recordings of attorney-client communications could be separated from other recordings. Having found separation feasible, the Special Master set out in Phase II to identify the recordings that had captured attorney-client communications. The probe intensified in Phase III as the Special Master

addressed the USAO's role in obtaining and possibly using recordings of attorney-client conversations.

As Phase III continued, the USAO sought a writ of mandamus, urging us to halt the investigation as unlawful. Petition for a Writ of Mandamus, *In re United States*, No. 18-3007 (10th Cir. Jan. 16, 2018). We narrowed the scope of the investigation to the parties prosecuted in *Black* and "other parties . . . who [had] filed Rule 41(g) motions in that proceeding," but otherwise allowed Phase III to continue. Order, *In re United States*, No. 18-3007 (10th Cir. Feb. 26, 2018). The investigation culminated in an order, where the district judge commented on possible violations of the Sixth Amendment, found the USAO in contempt, and stated that she would reassign herself to the related post-conviction cases. Joint App'x vol. 5, at 1153–54, 1157.

These comments reflected three general statements about possible violations of the Sixth Amendment:

1.  The USAO had engaged in a "pattern of misconduct" by possessing, retaining, and possibly using recordings of attorney-client communications. *Id.* at 1155; *see also id.* at 1150.

2.  Many detainees had not waived the attorney-client privilege. *Id.* at 1139.

3.  Intrusion into privileged communications could justify a remedy without a showing of prejudice. *Id.* at 1124.

The district court also cited the USAO for contempt for

- intentionally violating a "duty to preserve evidence surrounding [its] practice of requesting and obtaining audio and video recordings" of attorney-client communications,

- violating clawback orders, and

- violating an order to cooperate with the Special Master, including failing to cooperate with his production requests.

*Id.* at 1102–06, 1108–09, 1111–13. Despite these findings, the district court did not impose any sanctions.

The government urges vacatur of the order in *Black* based on the potential effect on the 100+ post-conviction cases.

## II. The district court's adverse statements and contempt findings don't trigger jurisdiction or create a prudentially ripe dispute.

The USAO partially prevailed in district court by avoiding sanctions, and the FPD partially prevailed by obtaining an order requiring return of the recordings and dismissal of Mr. Carter's indictment. But the USAO did not object to these rulings or appeal them. The USAO instead asks us only to vacate the district court's adverse statements and contempt findings on the ground that they could bolster the 100+ post-conviction claims.

### A. The USAO has not shown a live case or controversy.

As the appellant, the USAO must "establish[] our appellate jurisdiction." *United States v. Solco I, LLC*, 962 F.3d 1244, 1249 (10th Cir. 2020) (quoting *Estate of Ceballos v. Husk*, 919 F.3d 1204, 1224 (10th Cir. 2019)). Appellate jurisdiction generally exists only if the appellant was "aggrieved" by the district court's judgment or order. *Jarvis v.*

*Nobel/Sysco Food Servs. Co.*, 985 F.2d 1419, 1425 (10th Cir. 1993)

(quoting *Deposit Guar. Nat. Bank, Jackson, Miss. v. Roper*, 445 U.S. 326,

334 (1980)).

Prevailing parties are usually not considered "aggrieved." But

sometimes a prevailing party can appeal "from an adverse ruling collateral

to the judgment on the merits . . . so long as that party retains a stake in

the appeal satisfying the requirements of Art[icle] III." *Id.* (quoting *Roper*,

445 U.S. at 333–34). A stake can arise from collateral rulings when three

elements exist: (1) the prevailing party has suffered an "injury in fact,"

(2) the collateral ruling caused the injury, and (3) the injury is redressable.

*Camreta v. Greene*, 563 U.S. 692, 701 (2011).

The injury in fact must be "actual or imminent, not 'conjectural' or

'hypothetical.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)

(quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)).

The USAO urges a stake in this appeal through injury from the

district court's statements and findings by causing (1) issue preclusion and

(2) adverse effects in the post-conviction cases. We disagree.

