## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 16-20032-JAR** |
| **KARL CARTER,** | |
| **Defendant.** | |

## MEMORANDUM AND ORDER

This matter is before the Court on the Federal Public Defender's ("FPD") Motion to
Compel (Doc. 856) the government to identify, produce, and disgorge any attorney-client
communications that remain in its control, including those that remain in the possession of law-
enforcement agencies. The government has responded and asks the Court to deny the FPD's
motion for lack of jurisdiction, standing, or any cognizable legal basis for the motion.[1] For the
reasons explained in detail below, the Court grants in limited part the FPD's motion.

## I.      Procedural History and Background

The Court assumes the reader is familiar with its ruling in this case (the "*Black* Order")
that precipitates the matter before the Court and is incorporated by reference herein.[2] The Court
does not restate the underlying facts and conclusions of law in detail but will provide excerpts
from the record as needed to frame its discussion of the issues presently before it.

In August 2016, the FPD filed an amended motion for return of property under Fed. R.
Crim. P. 41(g), alleging that CCA recorded attorney-client telephone calls and at times provided

---

[1] Doc. 866.

[2] Doc. 758.

the content of those calls to the government.[3]  This Court issued a claw-back order requiring the United States Attorney's Office ("USAO") and the Department of Justice to preserve and maintain any recorded phone calls or related data.[4]  By October 11, 2016, the Court had appointed a Special Master to assist in what the Court termed "Phase I and Phase II" of the Court's investigation, that is, to determine the number of recordings possessed by the government, to index and segregate them, and to identify privileged or confidential information within those recordings.[5]

On May 17, 2017, the Court issued an order detailing its findings that justified an expanded Phase III inquiry, in which the Special Master's inquiry turned from an investigation into an adversarial litigation proceeding.[6]  The day before the scheduled hearing, which included hearing the Rule 41(g) motions, the government filed a Petition for Mandamus with the Tenth Circuit Court of Appeals, which granted the government's request to stay the hearing pending a ruling.[7]  The Tenth Circuit denied the government's petition in part, permitting the investigation and inquiries into matters related to defendants in *Black* and Rule 41(g) motions to return property filed by the FPD.[8]

In July 2018, the FPD was appointed to represent any potential litigant who may have a Sixth Amendment claim arising from the USAO's possession of attorney-client communications.[9]

---

[3] Doc. 85.

[4] Docs. 113, 114.

[5] Doc. 146.

[6] Doc. 253.

[7] Docs. 382, 387.

[8] Doc. 398.

[9] Standing Order 18-3.

On December 14, 2018, after the full evidentiary hearing in this case concluded, this Court held a hearing on the FPD's August 20, 2018 motion for discovery related to recorded attorney-client phone calls.[10]  In that motion, the FPD asked the Court to order the government to identify each case in which the USAO or its agents sought or obtained recorded detainee phone calls from CCA-Leavenworth ("CCA") or any other federal holding facility so that the FPD might evaluate potential Sixth Amendment claims, noting that the USAO was in sole and unilateral control of such information.  At that hearing, the parties informed the Court of their progress in resolving the matter by agreement.  The parties presented a spread sheet with the names of more than 100 inmates at CCA that the FPD's ongoing investigation revealed may have made calls to their attorneys that were recorded, and the USAO was in the process of investigating whose calls had been obtained by the government.  Accordingly, the parties proposed a process for production of the recorded calls and derivative information still in the possession of the USAO, which the Court adopted by Order.[11]  The Court outlined in the Order the agreed-upon procedure by which the USAO would identify and surrender the recordings and derivative evidence to the Court, along with a written log of the recorded calls, with a copy to be provided to the FPD.  This process was limited to defendants identified by the FPD and focused on items in the USAO's possession.  On January 7, 2019, the USAO surrendered the first batch of recordings to the Court.[12]  The USAO supplemented this list several times up to July 2021.[13]

---

[10] Doc. 572.

[11] Doc. 705.

[12] Doc. 764.

[13] Docs. 787, 799, 806, 846, 848, 854, 855.