### 1.    Appellate relief would not affect the future application of issue preclusion.

If a successful appeal would affect "the future application of issue

preclusion, . . . the personal stake requirement of Article III [would be]

met." *Jarvis v. Nobel/Sysco Food Servs. Co.,* 985 F.2d 1419, 1425 (10th

Cir. 1993) (citing *Roper*, 445 U.S. at 335–36, & *Elec. Fittings Corp. v. Thomas & Betts Co.*, 307 U.S. 241 (1939)).[1] The USAO thus urges an injury in fact based on the possibility that the district court's statements and findings could affect the 100+ post-conviction cases.

Issue preclusion would not apply against the USAO. *See United States v. Mendoza*, 464 U.S. 154, 162 (1984) ("nonmutual offensive collateral estoppel simply does not apply against the government in such a way as to preclude relitigation of issues"). The USAO nonetheless argues that the district court said that it intended to incorporate the statements and contempt findings in the post-conviction rulings. For example, the district court stated:

> [T]he Court can narrow the inquiries required in each related § 2255 case because these petitioners all seek similar relief for similar types of intrusions . . . . These issues include, inter alia: (1) the elements required to prove a per se violation of the Sixth Amendment under Tenth Circuit law; (2) whether soundless video recordings constitute protected attorney-client communications; (3) whether the "preamble language" that played [before] . . . telephone calls constituted a waiver of the attorney-client privilege; and (4) whether the government had a legitimate law enforcement purpose when it procured the recordings at issue in this case . . . . Likewise, the USAO's delay and obfuscation in the Special Master's investigation will weigh in fashioning an appropriate remedy into the § 2255 cases.

---

[1]   As the USAO points out, *Jarvis* also concluded that an appellant had standing because "avoiding a state court suit would substantially reduce [its] future litigation costs." *Jarvis*, 985 F.2d at 1425. But the USAO has not argued that appellate relief would reduce its future litigation costs.

Joint App'x vol. 5, at 976–77.

But the district court isn't bound by its statements of intent. *See Camreta*, 563 U.S. at 709 n.7 (stating that a district judge's determinations do not bind even herself). And to the extent that the district court does rely on the statements and findings in the post-conviction rulings, the USAO can appeal those rulings.

*Statements about potential violations of the Sixth Amendment.* The district court's statements about potential Sixth Amendment violations are neither binding in the post-conviction cases nor final determinations. The district court did not conclude that the USAO had violated the Sixth Amendment rights of any individual. In fact, the district court repeatedly cautioned that it was not making a final determination on a possible violation of the Sixth Amendment:

- "Because both the attorney-client privilege and the Sixth Amendment are personal to the defendant, any generalized application of the limited record before the Court [in *Black*] to establish blanket Sixth Amendment violations would be both inappropriate and premature." Joint App'x vol. 5, at 1133.

- "These rulings are not conclusions of law on the merits of petitioners' individual claims." *Id.*

- "[P]articularized findings must be made with respect to each claimant asserting the attorney-client privilege, which requires review of the recordings and a minimal threshold showing by the § 2255 litigants on the applicability of the privilege to their individual case." *Id.* at 1134.

8

- "[T]he ultimate conclusion about whether a particular detainee waived the attorney-client privilege must be decided on a case-by-case basis . . . ." *Id.* at 1139.

- "[T]he government may be able to demonstrate facts in individual cases that a detainee knowingly and intelligently waived the right to confidential attorney-client communications . . . ." *Id.* at 1145.

- "[D]etermining whether the USAO became 'privy to' particular recordings is not possible on this record. Ultimately, in the context of individual § 2255 actions, the Court will consider the USAO's explanation or assessment of the circumstances surrounding its access to and review of the particular recordings." *Id.* at 1147.

- "[The Court] withholds ruling on whether there was any other legitimate law-enforcement purpose [justifying the USAO's possession of attorney-client calls] with respect to particular litigants." *Id.* at 1148–49.

- "[T]he Court does not make particularized findings of Sixth Amendment violations on this record . . . ." *Id.* at 1155.

- "Over 100 § 2255 litigants continue to serve their sentence . . . . [T]he Court cannot make a broad Sixth Amendment violation determination nor grant the sweeping remedy the FPD seeks on this record [for all those litigants] . . . ." *Id.* at 1156.