On January 25, 2019, this Court denied the government's December 5, 2018 request to disqualify the Special Master and terminate Phase III of the investigation.[14]  The Court modified the production portion of its November 21, 2018 order and stated that it would not compel further production from the government in this case but instead would prepare to close the record and address the issues in its post-hearing findings of fact and conclusions of law.[15]

In August 2019, the case closed when the Court entered the *Black* Order and dismissed the Indictment against the only remaining defendant, Karl Carter.[16]  In the *Black* Order, the Court also denied without prejudice the government's motion for discovery with respect to video recordings and granted the pending Rule 41(g) motions requesting the release and/or surrender of both audio and video recordings.[17]  In January 2020, this Court issued its final ruling in this case.[18]

The Tenth Circuit subsequently dismissed the government's appeal for lack of jurisdiction and prudential ripeness.[19]  The Tenth Circuit noted that it could not grant effectual relief regarding the government's challenge to this Court's authorization of Phase III—including that the investigation lacked a basis under Fed. R. Crim. P. 41(g), exceeded this Court's inherent authority, and violated the separation of powers—because Phase III had concluded.[20]

---

[14] Doc. 713.

[15] *Id.* at 35.

[16] Doc. 758 at 8 n.10, 187.

[17] *Id.* at 187.

[18] Doc. 805.

[19] *United States v. Carter*, 995 F.3d 1222, 1232 (10th Cir. 2021).

[20] *Id.*

As predicted, over 100 § 2255 motions were filed alleging the government violated the Sixth Amendment by interfering with the petitioners' attorney-client relationship.[21]  In addition to the recordings disgorged by the USAO pursuant to the December 2018 Order, the government produced discovery from the physical files of 104 defendants, 58 of whom were not on the FPD's lists of defendants that defined the scope of the government's productions relating to recorded telephone calls in this case, in addition to electronic discovery.[22]

Over two years later, at the August 2021 evidentiary hearing for individual petitioner Steven Hohn's CCA-related § 2255 motion, Acting United States Attorney Duston Slinkard confirmed that the purpose of the parties' 2018 agreement was to identify and confirm which calls were in the government's possession, and remove the recordings from the government's possession so that prosecutors and agents would no longer have access to the calls.[23]  But Slinkard conceded that individual prosecutors were permitted to search their own files and if recordings were discovered, no further inquiry was made of any law-enforcement agencies involved in the case.[24]  As detailed at the *Hohn* evidentiary hearing, it was discovered that the United States Drug Enforcement Administration ("DEA") remained in possession of the petitioner's attorney-client call until at least July 2, 2021.[25]  The DEA relinquished its sealed copies of the call recordings to the USAO without a court order, and thus any attorney-client communications remained accessible to the original prosecution team until at least July 2,

---

[21] *In re CCA Recordings Litigation*, No. 19-2401-JAR-JPO.

[22] Doc. 866, Attachs. A & B.

[23] *United States v. Hohn*, No. 12-20003-JAR-3, Doc. 778 at 27–28 (D. Kan. Dec. 9, 2021).

[24] *Id.* at 28.

[25] *Id.* at 29.

2021.[26]  As Slinkard acknowledged, these circumstances cannot be reconciled with the letter or the spirit of this Court's orders in *Black*, including the December 2018 Production Order.[27]

## II.     Discussion

As indicated in the FPD's motion to compel, it appears that after the evidentiary hearing in *Hohn*, the USAO has not taken steps to determine whether law-enforcement agencies remain in possession of any attorney-client call recordings.[28]  The FPD requests "a comprehensive order" regarding "all cases prosecuted in the district of Kansas," that requires "the government to identify, produce, and disgorge any recorded attorney-client communications that remain in the USAO's custody or control, including those that were collected for or during a federal prosecution and remain in the possession of law-enforcement agencies."[29]  The FPD asks that the order "not [be] limited to any previously identified case, to any particular facility, to any phone company, or to any specific timeframe."[30]

The USAO neither disputes that it continues to harbor recorded attorney-client communications nor that the Court's December 2018 Order requires the USAO to locate and produce at least some of those recordings, nor offers any explanation for its failure to fully comply with that Order.  Instead of supplementing the record as it has done periodically since the initial disgorgement of recordings, the USAO declines to do so in this now-closed investigation and case and argues that this Court lacks jurisdiction to impose, and the FPD lacks standing to request, new obligations in a closed criminal case.  The Court agrees in part.