These cautionary comments were consistent with the remainder of the order in *Black*, for the district court never concluded that anyone had suffered a violation of the Sixth Amendment. To the contrary, the court stressed that it would decide in the post-conviction cases whether particular inmates had suffered a violation of the Sixth Amendment.

In the post-conviction cases themselves, the district court has reiterated the importance of individually determining any possible Sixth

Amendment violations. Two examples reflect the importance of

individualized determinations:

1.    The district court recently stated: "Although many common
      issues overlap in the individual Sixth Amendment claims, the
      Court stressed [in *Black*] that particularized findings must be
      made with respect to each § 2255 claimant." *In re CCA
      Recordings 2255 Litig. v. United States*, 19-cv-2491-JAR-JPO,
      2021 WL 150989, at *1 (D. Kan. Jan. 18, 2021) (Robinson,
      C.J.), ECF No. 730, *clarified on recons.* (D. Kan. Mar. 3,
      2021), ECF No. 784.

2.    The district court has also observed that many of the post-
      conviction cases will turn on individualized considerations:
      "The Court will soon issue orders in individual cases either
      dismissing claims . . . or granting an evidentiary hearing on
      claims, all consistent with the particularized approach the
      parties must take going forward. While numerous global
      procedural and discovery issues have been addressed by the
      Court over the last several years, ultimately 'habeas relief
      sought must be considered on an individual basis.'" *Id.* at *26
      (quoting *Wang v. Reno*, 862 F. Supp. 801, 811 (E.D.N.Y.
      1994)).[2]

The results in the post-conviction cases reflect the non-binding

nature of the district court's statements in *Black*. Since the making of those

statements, the district court has stated its intent to dismiss

- 12 of the post-conviction cases in their entirety,

- 22 of the post-conviction cases challenging convictions,

---

[2]    In the post-conviction cases, the court gave two reasons for revisiting
its analysis of the Sixth Amendment. First, "the parties' arguments ha[d]
evolved" after the court ruled in *Black*. Second, the government had argued
that the statements in *Black* did not control in the post-conviction cases. *In
re CCA Recordings 2255 Litig. v. United States*, 19-cv-2491-JAR-JPO,
2021 WL 150989, at *3–*9 (D. Kan. Jan. 18, 2021) (Robinson, C.J.), ECF
No. 731.

- 29 of the post-conviction cases challenging sentences, and

- 4 of the post-conviction cases to the extent that they are based on video recordings.

*In re CCA Recordings 2255 Litig.*, No. 19-cv-2491-JAR-JPO (D. Kan. Mar. 10, 2021), ECF No. 793. And the court has actually dismissed 33 of the post-conviction cases. (Eighteen of the dismissals were voluntary; fifteen were involuntary.) *See id.*, ECF Nos. 46, 157–70, 319, 526, 566 (voluntary dismissals); ECF Nos. 606–07, 627, 801, 807–08, 811, 821–22, 825–27, 874, 884–85 (involuntary dismissals).

*Contempt findings.* The district court's findings of contempt are not binding in any of the post-conviction cases. The USAO argues that the district court may impose adverse inferences or other sanctions in the post-conviction cases. But the record contains no evidence of any sanctions imposed in the post-conviction cases as a result of the contempt findings in *Black*.

The USAO has pointed to three recent post-conviction rulings that rely on a finding of contempt:

1. a discovery order (February 2020),

2. an order as to an adverse inference (October 2020), and

3. an order rejecting a defense of procedural default (January 2021).

11

First, the USAO points out that the district court authorized discovery in a post-conviction case, relying on the court's findings in *Black. In re CCA Recordings 2255 Litig. v. United States*, 19-cv-2491-JAR-JPO, slip op. at 2–5 (D. Kan. Feb. 24, 2020) (Robinson, C.J), ECF No. 79. But the USAO can appeal this decision in the post-conviction case.