---

[26] *Id.*

[27] *Id.*

[28] Doc. 856.

[29] *Id.*

[30] *Id.* at 5.

"Federal district courts have limited jurisdiction, which is established by the Constitution and federal statutes and may not be expanded by judicial decree."[31]  As movant, the burden of establishing jurisdiction falls on the FPD.[32]  The government argues that this Court's jurisdiction under 18 U.S.C. § 3231—and its authority to grant post-conviction motions to compel—ended upon entry of the final judgment.[33]  As this Court explained in the *Black* Order, however, the FPD's Rule 41(g) motion is civil in nature and was collateral to the underlying criminal case.[34]  The Tenth Circuit has explained that district courts retain jurisdiction to impose production obligations under motions seeking return of property under Rule 41(g) after the underlying criminal proceedings have terminated.[35]  Accordingly, the Court has jurisdiction to enforce its prior Order in these proceedings.

However, the Court declines the FPD's broad request that the Court expand the scope of the parties' agreed-upon protocol from identified cases to all cases prosecuted in the District of Kansas.  The FPD suggests that the Court's December 18, 2018 Order was as broad as its current request.  But as the government notes, that Order simply memorialized the parties' proposed process limited to cases identified by the FPD and was not as comprehensive as the FPD now requests.  Further, such expansion would likely exceed the scope of the Tenth Circuit's mandate.  The FPD's motion for discovery was filed prior to the October 2018 evidentiary hearing on

---

[31] *United States v. Benitez*, 720 F. App'x 509, 510 (10th Cir. 2018) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

[32] *Id.* (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 & n.3 (2006)).

[33] *Id.* (first citing *United States v. Asakevich*, 810 F.3d 418, 421 (6th Cir. 2016); and then citing *United States v. Spaulding*, 802 F.3d 1110, 1116–17 (10th Cir. 2015)).

[34] Doc. 758 at 125.

[35] *See United States v. Clark*, 84 F.3d 378, 381 (10th Cir. 1996) (interpreting former Rule 41(e)).

Phase III of the investigation.  Phase III has concluded, the Court has closed the record in *Black*, and all defendants in the criminal case have been terminated.

Instead, this case has transitioned to requests for habeas relief, and the FPD filed over 100 motions for relief under § 2255 for petitioners alleging Sixth Amendment violations stemming from the *Black* investigation.  Of those motions, twenty-two involved audio recordings of attorney-client telephone calls from CCA, as initially identified by the FPD and turned over by the USAO.  Like *Hohn*, several of these cases involved requests for calls made by various law-enforcement agencies working with the USAO.  While the parties appear to have contemplated that the USAO's search for and disgorgement of call recordings would extend to these agencies, that did not happen, at least not until the Court granted an evidentiary hearing in *Hohn*.  As Acting United States Attorney Slinkard explained, once it was determined the USAO had recordings in its possession, no further inquiries were made upstream to determine whether any agency also maintained copies of the recordings.

Accordingly, the Court will grant the FPD's request in limited part to cases where the USAO has previously identified and surrendered CCA recordings to the Court that resulted in § 2255 motions alleging Sixth Amendment claims regarding attorney-client communications—a request that the parties appear to have contemplated in its December 2018 protocol for producing the recordings and appears to be a relatively simple matter of supplementing their previous procedure.  As with the prior procedure, on or before thirty days of the date of this Order, the USAO will deliver recordings or derivative information still in the possession of any law-enforcement agency, if any, to the Court, which will make copies available to the FPD.  The USAO shall also file a supplemental report documenting this procedure.

**IT IS THEREFORE ORDERED BY THE COURT** that the FPD's Motion to Compel (Doc. 856) is **granted in limited part** as set forth above.

**IT IS SO ORDERED.**

Dated: <u>April 11, 2022</u>

                         S/ Julie A. Robinson
                        JULIE A. ROBINSON
                        UNITED STATES DISTRICT JUDGE