Second, the USAO points out that in a recent post-conviction order, the district court said that it "intend[ed] to take as established petitioners' claim that before each petitioner entered a plea, was convicted, or was sentenced, each member of the prosecution team became 'privy to' each recording" of allegedly privileged communications. *In re CCA Recordings 2255 Litig.*, 19-cv-2491-JAR-JPO, slip op. at 13 (D. Kan. Oct. 15, 2020), ECF No. 587. But the court relied on a refusal to comply with an order in a post-conviction case, not in *Black. Id.* at 1; *see also* Oral Argument at 21:20–21:45 (the USAO's acknowledgment that this statement was not based on the order in *Black*).

Finally, the USAO points out that in a post-conviction case, the district court recently rejected the USAO's defense of procedural default, concluding that the petitioner could avoid a procedural default because the "factual basis for Petitioner's Sixth Amendment claim [had not been] reasonably available to him at the time of his direct appeal, due in large part to the government's strategy of delay, denial, and deflection in the *Black* case and its handling of attorney-client recordings." *In re CCA*

12

*Recordings 2255 Litig.*, 19-cv-2491-JAR-JPO, slip. op. at 15–16 & n.69 (D. Kan. Jan 18, 2021) (Robinson C.J.), ECF No. 732 (citing the order in *Black*). But the USAO can appeal this decision through the post-conviction case.

*Intent to reassign the post-conviction cases.* The district judge also said that she intended to reassign herself to the post-conviction cases. But this statement of intent in *Black* is not binding in the post-conviction cases; and the USAO can challenge the reassignments in the post-conviction cases, where the reassignments take place—not in *Black*, where the district judge simply said what she intended to do in the post-conviction cases.

\* \* \*

None of the district court's statements or findings are binding in the post-conviction cases. *See Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011). So the USAO has not shown that this appeal would affect issue preclusion under *Jarvis v. Nobel/Sysco Food Servs. Co.*, 985 F.2d 1419 (10th Cir. 1993).

## 2.    The challenged statements and contempt findings are neither part of the judgment nor necessary for it.

The USAO also argues that a stake in the appeal can arise if the ruling would adversely affect future litigation. For this argument, the

USAO relies on *Electrical Fittings Corp. v. Thomas & Betts Co.*, 307 U.S. 241 (1939).

*Electrical Fittings* involved a suit for patent infringement. *Id.* at 241. The district court dismissed the suit for failure to prove infringement. Despite the dismissal, the district court concluded that the patent was valid. *Id.* at 242.

The defendants appealed the ruling on the validity of the patent; and the appellate court dismissed, reasoning that the judgment "would not bind" subsequent courts. *Id.* The Supreme Court reversed. The Court did not address the validity of the patent, observing instead that "the adjudication" of the patent's validity would stand as one of the issues being decided. *Id.* On this basis, the Court concluded that the appellate court had jurisdiction "not for the purpose of passing on the merits, but to direct the reformation of the decree." *Id.*; *see Deposit Guar. Nat. Bank, Jackson, Miss. v. Roper,* 445 U.S. 326, 335–36 n.7 (1980) (interpreting *Electrical Fittings* to allow prevailing parties to appeal because "there had been an adverse decision on a litigated issue, they continued to assert an interest in the outcome of that issue, and for policy reasons this Court considered the procedural question of sufficient importance to allow an appeal"). Despite ordering reformation of the decree, the Supreme Court observed that a prevailing party cannot appeal to obtain review of

14

"findings he deems erroneous which are not necessary" for the judgment. *Elec. Fittings*, 307 U.S. at 242.

Here, the USAO is seeking appellate review of statements and contempt findings that are neither part of the *Black* judgment nor necessary for it. An example is the finding on contempt. This finding was not mentioned in the judgment or necessary for the disposition, which included no sanctions. The same is true of the district judge's statements about potential violations of the Sixth Amendment and intent to reassign herself to the post-conviction cases. The *Black* judgment did not contain a final determination as to a violation of the Sixth Amendment or reassignment of the post-conviction cases.

\* \* \*

The district court's findings and statements were not part of or necessary to the *Black* judgment. So *Electrical Fittings* does not support the USAO's standing to appeal these findings or statements. *See United States v. Fletcher ex rel. Fletcher*, 805 F.3d 596, 605 (5th Cir. 2015) (concluding that *Electrical Fittings* did not support an appeal of rulings not appearing on the face of the judgment); *United States v. Good Samaritan Church*, 29 F.3d 487, 489 (9th Cir. 1994) (same); *In re DES Litig.*, 7 F.3d 20, 25 (2d Cir. 1993) (same).

15

### 3.    We lack jurisdiction because the USAO has not shown a live case or controversy.

As a prevailing party, the USAO had to show a stake constituting a live case or controversy. *Jarvis v. Nobel/Sysco Food Servs. Co.*, 985 F.2d 1419, 1425 (10th Cir. 1993). The USAO argued that it had a stake in the appeal because the district court's statements and contempt findings triggered issue preclusion and affected future rulings in the post-conviction cases.

We reject both arguments because the district court's statements and findings are not (1) binding in the post-conviction cases or (2) part of or necessary to the *Black* judgment. So the feared injury—application of these statements and contempt findings in the post-conviction cases—is not actual or imminent. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Given the absence of an injury in fact, we lack jurisdiction over the appeal.

### B.    The district court's adverse statements and contempt findings don't create a prudentially ripe dispute.

Even if we had jurisdiction, the appeal would remain prudentially unripe. *See United States v. Cabral*, 926 F.3d 687, 693 (10th Cir. 2019) (stating that even if an appeal presents a case or controversy, a court may

16

decline to reach the merits on the ground that the dispute lacks prudential ripeness).

"The purpose of the ripeness doctrine is to prevent the premature adjudication of abstract claims." *Texas Brine Co. and Occidental Chem. Corp.*, 879 F.3d 1224, 1229 (10th Cir. 2018). To determine whether an appeal is prudentially ripe, we balance "the fitness of the issue for judicial review" against "the hardship to the parties from withholding review." *Id.* (quoting *United States v. Bennett*, 823 F.3d 1316, 1326 (10th Cir. 2016)).

To determine fitness for review, we consider "whether determination of the merits turns upon strictly legal issues or requires facts that may not yet be sufficiently developed." *Id.* (emphasis omitted) (quoting *Bennett*, 823 F.3d at 1326). The USAO is challenging statements about the Sixth Amendment, but these statements lack any legal effect unless the district court applies them in the post-conviction cases. And the district court has repeatedly stated that each post-conviction case will be decided based on its individual facts. The same is true with the district court's contempt findings. The district court did not impose any sanctions in *Black*, and any future sanction would require development of a factual record as to the proceedings in a particular prisoner's case and the appropriate remedy.

To determine hardship to the parties, we consider "whether withholding review [would] place the parties in a direct and immediate dilemma." *Id.* at 1230 (internal quotation marks omitted). No such dilemma

17

exists here. The parties can freely litigate all of the disputed issues in the post-conviction cases.

The Court addressed a similar combination of circumstances in *Texas Brine Co. and Occidental Chemical Corp.*, 879 F.3d 1224 (10th Cir. 2018). There Texas Brine appealed a production order, arguing that the requested materials were privileged. 879 F.3d at 1228. But Texas Brine did not produce a privilege log. *Id.* at 1229. Instead of grounding the privilege on a particular document, Texas Brine urged a "blanket privilege." *Id.* at 1230.

We concluded that both factors weighed against judicial review. On the first factor, we stated that "[w]ithout the benefit of a privilege log or inspection of documents, [the Court was] left with an insufficient factual record." *Id.* at 1230. On the second factor, we concluded that Texas Brine's concern was indirect and speculative: Once Texas Brine made a privilege log, the possibility of a favorable ruling remained. *Id.* at 1231.

The same is true here. The USAO requests "blanket" protection from us to prevent the use of certain statements and findings when the district court rules in the post-conviction cases. Consideration of this request is premature until the court rules in those cases. The USAO may ultimately prevail in those cases; and if the USAO doesn't prevail, it can appeal the post-conviction rulings with a more fully developed record.

* * *

We review "judgments, not statements." *California v. Rooney*, 483 U.S. 307, 311 (1987) (quoting *Black v. Cutter Labs.*, 351 U.S. 292, 297 (1956)). The USAO does not challenge the final judgment or rulings in *Black*. The USAO instead challenges statements and findings made along the way to the judgment. "Our resources are not well spent superintending each word a lower court utters en route to a final judgment in the [appellant's] favor." *Camreta v. Greene*, 563 U.S. 692, 704 (2011).

The USAO fears that the district court will use these statements and findings when ruling on the post-conviction cases. That possibility does not create appellate jurisdiction or a prudentially ripe dispute:

> There are . . . too many "ifs" . . . to make our review appropriate at this stage. Even if everything the [USAO] fears comes to bear, the [USAO] will still have the opportunity to appeal such an order, and this Court will have the chance to review it, with the knowledge that we are reviewing a [final] judgment on the issue . . . .

*Rooney*, 483 U.S. at 312–13.

## III. The USAO's challenges to the lawfulness of the Phase III investigation are moot.

Though the post-conviction cases are ongoing, Phase III is over. Yet the USAO continues to challenge the district court's authorization of Phase III.[3]

---

[3]    In its appeal briefs, the USAO argues that Phase III was unlawful because it

- lacked a basis under Fed. R. Crim. P. 41(g),

Even if jurisdiction otherwise existed, these challenges would be moot. Under Article III, a continuing "case-or-controversy" exists only if the parties retain "a personal stake in the outcome" throughout the litigation, including appellate review. *United States v. Fisher*, 805 F.3d 982, 989 (10th Cir. 2015). The matter otherwise becomes moot "when it is impossible to grant any effectual relief." *Id.* (quoting *Chihuahuan Grasslands All. v. Kempthorne*, 545 F.3d 884, 891 (10th Cir. 2008)).

Even if Phase III were unlawful, we could not grant effectual relief because Phase III is over. In that phase, the USAO produced some evidence and refused to produce other evidence; witnesses testified and were questioned. Nothing we say will change what took place in Phase III. Given our inability to affect the scope of an investigation that has finished, the USAO can no longer challenge the lawfulness of Phase III. *See Binder,*

---

- exceeded the district court's inherent authority,

- lacked a factual basis, and

- violated the separation of powers.

At oral argument, members of the panel expressed concern that Phase III had exceeded the scope of this Court's mandamus order. Oral Argument at 17:50–18:08, 46:40–49:08, 54:21–57:07; *see also* Order, *In re United States*, No. 18-3007 (10th Cir. Feb. 26, 2018). But counsel for the USAO stated that it was not challenging Phase III based on the scope of the mandamus order. Oral Argument at 1:03:03–1:03:44. We thus do not address whether Phase III deviated from our restrictions.

*Robinson & Co. v. SEC*, 748 F.2d 1415, 1418–19 (10th Cir. 1984) (concluding that a challenge to an investigatory order had become moot once the investigatory order terminated). We thus lack jurisdiction to review the USAO's challenges to the lawfulness of Phase III.

## IV.   Conclusion

We dismiss this appeal for lack of jurisdiction and prudential ripeness.[4]

---

[4]    Because we lack jurisdiction and the appeal is prudentially unripe, we need not address the Federal Public Defender's argument that the district court hasn't issued a final order. *See* 28 U.S.C. § 1291.

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

**May 4, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

---

UNITED STATES OF AMERICA

    Plaintiff - Appellant,

v.

KARL CARTER,       Defendant.

------------------------------------------

FEDERAL PUBLIC DEFENDER,

    Movant - Appellee.

No. 20-3042
(D.C. No. 2:16-CR-20032-JAR-2)
(D. Kan.)

---

### JUDGMENT

---

Before **TYMKOVICH**, Chief Judge, **BALDOCK**, and **BACHARACH**, Circuit Judges.

---

This case originated in the District of Kansas and was argued by counsel.

This appeal is dismissed for lack of jurisdiction and prudential ripeness.

Entered for the Court

CHRISTOPHER M. WOLPERT, Clerk